# Exhibit A

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION, | ) | Judge Polster<br>Cleveland, Ohio |
| Plaintiff, | ) | |
| APPLIES TO ALL CASES | ) | Civil Action<br>Number 1:17MD02804 |

- - - - -

TRANSCRIPT OF PROCEEDINGS HAD BEFORE

THE HONORABLE DAN AARON POLSTER

JUDGE OF SAID COURT,

ON TUESDAY, AUGUST 6, 2019

- - - - -

Official Court Reporter: Shirle M. Perkins, RDR, CRR
U.S. District Court
801 West Superior, #7-189
Cleveland, OH 44113-1829
(216) 357-7106

Proceedings recorded by mechanical stenography; transcript produced by computer-aided transcription.

Case: 1:17-md-02804-DAP Doc #: 2147 Filed: 08/07/19 2 of 76. PageID #: 288080



APPEARANCES:

For the Plaintiffs:

PETER WEINBERGER, ESQ.,
Spangenberg, Shibley & Liber
Suite 1700
1001 Lakeside Avenue, E
Cleveland, OH 44114
(216) 696-3232

Also Present:

Jenny Lee Anderson, Esq.,
Jonathan Blanton, Esq.,
Mark Cheffo, Esq.,
Jayne Conroy, Esq.,
Sam Issacharoff, Professor
Robert Klonoff, Esq.,
Mark Lynch, Esq.,
Christopher Seeger, Esq.,
Paul Singer, Esq.,
Sonya Winner, Esq.

11:36:47 -- Ms. Winner discovered through her diligence that how this money is distributed to the cities is not present here. Let me read the first sentence where we introduce the allocation model.

The allocation model uses three factors to determine the share of the global settlement that each county will receive. We do not purport anywhere to take this down below the county level because as Mr. Singer expressed from Texas, there is a huge variety in the size of counties and in the functions that counties play, vis-a-vis, the various municipalities within them.

11:37:07 I used to live in Texas. And there, the counties are very big and incorporate many cities. I now live in New York. We have five counties but one city.

11:37:23 So it is -- this cannot be a "one size fits all." And so we are distributing down to the county level. And then there are suggested ways because there's a different distribution of resources and services provided between cities and counties.

11:37:38 This is known, and this has been communicated to the 2000 plus that already has cases on file. And in addition, we have a website where this is active and has been down -- has been hit many, many times by Class members.

So yes, we have not given notice yet but this is no secret to the most actively involved litigating entities. 11:37:59

And as I said very, very beginning, there is no opposition from within the Class. So the smaller towns of Wyoming will have to get the money from their counties which is the way they get things now.

11:38:19 Thank you very much, your Honor.

THE COURT: All right. Thank you, Professor Issacharoff.

Anyone else? I don't want to slight anyone. All right.

11:38:34 Well, I -- I again appreciate all the hard work of those who helped develop and devise and refine this proposal. I appreciate the many people who weighed in with comments or suggestions to improve the finding. I appreciate all the comments made today. The Court will take 11:38:55 it under advisement and I'll make a decision in the near future.

I just want to highlight some of the key factors that I'm weighing, wrestling in my mind.

There needs to be some vehicle to provide resolution 11:39:23 of these cases. Everyone knows that trying probably 2500 now between the federal ones and the ones in State Court, is -- first, it would sink the state and federal judiciaries, but also the amount of private resources would be staggering. And no one -- no one would want to do that.

11:39:53 So there has to be a vehicle to resolve them. There

doesn't have to be one vehicle alone. So I've -- I've encouraged all settlement discussions, I've encouraged all ideas, I'm continuing to do so. And this is just one. And no one had to use it. And no one has to use all of it. Someone could use part of it or use it as a spring board. And I think it's a product of the Defendants' justifiable insistence that before they would engage in serious settlement discussions, they needed to have a vehicle, a mechanism to provide a reasonable chance of global resolution and global peace. That's -- that's always expressed by virtually every Defendant I've encountered in my years as a lawyer and now as a Judge. It's a fair and acceptable one.

It's a lot more complicated. We've never had, I don't believe in our country, a constellation of cases like we have in this opioid MDL. I believe it's a, you know, a product of some things that have happened in the past, but whether it is or not, we have it here and there has to be some vehicle to resolve these lawsuits.

I think this vehicle has some merit. Is it perfect? No. Does it have problems? No. Is it certain it would be affirmed on appeal if challenged? Of course not because it's never been tried before. And that's simply -- but that isn't -- that isn't a reason to say no, because you've never had a set of lawsuits like this. So the vehicle isn't going