# Exhibit D

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE:<br><br>TK HOLDINGS, INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 17-11375 (BLS) |
| TK HOLDINGS INC., *et al.*,<br><br>Plaintiffs,<br><br>- against -<br><br>STATE OF HAWAII, by its Office Of Consumer Protection, GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS, STATE OF NEW MEXICO, *ex rel.* HECTOR BALDERAS Attorney General, *et al.*,<br><br>Defendants. | Adv. Pro. No. 17-50880<br><br>Courtroom No. 5<br>824 Market Street<br>Wilmington, Delaware 19801<br><br>August 16, 2017<br>11:00 A.M. |

TRANSCRIPT OF HEARING
BEFORE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE

TELEPHONIC APPEARANCES:

For the Debtors:

Marcia Goldstein, Esquire
Theodore Tsekerides, Esquire
Matthew Goren, Esquire
Ronit Berkovich, Esquire
Konrad L. Cailteux, Esquire
Brett Michael Haywood, Esquire
WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153

Mark D. Collins, Esquire
Michael Joseph Merchant, Esquire
Amanda Steele, Esquire
Russell Silberglied, Esquire
RICHARDS LAYTON & FINGER
920 N. King Street
Wilmington, Delaware 19801

ECRO: DANA MOORE

Transcription Service: Reliable
1007 N. Orange Street
Wilmington, Delaware 19801
Telephone: (302) 654-8080
E-Mail: gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording: transcript produced by transcription service.

INDEX

Page

TELEPHONIC HEARING

RULING 4

(Telephonic hearing commenced at 11:00 a.m.)

THE COURT: Good morning, counsel, this is Judge Shannon. I understand from the operator that all necessary parties are on the call.

This is a hearing in the TK Holdings family of cases; case number 17-11375.

This is the time that the court has set to issue its ruling on the debtors' request for a preliminary injunction in Adversary Proceeding Number 17-50880.

The court conducted a hearing last Wednesday, at which extensive argument was heard and evidence was adduced on behalf of all effected parties.

At the conclusion of the hearing, the court took the matter under advisement with a commitment to provide a ruling today.

As I said at the end of the hearing, given the significance and complexity of the issues that are before the court, as well as the number of effected parties, it is an understatement to say that I would prefer to address this dispute by way of formal written opinion.

But the circumstances of this case do not afford the time that such an opinion would take. So, I will provide my ruling orally today and I will try to be as clear as I can, but I would appreciate your patience, and I warn you that you may have to bear with me a bit as I go on this

morning.

Before I rule, I must take a moment to acknowledge and commend the parties. The briefing was thorough, excellent and helpful, and the presentations by counsel last week helped greatly to clarify the complex dispute that's before the court.

Also, it is not lost on me how much coordination and cooperation was required among the parties to timely provide the court with a manageable and, as I said, excellent set of briefing.

In summary, I will grant in part and deny in part the request for a preliminary injunction. I will enter the requested injunction as to the state actions for a period of ninety (90) days through and including November 15, 2017, including an injunction to cover Takata Corp or TKJP as I find that Bankruptcy Code Section 1521(d) does not preclude me from entering that relief.

So, I will enjoin the state actions as they relate to the debtors and the other defendants, therein.

I will also grant the motion and enter the requested preliminary injunction for a period of ninety (90) days through and including November 15, 2017 as to all of the individual other than the multidistrict litigation currently pending in the Southern District of Florida.

The MBL will not be stayed by this court as to

non-debtor litigants and, specifically, as to the OEMs for specific reasons that I will discuss in a few minutes.

Turning to the issue before the court, we have two broad categories of litigation the debtors would seek to stay.

First, the state actions which were commenced by Hawaii, New Mexico, and the U.S. Virgin Islands. And, second, what we have called the individual actions, which include personal injury and economic loss actions, pending in courts around the country and, in particular, in a multidistrict litigation pending in Federal District in Miami.

This second category of individual actions breaks down further into personal injury litigation, class actions alleging economic loss or diminution in the value of vehicles on account of the debtors’ products, and, finally, litigation against the debtors for damages caused by delay or unavailability of replacement airbags.

