# Exhibit E

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE:<br><br>INSYS THERAPEUTICS, INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 19-11292 (KG) |
| INSYS THERAPEUTICS, INC., *et al.*,<br><br>Plaintiffs,<br><br>- against -<br><br>STATE OF ARIZONA, *ex. rel.* Mark Brnovich, Attorney General; STATE OF FLORIDA, Office of the Attorney General, Department of Legal Affairs; COMMONWEALTH OF KENTUCKY, *ex. rel.* Andy Beshear, Attorney General; *et al.*<br><br>Government Defendants. | Adv. Pro. No. 19-50261<br><br>Courtroom No. 3<br>824 N. Market Street<br>Wilmington, Delaware 19801<br><br>July 2, 2019<br>10:30 A.M. |

TRANSCRIPT OF HEARING
BEFORE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtors: Amanda Steele, Esquire
RICHARDS LAYTON & FINGER
920 N. King Street
Wilmington, Delaware 19801

- and -

Ronit Berkovich, Esquire
WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153

Audio Operator: GINGER MACE

Transcription Service: Reliable
1007 N. Orange Street
Wilmington, Delaware 19801
Telephone: (302) 654-8080
E-Mail: gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording: transcript produced by transcription service.

APPEARANCES (Continued):

For UCC: Arik Preis, Esquire
AKIN GUMP
One Bryant Park
New York, New York 10036

For Lead Counsel Exec CEC: David Molton, Esquire
BROWN RUDNICK
7 Times Square
New York, New York 10036

For State of Florida: Jacqueline Calderin, Esquire
AGENTIS, PLLC
55 Alhambra Plaza
Coral Gables, Florida 33134

For Marketing Service of Indiana Inc.: Joseph H. Huston, Jr., Esquire
STEVENS & LEE
1105 North Market Street
Wilmington, Delaware 19801

For Municipality Claimants: Michael Busenkell, Esquire
GELLERT SCALI BUSENKELL BROWN
1201 North Market Street
Wilmington, Delaware 19801

- and -

Kathryn Coleman, Esquire
HUGHES HUBBARD
One Battery Park Plaza
New York, New York 10004

APPEARANCES (Continued):

For State of Maryland: Brian Edmunds, Esquire
ASSISTANT ATTORNEY GENERAL
STATE OF MARYLAND
Rockville, Maryland

For Kentucky, Rhode Island Washington: Laura Davis-Jones, Esquire
PACHULSKI STANG ZIEHL & JONES
919 N. Market Street
Wilmington, Delaware 19801

For State of New York: Patrick Potter, Esquire
PILLSBURY
2300 N St. NW
Washington, DC 20037

TELEPHONIC APPEARANCES:

For Municipality: Eric Fromme, Esquire
THEODORA ORINGHER PC
535 Anton Boulevard
Costa Mesa, California 92626

INDEX

#4) Motion of Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of Debtors' Assets, (B) Scheduling Auction for and Hearing to Approve Sale of Debtors' Assets, (C) Approving Form and Manner of Notice of Sale, Auction, and Sale Hearing, (D) Approving Assumption and Assignment Procedures, and (E) Granting Related Relief; and (II)(A) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief [Docket No. 32 – filed June 10, 2019].

**RULING: 28**

#5) Debtors' Motion for Preliminary Injunction Pursuant to 11 U.S.C. § 105(a) [Adv. Docket No. 2 – filed June 10, 2019].

**RULING:** ..

| EXHIBITS: | ID | Rec'd |
|---|---|---|
| Declaration of Andrew Yearley | | 25 |

through today.

THE COURT: All right.

MS. BERKOVICH: But we have an objection and reservation of rights to the agreed order.

THE COURT: Okay. Yes, that's right. I did see that, yes.

MS. BERKOVICH: So, if it's acceptable to the court, I suggest that we proceed as follows. First, I'll give the court an update on development since we came three weeks ago for the first day hearing.

THE COURT: Yes.

MS. BERKOVICH: Then I would turn it over to counsel to the UCC. This is the first hearing since the UCC was appointed. They were lonely on the side of the room last week, if I remember, and counsel would like to give the court its views of the case and the best path forward.

THE COURT: Okay.

MS. BERKOVICH: Next, I would present the bidding procedures motion. And after that, I would introduce the agreed order and present its merits.

Entry of the agreed order today would resolve certain parties' objections to the PI motion. So, in order to know if we have any parties opposing the PI motion, we have to know whether the court will enter the agreed order.

THE COURT: Okay. All right.

MS. BERKOVICH: If the court doesn't enter the agreed order then Mr. Isakoff would be presenting the PI motion because we'd be going forward with that.

THE COURT: All right. And I assume I'll have to hear from the reservation of rights party as well.

MS. BERKOVICH: I know that, at least, one of the parties that filed something is in court today from Brown Rudnick. I'm not sure about the other party.

THE COURT: Okay. All right.

MS. BERKOVICH: After those two agenda items, I would turn it over to Ms. Steele to go over the calendar for the next few weeks as its busy and constantly changing.

THE COURT: That's right.

MS. BERKOVICH: Is that acceptable for the court?

THE COURT: That sounds good to me, Ms. Berkovich. Thank you.