The operative feature of substantially all of this litigation for our purposes today is that the automobile manufacturers, whom we’ve collected called the OEMs or the consenting OEMs, are parties with the debtors to these litigations, either by way of having been sued alongside the debtors or having third partied in the debtors after the litigation commenced.

And the debtors presently enjoy the benefits of Section 362(a) and the automatic stay. So most of this litigation is already stayed as to them with the possible exception of the state actions, which are alleged to be exempt from the automatic stay as an exercise of police or regulatory power.

What the debtors seek here is to obtain an injunction essentially to wrap the protections of the automatic stay around the consenting OEMs and TKJP while they pursue their reorganization.

The background facts are not immaterial dispute. TKJP, TK Holdings and their affiliates are a multinational Tier I supplier to a host of U.S. and foreign automobile manufacturers. The debtors’ manufactured and sold tens of millions of airbag inflator systems containing phase stabilized ammonium nitrate as the propellant.

The record reflects especially under environmental conditions characterized by high heat and humidity, these PSAN inflators may degrade overtime and rupture causing injury or death to the occupants of the vehicle.

The debtor has acknowledged, and the court notes, the suffering that has been caused on account of the defective airbag systems and the court has carefully reviewed the declarations of Mr. Rothenberg, Mr. Dean, and Mr. Miner [ph] detailing examples of the injuries suffered by their

clients. And I have had the benefit of their presentations last week to provide a human face and context to these lawsuits.

I am extremely sympathetic to the circumstances that these claimants face and I am particularly sensitive to the argument raised by the tort claimant's committee and others regarding the potential consequences of a delay in their lawsuits and, frankly, a delay in these injured persons having their day in court.

The record reflects that there's been a criminal investigation by federal authorities and, ultimately, a plea arrangement for Takata that, among other things, must be funded by the end of February 2018. The record reflects that the debtors have filed these cases pursuant to a bankruptcy strategy or business plan that contemplates the sale of substantially all of the debtors' assets to Key Safety Systems pursuant to a plan of reorganization with these debtors retaining assets and operations related to manufacturing of replacement kits to support the ongoing product recall requirements.

The record further reflects that the debtors advise the court at the outset of these cases that they had to obtain the support of a consenting OEMs for their reorganization strategy. That support has been memorialized, in part, in an accommodation agreement that is presently

scheduled to be presented to the court in September.

No plan of reorganization has been filed at this point. And the debtors have advised the court that they are finalizing documentation relating to the plan and the transaction with Key.

And so, we are here today with the debtor requesting injunctive relief as an expressed concern that the various litigations that I mentioned above may delay, distract from, or disrupt the debtors' intended reorganization strategy.

Specifically, the debtors have requested that this court enter a preliminary injunction to enjoin the state actions and all of the individual litigation against TKJP and the OEMs in order to afford them an opportunity to focus on and pursue their reorganization plan.

The requested duration of the injunction by the debtors is six months to take them through confirmation on the timeline that was described by the debtors at the outset of these cases. However, in the absence of a filed plan and related documents, I am not prepared to afford the debtors the full runway that they have requested.

From the debtors' representations, I expect the transaction documents and a plan will be filed long before the expiration of the ninety (90) day stay that I am imposing. And if the debtors at that time wish to seek a

further extension of the stay perhaps to presumably get them through confirmation, then I expect we will have a more complete record upon which all parties may evaluate the proposed reorganization, which lies at the heart of the debtors’ request for injunctive relief.

As always, the court starts with the determination of its jurisdiction over the pending matter. All parties have correctly observed that Bankruptcy Code Section 105(a) does not provide, in the words of the court, in combustion engineering “an independent source of subject matter jurisdiction.”

Instead, this court’s jurisdiction must be established under 28 U.S.C. Sections 1334 and 157. And, again, all parties have briefed it, but it bears repeating that bankruptcy Court’s possess jurisdiction by referral from the District Court of proceedings arising under Title 11 or arising in or related to cases under Title 11. Today, our focus is on this court’s related to jurisdiction.