MS. BERKOVICH: Thank you, Your Honor.

So, first for the update. Your Honor, when we filed the case, we were clear with the court and all parties in interest that the debtors' goal in these cases was to maximize value for creditors by pursuing a three-prong strategy.

First, we would seek to increase the assets available to the estate including through asset sales. Second, we would seek to minimize the cost of bankruptcy by

reducing the good post-petition dollars we spend on needless litigation and preserve those funds instead for distribution to the creditors.

THE COURT: Yes.

MS. BERKOVICH: And, third, we would seek implementation of an efficient, fair and transparent process for mechanism to enable us to confirm a plan quickly for the purpose of providing a higher and sooner distribution to our creditors.

To accomplish the second prong in the strategy, we filed the adversary proceeding and the motion for preliminary injunction seeking to stay all active government litigation that might, otherwise, arguably fall within the police powers exception to the stay. And to accomplish the third prong in the strategy, we filed a motion for approval of estimation procedures.

We recognize that these were provocative strategies at the outset of the case, but we thought they were necessary under the facts of this case and supported by the law.

We also told the court and all parties from the very beginning that we hoped through these strategies to bring creditors to the table with us to seek to get to a consensual Chapter 11 plan as opposed to a litigious cap.

We are pleased to report that our strategy has

worked so far as planned. After we filed the PI motion and we'll discuss later, in more detail, numerous government units, including the MDL plaintiff's group, either dismissed their claims against Insys, entered into stipulations voluntarily staying their claims against Insys --

THE COURT: Yes.

MS. BERKOVICH: -- or have agreed to stay of their litigation, subject to the court's entry of the agreed order.

And as far as estimation goes, numerous creditors have told us that they prefer a consensual negotiation strategy for a Chapter 11 plan rather than a formal estimation process.

So, specifically, we're very pleased that the UCC, which was formed around June 19th, and obviously represents the interests of all unsecured creditors, from the beginning seems focused on the same goals as the debtors, that's the need for an efficient process to getting to a quick Chapter 11 plan given the estate's liquidity position and limited resources.

They reached out to us very shortly after formation with a detailed proposal to work with the debtors as our partners in mediating and negotiating a Chapter 11 plan including the aggregate claims buckets that would form the basis of the plan.

The proposal included a timeline that was

generally consisted with the timeline that the debtors were proposing in our estimation motion. And, in general, with what the debtors had in mind for confirmation of a plan.

And around the same time, a group of state A.G.'s reached out to us seeking to resolve the PI motion with us, similarly constructive proposal for a process that would provide for mandatory mediation of claims and plan issues as an alternative to estimation.

Recognizing that the two proposals from these very important creditor constituencies had enough similarities as to have the possibility of being married. The debtors encouraged the two groups to work together toward the joint proposal.

And after a week or so if intense back and forth negotiations among the three parties, including the debtors, we came to an agreement on the agreed order. I'll get into the details of it later but, in short, the agreed order provides the framework for all creditor groups in the case to work together to negotiate and, if necessary, mediate the major issues in the case including, ultimately, the terms of the Chapter 11 plan.

Our hope is to get to a deal with the UCC in a few weeks on certain preliminary issues and to work together with the UCC to get as many creditor groups on board as possible.

Your Honor, we did try to get the MDL plaintiff

group to sign onto the agreed order, but the changes they were requesting were not acceptable to the debtors or the UCC. Some of the changes represented a fundamental disagreement with the strategy for getting a higher and quicker distribution to creditors while others were not logistically possible.

To be clear, the agreed order represents a settlement between the debtors, the UCC and the state A.G. group. It's a stipulation and it's not binding on the MDL plaintiffs or their groups.

Nevertheless, if the court does approve the agreed order, our plan is to invite the MDL plaintiffs to be participants in our settlement process, if they would like, and we welcome their views.

We also plan to include in our discussions other creditor groups that have appeared in the case since we filed including, for example, the group of dozens non-MDL government plaintiffs represented by the ASK law firm.

Our goal, to be clear, is to do what is best for the creditors as a whole and not to favor any particular creditor group.

Separate and apart from the discussions on the agreed order, the debtors have spent a great deal of time over the last ten or so days providing the UCC advisors with diligence on the business, the claims against the debtors,

the so-called affirmative claims, the sales process, the motions filed by the debtors and other areas of interest to the UCC.

In addition to the great progress we've made with the settlement discussions with creditors, we've also made progress at our other major fronts, the sale process, which I will get to shortly.

With that introduction, in a minute, I will turn the podium to Arik Preis of Akin Gump. But before I do, I would like to say the debtors appreciate the UCC's efforts to date to be creative and collaborative in coming up with a process that benefits all creditors.

I'm sure there will be times in this case when we butt heads with the UCC, maybe even before the court if we disagree with them over the best strategy for the estate. But, so far, we found them to be committed to the same noble goal as we are, and we've very pleased to have a group to negotiate with that represents the interest of all creditors.

With that, unless Your Honor has any questions, I will turn it over to Mr. Preis.

THE COURT: All right, thank you, Ms. Berkovich. I do not have questions. Thank you.

MS. BERKOVICH: Thank you.

THE COURT: Maybe I'm afraid to ask questions.

(Laughter)