An analysis of this court’s related to jurisdiction must begin with consideration of a Third Circuit’s seminole decision in Pacor which articulated an expansive test finding related to jurisdiction if a matter could have any conceivable effect on the reorganization effort of the debtors. Subsequent cases have refined and clarified this analysis.

At bottom, case law teaches that this court must find an identity of interest between the debtors and the non-debtor defendants and the court must also find that the reorganization process will be detrimentally affected in the absence of relief.

As to the state actions, the parties have not contended that this court lacks subject matter jurisdiction over this matter as it relates to the debtors. The focus of the parties' submissions was largely on whether the state actions are protected from an injunction because there are regulatory or police powers under Section 362(b)(4) or, alternatively, that the debtors have not carried their heavy evidentiary burden for the entry of an injunction on the merits.

The court's subject matter jurisdiction to enjoin the state actions as to the OEMs and TKJP, less on the related to jurisdiction analysis that the court must perform as to the individual actions, which I will discuss in a moment. And in which I can conclude that the court does, in fact, possess related to jurisdiction to support the entry of the injunctive relief to stay pending litigation against non-debtors.

Accordingly, the court concludes that it has subject matter jurisdiction to hear the debtors' request as to the state actions, and I will turn to the merits in a

moment.

This court's jurisdiction to enjoin the prosecution of the individual actions against the consenting OEMs and TKJP has been hotly disputed by the tort claimant's committee, the MDL claimants, the Suarez plaintiffs, and others likely to be affected by the injunction.

I do note that the Turk plaintiffs have been dismissed from this litigation consistent with representations that were made in open court last week.

The debtors argue that this court possesses related to jurisdiction over the individual actions. They point to the contractual indemnification obligations owed by the debtors to the consenting OEMs and TKJP and also identify risks of collateral estoppel and record taint in the event the individual actions proceed against the consenting OEMs without the debtors at the table.

In addition, the record reflects that TKJP shares an identity of interest with these debtors by virtue of its relationship within the corporate family. And, finally, the debtors contend that allowing the individual actions to proceed will adversely impact their reorganization at this very early stage by distracting their management and by encouraging the debtors, the consenting OEMs, and the various plaintiffs to focus their efforts on matters pending in numerous forms around the country, rather than directing

their energies and attention to the reorganization process in this court.

The objectors submit that the court's related to jurisdiction is not so broad as to permit the entry of a stay for the benefit of non-debtors, such as the consenting OEMs and TKJP. They contend that the indemnification obligations to OEMs, upon which the debtors rely, are not a sufficiently developed connection or obligation upon which to base this court's jurisdiction.

For this point, the plaintiffs rely heavily on the decisions in W.R. Grace and in Federal Mogul, which both sides addressed and briefed extensively.

Separately, all of the objectors and, particularly, the MDL plaintiffs, note that they are not pursuing the consenting OEMs exclusively on a theory of derivative liability for the debtors' wrongdoing. Rather, they are also pursuing direct theories and claims alleging that the consenting OEMs acted wrongfully and with knowledge of the defective airbags and the risk that they posed to the public. They reason that this fact undercuts the identity of interest between the OEMs and the debtors.

Finally, the plaintiffs dispute whether the debtors' reorganization will suffer from delay and distraction in the absence of an injunction. I am satisfied, as I noted, that this court has related to jurisdiction over

the individual actions, sufficient to support entry of a ninety (90) stay I mentioned at the outset.

I start with the indemnity issue.

The record developed at this early stage of the proceeding is sufficient to establish that the debtors have significant exposure on account of their contractual indemnification obligations to the consenting OEMs. The court received substantial evidence and testimony as to the debtors’ contractual obligations to the consenting OEMs, and the record reflects that hundreds of cross-claims have been filed against the debtors by the consenting OEMs based upon theories of indemnification and joint liability.

While the issue of the indemnities and their enforceability is not ultimately before me, in its simplest terms, I would be surprised if the situation were otherwise, and if the debtors did not have at least a meaningful prospect of indemnity exposure here.

The record is undisputed that these debtors sold part under contract to be installed in vehicles manufactured by the consenting OEMs. And those parts have been demonstrated to fail and to cause injury. Yes, I understand that there are other claims and other theories raised by plaintiffs against the consenting OEMs, but literally everything here begins with the delivery and installation of a defective part manufactured by the debtors.

I do not accept the objector's contention that the OEMs inability to be indemnified for their own negligent or wrongful acts operates to vitiate the identity of interest that's otherwise created by the contractual indemnity obligations.

This observation applies as well to the lemon law litigations where the court acknowledges that in some cases the debtors may not be a main party. Nevertheless, in each of those cases, the debtors' interest are at issue as the record reflects that the OEMs defenses in each of these cases will certainly revolve around the acts and omissions of the debtors.

Plaintiffs rely on W.R. Grace and Federal Mogul, but I do not believe that those two cases require a different conclusion. As I said, the Pacor decision articulated a broad conceivable effect standard.

The Third Circuit's decision in W.R. Grace clarified that standard as it related to indemnity obligations and held that if parties needed to prosecute and prevail in an intervening lawsuit to vindicate a right to indemnity that that was too attenuated a relationship to give rise to a bankruptcy court's related to jurisdiction.

In that case, the debtor, who operated an asbestos mine, sought to stay claims brought against the state of Montana. There was no contractual relationship between

Montana and the debtor at issue in the litigation. And what was alleged was, at best, a common law theory of indemnity that claims by citizens of Montana against the state for failure to warn and protect them from the dangers of the mine could ultimately carry through to the debtor.

The Third Circuit found this connection too remote and declined to find related to jurisdiction.

In Federal Mogul, the debtor sought to bring into the bankruptcy court thousands of asbestos related state court lawsuits against many defendants, and the court found that there was no jurisdictional predicate for that relief.

This case before me today is not analogous to an asbestos case where there are often dozens of potentially responsible parties, each one effectively to the exclusion of the others and a persistent and legitimate question of whether a plaintiff has any actual relationship to a particular defendant.

Here, every single claimant knows the vehicle they purchased and can establish the fact that it contains a Takata airbag system.

As to the Federal Mogul decision, I note that the debtors in that case sought to bring a raft of state court personal injury suits into the Bankruptcy Court for disposition. Here, by contrast, the debtors seek only a brief stay of pending non-bankruptcy litigation.

I do not fully accept the MDL plaintiffs' articulation of the "absolutely and automatic" indemnification standard that they derive from the W.R. Grace decision.

First, that phrasing does not appear in the W.R. Grace decision and is not required by the logic of the ruling. W.R. Grace stands largely for the proposition that routine theories of common law indemnity or joint liability are too thin a reed upon which to base a bankruptcy court's related to jurisdiction.

This case before me is clearly distinguishable from W.R. Grace and Federal Mogul, and I'm satisfied that the debtors' indemnity obligations meet the identity of interest prong of the subject matter jurisdiction analysis.

We turn then to the potential impact on the reorganization. At the hearing, the objecting parties and particularly the tort claimant's committee challenged the debtors' evidence regarding the prospect of disruption and distraction to their reorganization.

Specifically, they have pointed to discrepancies between Mr. Caudill's filed declarations and his testimony taken in deposition. I do acknowledge that the debtors' case, at least as made through Mr. Caudill's testimony, is, in fact, relatively thin.

He acknowledged that he has not actively

participated or attending proceedings in the many litigations that are pending. And it is true that he struggled somewhat in deposition to identify individuals in the organization likely to be drawn away from critical duties to attend to litigation matters.

But he also testified in his deposition at page 46, among several other places, that the demands of operating the debtors are overwhelming in the present context. And he noted that while he was not personally focused on these lawsuits, personnel under his supervision such as Mr. Teal, Mr. Bowling, and Mr. Schubert are subject to being engaged with these proceedings and away from their normal duties.

Secondly, the court is entitled to take notice of the undisputed landscape of the proceedings before it. The debtors are engaged, as was noted multiple times at trial, in the largest recall in history, while simultaneously attempting to implement a reorganization strategy around the globe involving dozens of plants and tens of thousands of employees through proceedings that are pending here and in Japan. And, at the same time, they are a party to literally hundreds of active lawsuits involving not only injured plaintiffs but also naming the debtors' most important customers and business partners, entities that are absolutely crucial to the reorganization effort as it is presently postured.

What the debtors seek and need is a breathing spell to focus the attention of all stakeholders on the reorganization process. And the record developed thus far supports that need.

The objectors contend that the debtors' prepetition negotiations with the OEMs, while conducting the recall and participating in the litigation, is proof that no stay is necessary. I do not accept that argument.

First of all, the overlay of being a debtor-in-possession drastically changes the burdens and demands on a corporate enterprise and its management team. And, second, the record does not support a finding that the debtors were, in fact, easily able to manage on a prepetition basis, as these cases were commenced well before the completion of documentation critical to their reorganization.

So, I'm not satisfied that the debtors' prepetition progress undercuts their request for a stay today.

Thus, the court finds that it possesses related to jurisdiction on the grounds that, first, the contractual indemnification obligations between the debtors and the OEMs support a finding that there is an identity of interest between the debtors and the OEMs and TKJP. And, second, I am satisfied that the continued prosecution of the state actions and the individual actions will adversely impact the debtors'

efforts to reorganize.

As I mentioned at the outset, I will not stay the multidistrict litigation as it relates to the consenting OEMs. The record reflects that the MDL has been pending since 2014 and serves to consolidate scores of injury and economic loss actions into a single court in the Southern District of Florida. The undisputed record further reflects that that litigation is well advanced. Judge Moreno has announced his intention to commence trials in February and April 2018 and significant discovery has occurred.

I acknowledge that the parties disagree as to whether additional discovery will be needed from the debtors. But I know that the MDL has utilized a special master to coordinate and manage the ongoing discovery process among the many parties.

On balance, I don't believe that the debtors have carried their burden to obtain a stay of the MDL as to the OEMs. While certainly a large and complex proceeding, it is effectively a single proceeding in a single court and is, therefore presumably easier or, at least, less burdensome for the debtors to monitor on a post-petition basis.

In addition, the record reflects that there have already been several significant settlements in the MDL and the court notes that the debtors are specifically not asking for the MDL to be stayed as to approval and implementation of

those settlements.

At bottom, while I do acknowledge that this court possesses jurisdiction to order a stay of the MDL, I am not satisfied that the burden upon the debtors is sufficient to warrant staying a single proceeding that captures scores of suits and embodies a coordinated approach to discovery and trial prep.

And I considered this in contrast to the risk and burden associated with hundreds of suits pending in various courts across the country. While the debtors, of course, may continue to enjoy the protection of the automatic stay as to the MDL, it is not too much ask that they monitor and participate in that proceeding as they may see fit.

We turn now to the legal standard which is governed by bankruptcy Code Section 105(a) and Rule 7065.

The elements for injunctive relief have been extensively briefed and the applicable test is well established. Courts consider one, the debtors' likelihood of success; two, the risk of irreparable harm; three, the balance of the harms between the debtors and non-moving parties and; finally, whether public policy supports entry of the injunction.

I will first address the state actions. And for the reasons I will provide and, as I noted, I will enter a preliminary injunction staying the proceedings commenced by

New Mexico, the U.S. Virgin Islands, and Hawaii for a period of ninety (90) days to and including November 15, 2017.

We are proceeding under the assumption that the matters that were initiated by these state entities are, in fact, police and regulatory actions that are exempted from the automatic stay under Section 362(b)(4), although the debtors have reserved their rights to challenge these assertions at a later point.

I start with the proposition that state police power and regulatory actions are not immune from entry of preliminary injunctive relief, notwithstanding Section 362(b)(4) which merely provides that such actions are not automatically stayed by virtue of a bankruptcy filing.

And this is consistent the holding in Enron which both sides discussed and mentioned in their briefing.

The states have correctly noted that the debtors bear a heavy burden to demonstrate entitlement to such relief. Case law supports this position and common sense, likewise, dictates that a bankruptcy court should be chary of interfering with the exercise of a sovereign entity's police and regulatory power.

However, I do find that the debtors carried that burden sufficient for entry of the brief ninety (90) day that I'm granting. Before turning to the four-part test, I mentioned above, I must observe that the court's ruling on

the state action is also informed by the following circumstances that are specific to the case before me.

First, the record reflects that these debtors are operating under the strict review and oversight of a federal agency, the National Highway Traffic Safety Administration, and they are conducting under federal direction and compulsion a massive recall.

These cases present an unusual and, perhaps, unique posture, at least in my experience. The threat of injury or loss posed by the debtors' products presents a substantial and identical risk in all 50 states in the U.S. territories.

Vehicles with components subject to the recall are literally everywhere. And, so, while the court acknowledges that the state actions have been commenced to protect the citizens of those particular states or territories which is entirely proper and appropriate action by those authorities. The fact is that there is nothing unique about the threat to the citizens of those two states and the territory.

And that brings me to a fundamental tension between the animating principles of the Bankruptcy Code and the relief that is sought by the states in the state actions.

As we discussed at the argument last week, the state actions represent the proverbial race to the courthouse. Each of the plaintiffs is identically situated

to every other non-moving state and territory. And any relief obtained by those entities in the state actions will necessarily be to the detriment of the citizens of other states.

Resources and funds will be committed to facilitate a remedy in New Mexico, in Hawaii, or the U.S. Virgin Islands and those resources will, thus, be unavailable for other states individually or, more importantly, for a coordinated nationwide approach.

I, of course, commend the authorities in New Mexico, Hawaii, and the U.S. Virgin Islands for their diligence in acting to protect their citizens. But it is a core principle of the U.S. Bankruptcy laws that proceedings in other forums may be stayed in order to afford a breathing spell and, more importantly, to provide for consistent treatment of similarly situated stakeholders. Vindication of that core principle requires the imposition of a temporary stay upon the state actions.

I also note that this conclusion is not affected by TKJP's Chapter 15 filing. And, specifically, the provisions of Bankruptcy Code Section 1521(d).

The record reflects that the court ordered supplemental briefing and I appreciate the submissions that I received on Monday. I find that Section 1521(d) has no application to the proceeding before me. It is a bar to a

foreign representative seeking to enjoin a state's police power or regulatory action.

In this case, however, it is the Chapter 11 debtor that is seeking the relief, not the foreign representative to appear in this court late last week. Now while the state suggests that I should treat the request by the debtors as functionally a request by TKJP and the foreign representative, I note that I am obliged to respect both the corporate separateness of these Chapter 11 debtors and TKJP, as well as to recognize the distinction between the Chapter 15 proceedings and these Chapter 11 proceedings.

Turning then to the four-part test as it relates to both the state actions and the individual actions. The four elements, as I said, are well established.

The burden is on the debtor to establish each of the four elements. And a Third Circuit further teaches in the Revel decision that if the moving party does not carry its burden as to likelihood of success and irreparable harm, the court should deny the motion without reaching the last two prongs.

I start with the likelihood of success. Case law here teaches that the proper focus is on the debtors' prospects for a successful reorganization and whether the conduct to be enjoined threatens that reorganization. I am satisfied that the debtors have carried their burden under

this prong.

The debtors' prospect for a successful reorganization are clearly enhanced if at this critical juncture early in these cases they and their largest customers and other stakeholders are afforded the opportunity to focus on the reorganization efforts.

I note that the debtors have requested a six month stay until February 2018. And it is under this prong that I have reduced the duration of the injunction to ninety (90) days. Consistent with my comments a few moments ago, in a nutshell, the debtors have asked for a six month stay to implement a comprehensive global transaction and restructuring.

But, as I noted earlier, other than the accommodation agreements, no documents relating to the proposed sale or the plan have been filed. A brief stay to permit that to occur and to allow a breathing spell for the debtors is appropriate.

If in several months the debtors seek a further injunction, I assume you will have a plan and a disclosure statement and relevant deal documents on file. And then all parties, at that point, would have a sufficient basis to evaluate the debtors' intentions, stakeholder support, and prospects for a successful reorganization.

As to the second prong, I do find that the debtors

have carried their burden that they will suffer irreparable harm in the absence of an injunction. For the reason that I stated a few moments ago, I find that the task of monitoring hundreds of lawsuits and the prospect of what's been collectively described as record taint including collateral estoppel are material risks for these debtors.

The objectors contend, but as a matter of law there is no risk of collateral estoppel if the debtors choose to sit out the various lawsuits they're moving forward. I understand that argument as a technical application of the definition of collateral estoppel. But as a practical matter, I do not accept that these suits can proceed where the central feature of every suit is the unintended explosion of the debtors' airbag system without material effect on the debtors down the line.

I will proceed to the balancing of the harms. As to balancing, I start by observing that a ninety (90) day stay is a presumptively modest imposition in civil litigation. I am certainly aware from the record before the court made last week through the submissions, as well as, frankly, the court's long experience that a ninety (90) stay may, in fact, throw off discovery and trial schedules. But, again, there is nothing truly remarkable there.

On the other side of the equation, I consider the potential harm to the debtors' reorganization effort and the

functional benefit of requiring all stakeholders to focus their attention on that effort.

While it is true, as noted above, that the court has only limited visibility into the debtors' reorganization strategy and plan, I do have a pretty good sense of the negative consequences of a failed restructuring here on all parties: the debtors, their employees, the OEMs, vehicle owners awaiting recall, and the litigants as well. Accordingly, I find that consideration of the balance of harms favors the debtors.

The final prong is whether public policy favors imposition of the requested injunction. I have observed in many other similar cases that this prong rarely plays a significant part in the analysis. The movant typically offers an anodyne statement that the injunction will promote reorganization and, therefore, is consistent with public policy.

This case is different, and the court is obliged to be mindful of the very significant policy considerations that are before it. On the one side are the claimants, many grievously injured who wish to be pursue their rights and remedies in the forum of their choice. And also on that side are the states, which are seeking to act to protect their citizens and to enforce their respective statutes.

On the other side is the reorganization process

which cries out for a coordinated approach to address the crisis that these debtors and other parties face. As I noted before if, in fact, the debtors' reorganization collapses, the recall process may be put into serious jeopardy and the prospects and options of the many claimants will certainly be harmed.

Considering those two admittedly significant considerations, I am satisfied that the entry of a ninety (90) day stay on the terms that I've described is appropriate and warranted and consistent with public policy.

Having granted the debtors' request for a preliminary injunction, I turn now to a matter that was the subject of a good deal of discussion at the hearing last Wednesday.

Debtors' counsel acknowledged early in the hearing that no one lawsuit posed a significant threat of delay or distraction or consumption of time and resources. It was the accumulated mass of hundreds of litigations pending in scores of forums -- and to use counsel's phrase death by a thousand cuts.

And so, the debtors' offered or committed to confer with any litigant after entry of the injunction to respond to individual circumstances that might warrant some form of relief from the injunction they were requested.

Counsel for the tort claimants fairly observed

that the debtors' proposal threatened to turn the burden for injunctive relief on its head. And I expect that debtors' counsel's reaction to that argument was along the lines of no good deed goes unpunished.

Here's where I come out.

For the reasons that I've stated, I'm satisfied that the debtors have carried their burden for the entry of a preliminary injunction staying litigation for ninety (90) days. As I noted, I do not believe as a practical matter that the imposition of a three month stay in civil litigation is a remarkable or unusual burden on the parties.

I am also acutely aware, however, of the suffering and difficult circumstances that many claimants are facing. And I do expect that the debtors to be responsive where circumstances warrant. And I would suggest that they start by communicating with Mr. Rothenberg regarding the Krasulja litigation.

To conclude, the court is entering a preliminary injunction on the terms that I have just described, effective as of 11:38 a.m. prevailing Eastern time today, August 16th, 2017. And that injunction will expire at 11:59 p.m. on November 15, 2017.

I will ask that the parties confer and submit an order consistent with my ruling. If the parties are unable to agree upon the form of that order, I will make myself

available for a teleconference, if necessary. But, otherwise, I will look for that order to be submitted under certification.

I thank you all for your time and your patience this morning. We are adjourned.

(Teleconference concludes at 11:37 a.m.)

CERTIFICATE

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

/s/Mary Zajaczkowski August 16, 2017

Mary Zajaczkowski, CET**D-531