**<u>Exhibit A</u>**

**Proposed Order**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Marc J. Tobak
Gerard X. McCarthy

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.**, *et al.*, | **Case No. 19-23649 (RDD)** |
| Debtors.[1] | **(Jointly Administered)** |
| **PURDUE PHARMA L.P.**, *et al.*, | |
| Plaintiffs, | **Adv. Pro. No. 19-08289 (RDD)** |
| v. | |
| **COMMONWEALTH OF MASSACHUSETTS**, *et al.*, | |
| Defendants. | |

**[PROPOSED] ORDER ESTABLISHING A SCHEDULE IN CONNECTION**
**WITH THE PRELIMINARY INJUNCTION MOTION**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014).  The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

1

WHEREAS, Purdue Pharma L.P. ("**Purdue Pharma**") and certain other of the debtors ("**Debtors**")[2] that are plaintiffs in the above-captioned adversary proceeding filed a *Motion for a Preliminary Injunction* ("**Preliminary Injunction Motion**"), dated September 18, 2019, asking this Court to stay, for 270 days, active cases brought by governmental entities against Debtors and active claims against certain related parties; and

WHEREAS, Debtors have brought before this Court their Motion for Entry of a Scheduling Order and a Protective Order in Connection with the Preliminary Injunction Motion (the "**Preliminary Injunction Schedule Motion**") pursuant to section 105 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 7026 and 9006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 9006-1 of the Local Rules of the Bankruptcy Court for the Southern District of New York (the "**Local Rules**"); and

WHEREAS, the Court has found that it has jurisdiction to consider the Preliminary Injunction Schedule Motion and the relief requested therein pursuant to 28 U.S.C. § 1334, that consideration of the Preliminary Injunction Schedule Motion and the requested relief is a core proceeding pursuant to 28 U.S.C. § 157(b), that venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409, that due and proper notice of the Preliminary Injunction Schedule Motion has been provided to all necessary parties, and that the notice was adequate and appropriate under the circumstances, and that no other or further notice need be provided; and

---

[2] Although only certain of the Debtors (Purdue Pharma L.P.; Purdue Pharma Inc.; Purdue Pharma Manufacturing L.P.; Purdue Pharmaceuticals L.P.; Purdue Transdermal Technologies L.P.; Purdue Pharmaceutical Products L.P.; Purdue Pharma of Puerto Rico; Rhodes Pharmaceuticals L.P.; Rhodes Technologies; and Avrio Health L.P.) are defendants in the over 2,625 civil actions pending against the Debtors in various state and federal courts and other fora across the United States and its territories (the "**Pending Actions**"), the term "Debtors" is used for ease of reference.

2

WHEREAS the Court has reviewed the Preliminary Injunction Schedule Motion and determined that the legal and factual bases set forth in the Preliminary Injunction Schedule Motion establish just cause for the relief granted herein; and

WHEREAS the Court finds the relief requested in the Preliminary Injunction Schedule Motion would be in the best interests of Debtors, the Debtors' estates, and Debtors' creditors;

Accordingly, it is hereby ORDERED:

1.      The Preliminary Injunction Schedule Motion is granted as provided in the instant order (the "**Order**").

2.      Any case management order entered in the above-captioned chapter 11 cases does not govern this adversary proceeding.

3.      The protective order attached hereto as <u>Exhibit 1</u> (the "**Protective Order**") governs the treatment of all materials provided to or obtained by any party to the Preliminary Injunction Motion (collectively with Debtors, the "**Parties**" and each individually, a "**Party**") in connection with the Preliminary Injunction Motion, including with respect to any alleged waiver of any applicable privilege or immunity.

## I.      PRELIMINARY INJUNCTION MOTION SCHEDULE

4.      The deposition of Jesse DelConte will take place on September 26, 2019 at 9:30 am (Prevailing Eastern Time), at 450 Lexington Avenue, New York, NY 10017, or at such other date and time, and at such other location, as agreed upon by the Parties.

5.      The deposition of John James O'Connell III will take place on September 27, 2019 at 9:30 am (Prevailing Eastern Time), at 450 Lexington Avenue, New York, NY 10017, or at such other date and time, and at such other location, as agreed upon by the Parties.

3

6.      The transcripts of the depositions referenced above will be made available through the PI Data Repository (as defined below).

7.      Any opposition to the Preliminary Injunction Motion must be filed with the Court no later than October 2, 2019 at 4:00 pm (Prevailing Eastern Time).

8.      Debtors' reply to any opposition to the Preliminary Injunction Motion must be filed with the Court no later than October 8, 2019 at 4:00 pm (Prevailing Eastern Time).

9.      A hearing will be held on the Preliminary Injunction Motion on October 11, 2019 at 10:00 am (Prevailing Eastern Time).

10.     Any answer or other response to the complaint in this adversary proceeding shall be filed with the Court no later than November 18, 2019 at 4:00 pm (Prevailing Eastern Time).

## II.   ACCESS TO PRELIMINARY INJUNCTION DISCOVERY

11.     Counsel for any Party or Parties ("**Counsel**") requesting access to the data repository coordinated by Debtors (the "**PI Data Repository**") shall email a signed copy of the Protective Order and a completed copy of the request form attached hereto as <u>Exhibit 2</u> (the "**Request Form**") to Debtors at Purdue.PI.Repository@ad.dpw.com.  Immediately (within reason) after Counsel for a requesting party emails to Debtors a properly completed Request Form and properly signed Protective Order, Debtors will cause the requesting party (the "**Requesting Party**"; collectively, the "**Requesting Parties**") to be provided with login credentials to the PI Data Repository.  Each Requesting Party is entitled to request and to receive three set(s) of login credentials for the PI Data Repository.

12.     This Court shall retain jurisdiction to hear and determine all matters arising from

or related to the implementation and/or interpretation of this Order.

**SO ORDERED.**

Dated:     September ___, 2019
               White Plains, New York


                                                   By: _____
                                                   The Honorable Robert D. Drain
                                                   United States Bankruptcy Judge

## Exhibit 1

**Protective Order**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Marc J. Tobak
Gerard X. McCarthy

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.**, *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |
| **PURDUE PHARMA L.P.**, *et al.*, | |
| **Plaintiffs**, | **Adv. Pro. No. 19-08289 (RDD)** |
| v. | |
| **COMMONWEALTH OF MASSACHUSETTS**, *et al.*, | |
| **Defendants.** | |

**PROTECTIVE ORDER**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

This Protective Order (the "**<u>Protective Order</u>**") is entered in connection with the above-captioned adversary proceeding (the "**<u>Adversary Proceeding</u>**" or the "**<u>Proceeding</u>**"), brought by Purdue Pharma L.P. ("**<u>Purdue Pharma</u>**") and certain other of the debtors ("**<u>Debtors</u>**").[2]

## I.    Scope of Protective Order

1.    Disclosure and discovery activity in this Proceeding may involve production of confidential, proprietary, and/or private information for which protection from public disclosure and from use for any purpose other than prosecuting or defending claims in this Proceeding would be warranted.

2.    This Protective Order shall govern all hard copy and electronic materials, the information contained therein, and all other information produced in this Proceeding, including all materials produced or adduced in the course of discovery, including all copies, excerpts, summaries, or compilations thereof, whether revealed in a document, deposition, other testimony, discovery response or otherwise, as well as any and all information that is disclosed through an order of the Court, by any Party to this Adversary Proceeding (the "**<u>Producing Party</u>**") to any other party or parties (the "**<u>Receiving Party</u>**").  This Protective Order is binding upon all the Parties to this Proceeding, including their respective corporate parents, subsidiaries, and affiliates and their respective attorneys, principals, agents, experts, consultants, representatives, directors, officers, and employees, and others as set forth in this Protective Order.

---

[2] Although only certain of the Debtors (Purdue Pharma L.P.; Purdue Pharma Inc.; Purdue Pharma Manufacturing L.P.; Purdue Pharmaceuticals L.P.; Purdue Transdermal Technologies L.P.; Purdue Pharmaceutical Products L.P.; Purdue Pharma of Puerto Rico; Rhodes Pharmaceuticals L.P.; Rhodes Technologies; and Avrio Health L.P.) are defendants in the over 2,625 civil actions pending against the Debtors in various state and federal courts and other fora across the United States and its territories (the "**<u>Pending Actions</u>**"), the term "Debtors" is used for ease of reference.

3.       Third parties who so elect may avail themselves of, and agree to be bound by, the terms and conditions of this Protective Order and thereby become a Producing Party for purposes of this Protective Order.

4.       The entry of this Protective Order does not preclude any Party from seeking a further protective order from this Court pursuant to Federal Rule of Civil Procedure 26(c), as incorporated by Federal Rules of Bankruptcy Procedure 7026 and 9014, and Federal Rule of Bankruptcy Procedure 9018.

5.       Nothing herein shall be construed to affect in any manner the admissibility at a hearing or any other court proceeding of any document, testimony, or other evidence.

6.       This Protective Order does not confer blanket protection on all disclosures or responses to discovery and the protection it affords extends only to the specific information or items that are entitled to protection under the applicable legal principles for treatment as confidential.

**II.       Definitions**

7.       Competitor.  "**Competitor**" means any company or individual, other than the Designating Party, engaged in the design; development; manufacture; regulatory review process; dispensing; marketing; distribution; creation, prosecution, pursuit, or other development of an interest in protecting intellectual property; and/or licensing of any product or services involving opioids.

8.       Confidential Information.  "**Confidential Information**" is defined herein as information that the Producing Party in good faith believes would be entitled to protection on a motion for a protective order pursuant to Federal Rule of Civil Procedure 26(c), as incorporated by Federal Rule of Bankruptcy Procedure 7026, on the basis that it constitutes, reflects, discloses, or contains information protected from disclosure by statute or that should be protected

3

from disclosure as confidential personal information, medical or psychiatric information, personnel records, protected law enforcement materials, research, technical, commercial, or financial information that the Designating Party has maintained as confidential, or such other proprietary or sensitive business and commercial information that is not publicly available. Public records and other information or documents that are publicly available may not be designated as Confidential Information. In designating discovery materials as Confidential Information, the Producing Party shall do so in good faith consistent with the provisions of this Protective Order and rulings of the Court.

9.    Counsel. "**Counsel**," without another qualifier, means Outside Counsel and In-House Counsel.

10.    Designating Party. "**Designating Party**" means a Party to the Proceeding; any Party's directors, employees, agents, or Counsel of the Party; or any third party that designates Discovery Material as Confidential or Highly Confidential.

11.    Discovery Material. "**Discovery Material**" means any information, document, or tangible thing, response to discovery requests, deposition testimony or transcript, and any other similar materials, or portions thereof. To the extent that electronically stored information, such as matter stored or recorded in the form of electronic or magnetic media (including information, files, databases, or programs stored on any digital or analog machine-readable device, computers, Internet sites, discs, networks, or tapes), ("**ESI**") is produced by any Party in such form, the Producing Party may designate such matters as confidential by a designation of "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" on the media.

12.    Preliminary Injunction Hearing: "**Preliminary Injunction Hearing**" means any hearing to be held on the *Motion for a Preliminary Injunction* filed in the Adversary Proceeding.

13.     Highly Confidential Information.  "**Highly Confidential Information**" is defined herein as information which, if disclosed to, disseminated to, or used by a Competitor of the Producing Party or any other person not enumerated in Paragraphs 28 and 29, could reasonably result in commercial, financial, or business harm.  In designating Discovery Material as Highly Confidential Information, the Producing Party shall do so in good faith consistent with the provisions of this Protective Order and rulings of the Court.

14.     In-House Counsel.  "**In-House Counsel**" means attorney employees of any Party.

15.     Outside Counsel.  "**Outside Counsel**" means any law firm or attorney who represents any Party for purposes of the Proceeding.

16.     Participating Party.  "**Participating Party**" means any party-in-interest in the Proceeding for whom that Party's Counsel filed the form to request documents ("**Request Form**") attached to the *Order Establishing a Schedule In Connection with the Preliminary Injunction Motion* filed in the Adversary Proceeding.

17.     Party.  "**Party**" means any of the Debtors or Participating Parties, including officers and directors of such parties.  If additional parties are added other than parents, subsidiaries, or affiliates of current parties to this Proceeding, then their ability to receive Confidential Information and/or Highly Confidential Information as set forth in this Protective Order will be subject to them being bound, by agreement or an order of the Court, to this Protective Order.

18.     Producing Party.  "**Producing Party**" means a Party to the Proceeding, and all directors, employees, and agents of the Party, or any third party that produces or otherwise makes available Discovery Material to a Receiving Party subject to Paragraph 3.

19.    <u>Protected Material</u>.  "**<u>Protected Material</u>**" means any Discovery Material, and any copies, abstracts, summaries, or information derived from such Discovery Material, and any notes or other records regarding the contents of such Discovery Material, that is designated as "Confidential" or "Highly Confidential" in accordance with the Protective Order.

20.    <u>Receiving Party</u>.  "**<u>Receiving Party</u>**" means a Party to the Proceeding, and all employees, agents, and directors of the Party that receives Discovery Material from a Producing Party.

### III.    Designation and Redaction of Confidential Information

21.    For each document produced by the Producing Party that contains or constitutes Confidential Information or Highly Confidential Information pursuant to this Protective Order, each page shall be marked "CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER", or "HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER", or comparable notices.

22.    Information disclosed through testimony at a deposition taken in connection with this Proceeding may be designated as Confidential Information or Highly Confidential Information by notifying the court reporter and opposing counsel in writing of such designation within five (5) days of the Designating Party's receipt of the certified transcript of a deposition. The court reporter will indicate the portions designated as Confidential or Highly Confidential as appropriate.  Designations of transcripts will apply to audio, video, or other recordings of the testimony.  The court reporter shall clearly mark any transcript released prior to the expiration of the five (5)-day period as "HIGHLY CONFIDENTIAL—SUBJECT TO FURTHER CONFIDENTIALITY REVIEW."  Such transcripts will be treated as Highly Confidential Information until the expiration of the five (5)-day period.  If the Designating Party does not so designate in writing within the five (5)-day period, then the entire transcript will be deemed not to contain Confidential Information or Highly Confidential Information and the "HIGHLY

6

CONFIDENTIAL—SUBJECT TO FURTHER CONFIDENTIALITY REVIEW" legend shall be removed.

23.    In accordance with this Protective Order, only the persons identified under Paragraphs 28 and 29, below, along with the witness and the witness's counsel, may be present at a deposition for the period during which any questions regarding Confidential Information or Highly Confidential Information are asked.  This paragraph shall not be deemed to authorize disclosure of any document or information to any person to whom disclosure is prohibited under this Protective Order.

24.    A Party may designate as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" any document, material, or other information produced by, or testimony given by, any other person or entity that the Designating Party reasonably believes qualifies as the Designating Party's Confidential Information or Highly Confidential Information pursuant to this Protective Order.  The Party claiming confidentiality shall designate the information as such within five (5) days of its receipt of such information and no later than seven (7) days prior to the Preliminary Injunction Hearing.  Any Party receiving information from a third party shall treat such information as Highly Confidential during this five (5)-day period while all Parties have an opportunity to review the information and determine whether it should be designated as Confidential or Highly Confidential.  Any Party designating third-party information as Confidential Information or Highly Confidential Information shall have the same rights as a Producing Party under this Protective Order with respect to such information.

25.    This Protective Order shall not be construed to protect from production or to permit the "Confidential Information" or "Highly Confidential Information" designation of any document that (a) the Designating Party has not made reasonable efforts to keep confidential, or

7

(b) is at the time of production or disclosure, or subsequently becomes, through no wrongful act or violation of this Protective Order on the part of the entity or the individual who caused the information to become public, generally available to the public through publication or otherwise.

26.     In order to protect against unauthorized disclosure of Confidential Information and Highly Confidential Information, a Producing Party may redact certain Confidential or Highly Confidential Information from produced documents, materials, or other things.  The basis for any such redaction shall be provided in a log, which will identify the reason, as among the below reasons, for the redaction.  Specifically, the Producing Party may redact:

i.      <u>Personal Identifying Information</u>.   The names, home addresses, personal email addresses, home telephone numbers, Social Security or tax identification numbers, and other private information protected by law of (a) current and former employees (other than employees' names and business contact information) and (b) individuals in clinical studies or adverse event reports whose identity is protected by law.

ii.     <u>Privileged Information</u>.  Information protected from disclosure by the attorney-client privilege, work product doctrine, or other such legal privilege protecting information from discovery in this Proceeding.

**IV.     Access to Confidential and Highly Confidential Information**

27.     The Receiving Party and counsel for the Receiving Party shall not disclose or permit the disclosure of any Confidential or Highly Confidential Information to any third person or entity except as set forth in Paragraphs 28 and 29.

28.     In the absence of written permission from the Designating Party or an order of the Court, any Confidential Information produced in accordance with the provisions of this Protective Order shall be used solely for purposes of the Adversary Proceeding and its contents

8

shall not be disclosed to any person unless that person falls within at least one of the following categories:

i.      Outside Counsel and In-House Counsel, and the attorneys, paralegals, stenographic, and clerical staff employed by such counsel;

ii.     Vendor agents retained by the Parties or Counsel for the Parties, provided that the vendor agrees to be bound by this Protective Order and completes the certification contained in Appendix I, Acknowledgment and Agreement to Be Bound;

iii.    Present or former officers, directors, and employees of a Party, provided that former officers, directors, or employees of the Designating Party may be shown documents prepared after the date of his or her departure only to the extent Counsel for the Receiving Party determines in good faith that the employee's assistance is reasonably necessary to the conduct of this Proceeding and provided that such persons have completed the certification contained in Appendix I, Acknowledgment and Agreement to Be Bound.  Nothing in this paragraph shall be deemed to permit the showing of one Party's Confidential Information to an officer, director, or employee of another Party, except to the extent otherwise authorized by this Protective Order;

iv.     Stenographic employees and court reporters recording or transcribing testimony in the Proceeding;

v.      The Bankruptcy Court and any members of the Court's staff to whom it is necessary to disclose the information;

vi.     Any individual(s) who authored, prepared, or previously reviewed or received the information;

vii.     Witnesses during deposition, who may be shown, but shall not be permitted to

retain, Confidential Information.

Before any confidential material is reviewed or inspected by or otherwise disclosed to any person

listed above, the Party being assisted by those persons shall be responsible for ensuring that those

persons are familiar with the terms of this Protective Order and for otherwise taking reasonable

steps to ensure that those persons comply with the terms of this Protective Order.

29.     In the absence of written permission from the Designating Party or an order of the

Court, any Highly Confidential Information produced in accordance with the provisions of this

Protective Order shall be used solely for purposes of this Proceeding and its contents shall not be

disclosed to any person unless that person falls within at least one of the following categories:

i.     Outside Counsel and In-House Counsel and the attorneys, paralegals,

stenographic, and clerical staff employed by such Counsel.

ii.     Vendor agents retained by the Parties or Counsel for the Parties, provided that the

vendor agrees to be bound by this Protective Order and completes the certification

contained in Appendix I, Acknowledgment and Agreement to Be Bound;

iii.     Producing Parties or third parties that have produced the designated information;

iv.     Stenographic employees and court reporters recording or transcribing testimony

in the Proceeding;

v.     The Bankruptcy Court and any members of the Court's staff to whom it is

necessary to disclose the information;

vi.     Any individual(s) who authored, prepared or previously reviewed or received the

information;

10

vii.    Witnesses during deposition, who may be shown, but shall not be permitted to

retain, Highly Confidential Information; provided, however, that, unless otherwise agreed

by the relevant Parties or ordered by the Court, no Highly Confidential Information of

one Party may be shown to any witness who is a current employee of another Party who

is not otherwise authorized to receive the information under this Protective Order.

Before any confidential material is reviewed or inspected by or otherwise disclosed to any person

listed above, the Party being assisted by those persons shall be responsible for ensuring that those

persons are familiar with the terms of this Protective Order and for otherwise taking reasonable

steps to ensure that those persons comply with the terms of this Protective Order.

### V.    Confidentiality Acknowledgment

30.    Each person required under this Protective Order to complete the certification

contained in Appendix I, Acknowledgment and Agreement to Be Bound, shall be provided with

a copy of this Protective Order, which he or she shall read, and, upon reading this Protective

Order, shall sign an Acknowledgment and Agreement to Be Bound, in the form annexed hereto

as Appendix I, acknowledging that he or she has read this Protective Order and shall abide by its

terms.  Persons who come into contact with Confidential Information or Highly Confidential

Information for clerical or administrative purposes, and who do not retain copies or extracts

thereof, are not required to execute an Acknowledgement, but must comply with the terms of this

Protective Order.

### VI.    Protection and Use of Confidential and Highly Confidential Information

31.    Persons receiving or having knowledge of Confidential Information or Highly

Confidential Information by virtue of their participation in the Adversary Proceeding, or by

virtue of obtaining any documents or other Protected Material produced or disclosed pursuant to

this Protective Order, shall use that Confidential Information or Highly Confidential Information

11

only as permitted by this Protective Order.  Counsel shall take reasonable steps to assure the security of any Confidential Information or Highly Confidential Information and will limit access to such material to those persons authorized by this Protective Order.

32.    Nothing herein shall restrict a person qualified to receive Confidential Information and Highly Confidential Information pursuant to this Protective Order from making working copies, abstracts, digests, and analyses of such information for use in connection with the Adversary Proceeding and such working copies, abstracts, digests, and analyses shall be deemed to have the same level of protection under the terms of this Protective Order.  Further, nothing herein shall restrict a qualified recipient from converting or translating such information into machine-readable form for incorporation in a data retrieval system used in connection with this Proceeding, provided that access to such information, in whatever form stored or reproduced, shall be deemed to have the same level of protection under the terms of this Protective Order.

33.    All persons qualified to receive Confidential Information and Highly Confidential Information pursuant to this Protective Order shall at all times keep all notes, abstractions, or other work product derived from or containing Confidential Information or Highly Confidential Information in a manner to protect it from disclosure not in accordance with this Protective Order, and shall be obligated to maintain the confidentiality of such work product and shall not disclose or reveal the contents of said notes, abstractions or other work product after the documents, materials, or other thing, or portions thereof (and the information contained therein) are returned and surrendered pursuant to Paragraph 39.  Nothing in this Protective Order requires the Receiving Party's Counsel to disclose work product at the conclusion of the Proceeding.

34.     Notwithstanding any other provisions hereof, nothing herein shall restrict any Party's Counsel from rendering advice to that Counsel's clients with respect to the Proceeding or a related action in which the Receiving Party is permitted by this Protective Order to use Confidential Information or Highly Confidential Information and, in the course thereof, relying upon such information, provided that in rendering such advice, Counsel shall not disclose any other Party's Confidential Information or Highly Confidential Information other than in a manner provided for in this Protective Order.

35.     Nothing contained in this Protective Order shall prejudice in any way the rights of any Party to object to the relevancy, authenticity, or admissibility into evidence of any document or other information subject to this Protective Order, or otherwise constitute or operate as an admission by any Party that any particular document or other information is or is not relevant, authentic, or admissible into evidence at any deposition or in a hearing related to the Adversary Proceeding.

36.     Nothing contained in this Protective Order shall preclude any Party from using its own Confidential Information or Highly Confidential Information in any manner it sees fit, without prior consent of any Party or the Bankruptcy Court.

37.     If a Receiving Party learns of any unauthorized disclosure of Confidential Information or Highly Confidential Information, it shall immediately (a) inform the Designating Party in writing of all pertinent facts relating to such disclosure; (b) make its best effort to retrieve all copies of the Confidential Information or Highly Confidential Information; (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Protective Order; and (d) request such person or persons execute the Acknowledgment and Agreement to Be Bound that is attached hereto as Appendix I.

13

38.     Unless otherwise agreed or ordered, this Protective Order shall remain in force after the closing of the Adversary Proceeding, and the Court shall retain jurisdiction after such final termination to modify or enforce the provisions of this Protective Order.

39.     Within ninety (90) days after the closing of the Adversary Proceeding, or such other time as the Designating Party may agree in writing, the Receiving Party shall return or destroy all Confidential Information and Highly Confidential Information under this Protective Order unless the document has been offered into evidence or filed without restriction as to disclosure.  As soon as practicable thereafter, the Receiving Party shall certify, to the best of their knowledge after reasonable inquiry, the return or destruction of documents containing Confidential Information or Highly Confidential Information by affidavit or signed letter furnished to the Producing Party.  The Receiving Party shall not be required to locate, isolate, and return or destroy e-mails (including attachments to e-mails) that may include Confidential Information or Highly Confidential Information, or Confidential Information or Highly Confidential Information contained in deposition transcripts or drafts or final expert reports.

40.     Notwithstanding the above requirements to return or destroy documents, Counsel may retain (1) any materials required to be retained by law or ethical rules, (2) one copy of their work file and work product, and (3) one complete set of all documents filed with the Court including those filed under seal, deposition and hearing transcripts, and deposition and hearing exhibits.  Any retained Confidential or Highly Confidential Information shall continue to be protected under this Protective Order.

## VII.    Changes in Designation of Information

41.     If a Producing Party inadvertently produces any Confidential Information or Highly Confidential Information without labeling or marking or otherwise designating it as such in accordance with the provisions of this Protective Order, the Producing Party may give written

14

notice to the Receiving Party that the document or thing produced is deemed "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" and should be treated as such in accordance with the provisions of this Protective Order, and may provide replacement media, images, and any associated production information to conform the document to the appropriate designation and facilitate use of the revised designation in the production. The Receiving Party must treat such documents and things with the noticed level of protection from the date such notice is received. Disclosure, prior to the receipt of such notice of such information, to persons not authorized to receive such information shall not be deemed a violation of this Protective Order. Any Producing Party may designate as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" or withdraw a "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" designation from any material that it has produced consistent with this Protective Order, provided, however, that such redesignation shall be effective only as of the date that notice of such redesignation is received. Such redesignation shall be accomplished by notifying Counsel for each Party in writing of such redesignation and providing replacement images bearing the appropriate description, along with the replacement media, images, and associated production information referenced above. Upon receipt of any redesignation and replacement image that designates material as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL", the Receiving Party shall (i) treat such material in accordance with this Protective Order; (ii) take reasonable steps to notify any persons known to have possession of any such material of such redesignation under this Protective Order; and (iii) promptly endeavor to procure all copies of such material from any persons known to have possession of such material who are not entitled to receipt under this Protective Order. It is understood that the Receiving Party's good faith efforts to procure all copies may not result in the actual return of all copies of such materials.

42.     A Receiving Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.  If the Receiving Party believes that a document or portion(s) of a document are not properly designated as Confidential Information or Highly Confidential Information, the Receiving Party will identify the specific information that it believes is improperly designated and notify the Designating Party, in writing or voice-to-voice dialogue, of its good faith belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain, in writing, within five (5) days, the basis of the chosen designation.  If a Receiving Party elects to press a challenge to a confidentiality designation after considering the justification offered by the Designating Party, it shall notify the Designating Party and the Receiving Party shall have two (2) days from such notification to challenge the designation by commencing an emergency hearing for a discovery dispute.  The ultimate burden of persuasion in any such challenge proceeding shall be on the Designating Party as if the Designating Party were seeking a Protective Order pursuant to Federal Rule of Civil Procedure 26(c), as incorporated by Federal Rule of Bankruptcy Procedure 7026, in the first instance.  Until the Bankruptcy Court rules on the challenge, all Parties shall continue to afford the material in question the level of protection to which it is entitled under the Designating Party's designation. In the even that a designation is changed by the Designating Party or by an order of the Court, the Designating Party shall provide replacement media, images, and associated production information as provided above.

### VIII.   Inadvertent Production of Documents

43.     The Parties agree that they do not intend to disclose information subject to a claim of attorney-client privilege, attorney work product protection, common-interest privilege, or any

other privilege, immunity or protection from production or disclosure ("**Privileged**
**Information**").  If, nevertheless, a Producing Party discloses Privileged Information, such
disclosure (as distinct from use) shall be deemed inadvertent without need of further showing
under Federal Rule of Evidence 502(b) and shall not constitute or be deemed a waiver or
forfeiture of the privilege or protection from discovery by that party (the "**Disclosing Party**") in
this case or in any other federal or state proceeding.  This Section shall be interpreted to provide
the maximum protection allowed by Federal Rule of Evidence 502(d).

44.    If a Producing Party discovers that it has produced Privileged Information, it shall
promptly notify the Receiving Party of the production in writing, shall identify the produced
Privileged Information by Bates range where possible, and may demand that the Receiving Party
return or destroy the Privileged Information.  In the event that a Receiving Party receives
information that it believes is subject to a good faith claim of privilege by the Disclosing Party,
the Receiving Party shall immediately refrain from examining the information and shall
promptly notify the Disclosing Party in writing that the Receiving Party possesses potentially
Privileged Information.  The Disclosing Party shall have two (2) days to assert privilege over the
identified information.  If the Disclosing Party does not assert a claim of privilege within the two
(2)-day period, the information in question shall be deemed non-privileged.

45.    If the Disclosing Party has notified the Receiving Party of production of
Privileged Information, or has confirmed the production of Privileged Information called to its
attention by the Receiving Party, the Receiving Party shall within five (5) days of receiving such
notification or confirmation: (1) destroy or return to the Disclosing Party all copies or versions of
the produced Privileged Information requested to be returned or destroyed (the "**Clawed-Back**
**Information**"); (2) delete from its work product or other materials any quoted or paraphrased

portions of the Clawed-Back Information; and (3) ensure that Clawed-Back Information is not disclosed in any manner to any Party or non-Party.  The following procedures shall be followed to ensure all copies of such ESI are appropriately removed from the Receiving Party's system:

     i.     Locate each recalled document in the document review/production database and delete the record from the database;

     ii.     If there is a native file link to the recalled document, remove the native file from the network path;

     iii.     If the database has an image load file, locate the document image(s) loaded into the viewing software and delete the image file(s) corresponding to the recalled documents.  Remove the line(s) corresponding to the document image(s) from the image load file;

     iv.     Apply the same process to any additional copies of the document or database, where possible;

     v.     Locate and destroy all other copies of the document, whether in electronic or hardcopy form.  To the extent that copies of the document are contained on write-protected media, such as CDs or DVDs, these media shall be discarded, with the exception of production media received from the Disclosing Party, which shall be treated as described herein;

     vi.     If the document was produced in a write-protected format, the Disclosing Party shall, at its election, either (i) provide a replacement copy of the relevant production from which the document has been removed, in which case the Receiving Party shall discard the original production media; or (ii) allow the Receiving Party to retain the original

production media, in which case the Receiving Party shall take steps to ensure that the recalled document will not be used; and

vii.    Confirm that the recall of ESI under this procedure is complete by way of letter to the Disclosing Party.

46.    Notwithstanding the above, the Receiving Party may segregate and retain one copy of such Clawed-Back Information solely for the purpose of disputing the claim of privilege. The Receiving Party shall not use any Clawed-Back Information in connection with this Proceeding or for any other purpose other than to dispute the claim of privilege.  The Receiving Party may file a motion disputing the claim of privilege and seeking an order compelling production of the Clawed-Back Information; the Disclosing Party may oppose any such motion, including on the grounds that inadvertent disclosure does not waive privilege.

47.    Within five (5) days of the notification that the Clawed-Back Information has been returned, destroyed, sequestered, or deleted, the Disclosing Party shall produce a privilege log with respect to the Clawed-Back Information.  Within two (2) days after receiving the Disclosing Party's privilege log with respect to such Clawed-Back Information, a Receiving Party may notify the Disclosing Party in writing of an objection to a claim of privilege or work-product protection with respect to the Clawed-Back Information.  Within three (3) days of the receipt of such notification, the Disclosing Party and the Receiving Party shall meet and confer in an effort to resolve any disagreement concerning the Disclosing Party's privilege or work-product claim with respect to such Clawed-Back Information.  The Parties may stipulate to extend the time periods set forth in this paragraph.

48.    If, for any reason, the Disclosing Party and Receiving Party (or Receiving Parties) do not resolve their disagreement after conducting the mandatory meet and confer, the Receiving

Party may request a conference or seek an emergency hearing with the Bankruptcy Court.  The

Disclosing Party bears the burden of establishing the privileged or protected nature of any

Privileged Information, including Clawed-Back Information.

49.     Nothing contained herein is intended to or shall serve to limit a Party's right to

conduct a review of documents, ESI, or information (including metadata) for relevance,

responsiveness and/or segregation of privileged and/or protected information before production.

Nothing in this Protective Order shall limit the Court's right or any Party's right to request an in-

camera review of any Privileged Information.

50.     In the event any prior order or agreement between the Parties and/or between the

Parties and a non-Party concerning the disclosure of privileged and/or work product protected

materials conflicts with any of the provisions of the Protective Order, the provisions of the

Protective Order shall control.

### IX.    Filing and Use at the Preliminary Injunction Hearing of Protected Material

51.     If any Party determines to file or otherwise submits to the Court any documents or

exhibits containing or making references to the content of Confidential or Highly Confidential

Information, including, but not limited to, briefs, pleadings, memoranda, transcripts, and

discovery responses, such documents or exhibits shall be filed under seal unless (i) at least two

(2) days (but in no event less than 48 hours) prior to the filing or submission such Party identifies

to the Designating Party such Confidential or Highly Confidential Information it intends to file,

reference, submit, or otherwise use, and (ii) such Party either (1) obtains from the Designating

Party a waiver of the prohibition against filing, referencing, submitting, or otherwise using such

Confidential or Highly Confidential Information (except under seal), or (2) obtains an order of

the Court, upon prior notice of the Designating Party, modifying or eliminating such prohibition.

52.     A Party that intends to present Confidential Information or Highly Confidential Information at the Preliminary Injunction Hearing shall bring that issue to the Court's and Parties' attention without disclosing the Confidential Information or Highly Confidential Information no later than three (3) days prior to the Preliminary Injunction Hearing.  The Court may thereafter make such orders, including any stipulated orders, as are necessary to govern the use of Confidential Information or Highly Confidential Information at the Preliminary Injunction Hearing.  The use of any Confidential Information or Highly Confidential Information at the Preliminary Injunction Hearing shall be governed by a separate stipulation and/or court order.

**X.     Confidential Information or Highly Confidential Information Requested by Third Party; Procedure Following Request.**

53.     If any Receiving Party is served with a subpoena, a request for information, or any other form of legal process that purports to compel disclosure of any Confidential Information or Highly Confidential Information covered by this Protective Order ("**Request**"), the Receiving Party must so notify the Designating Party, in writing, immediately and in no event more than five (5) days after receiving the Request.  Such notification must include a copy of the Request.

54.     The Receiving Party also must immediately inform the party who made the Request (the "**Requestor**") in writing that some or all the requested material is the subject of this Protective Order.  In addition, the Receiving Party must deliver a copy of this Protective Order promptly to the Requestor.

55.     The purpose of imposing these duties is to alert the Requestor to the existence of this Protective Order and to afford the Designating Party an opportunity to protect its Confidential Information or Highly Confidential Information.  The Designating Party shall bear the burden and the expense of seeking protection of its Confidential Information or Highly

Confidential Information.  The obligations set forth in this paragraph remain in effect while the Receiving Party has in its possession, custody, or control Confidential Information or Highly Confidential Information of another Party.

56.    Materials that have been designated as Confidential or Highly Confidential shall not be provided or disclosed to any third party in response to a request under any public records act, or any similar federal, state or municipal law (collectively, the "**Public Disclosure Laws**"), and are exempt from disclosure pursuant to this Protective Order.  If a Receiving Party receives such a request, it shall (i) provide a copy of this Protective Order to the Requestor and inform the Requestor that the requested materials are exempt from disclosure and that the Receiving Party is barred by this Protective Order from disclosing them, and (ii) promptly inform the Designating Party that the request has been made, identifying the name of the Requestor and the particular materials sought.  If the Designating Party seeks a protective order, the Receiving Party shall not disclose such material until the court from which the Requestor sought discovery has ruled on the request for a protective order.  The restrictions in this paragraph shall not apply to materials that (i) the Designating Party expressly consents in writing to disclosure; or (ii) this Court has determined by order of the Court to have been improperly designated as Confidential or Highly Confidential.  The provisions of this section shall apply to any entity in receipt of Confidential or Highly Confidential Information governed by this Protective Order.  Nothing in this Protective Order shall be deemed to (1) foreclose any Party from arguing that Discovery Material is not a public record for purposes of the Public Disclosure Laws; (2) prevent any Party from claiming any applicable exemption to the Public Disclosure Laws; or (3) limit any arguments that a Party may make as to why Discovery Material is exempt from disclosure.

### XI.    Miscellaneous Provisions

57.    Nothing in this Protective Order or any action or agreement of a Party under this Protective Order limits the Court's power to make any orders that it deems appropriate with respect to the use and disclosure of any documents produced or used in discovery or at the hearing.

58.    Nothing in this Protective Order shall abridge the right of any Party to seek judicial review or to pursue other appropriate judicial action to seek a modification or amendment of this Protective Order.

59.    In the event any Party shall violate or threaten to violate the terms of this Protective Order, the Designating Party may immediately apply to obtain injunctive relief against any Party violating or threatening to violate any of the terms of this Protective Order, and in the event the Designating Party shall do so, the respondent Party, subject to the provisions of this Protective Order, shall not employ as a defense thereto the claim that the Designating Party possesses an adequate remedy at law.

60.    This Protective Order shall not be construed as waiving any right to assert a claim of privilege, relevance, or other grounds for not producing Discovery Material called for, and access to such Discovery Material shall be only as provided for by separate agreement of the Parties or by the Bankruptcy Court.

61.    This Protective Order may be amended without leave of the Bankruptcy Court by agreement of Outside Counsel for the Parties in the form of a written stipulation filed with the Bankruptcy Court.  The Protective Order shall continue in force until amended or superseded by express order of the Court, and shall survive and remain in effect after the termination of the Adversary Proceeding.

62.     This Protective Order is entered for the purpose of facilitating this Adversary Proceeding.  Nothing herein shall be construed or presented as a judicial determination that any documents or information designated as Confidential or Highly Confidential is subject to protection under Federal Rule of Civil Procedure 26(c), Federal Rule of Bankruptcy Procedure 7026, or otherwise until such time as the Court may rule on a specific document or issue.  This Protective Order is not intended to create, expand, or contract substantive rights or privileges.  It is intended solely to provide a procedural mechanism to enable the Parties to raise claims and preserve issues in a format which facilitates the disclosure process.

**SO ORDERED.**

Dated:    September ___, 2019
              White Plains, New York


                                        By: _____
                                        The Honorable Robert D. Drain
                                        United States Bankruptcy Judge

**<u>Appendix I</u>**


**Acknowledgement and Agreement
to be Bound by Protective Order**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Marc J. Tobak
Gerard X. McCarthy

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.**, *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.[3]** | **(Jointly Administered)** |
| **PURDUE PHARMA L.P.**, *et al.*, | |
| **Plaintiffs**, | **Adv. Pro. No. 19-08289 (RDD)** |
| v. | |
| **COMMONWEALTH OF MASSACHUSETTS**, *et al.*, | |
| **Defendants.** | |

## ACKNOWLEDGMENT AND AGREEMENT
## TO BE BOUND BY PROTECTIVE ORDER

---

[3] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014).  The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

The undersigned agrees:

On behalf of the Parties named below (the "**Parties**"; individually the "**Party**"), I declare under penalty of perjury that each Party has read in its entirety and understands the Protective Order that was issued by the United States Bankruptcy Court for the Southern District of New York in the above-captioned adversary proceeding (the "**Adversary Proceeding**").

Each Party agrees to comply with and to be bound by all the terms of the Protective Order, and each Party understands and acknowledges that failure to so comply could expose that Party to sanctions and punishment in the nature of contempt. Each Party solemnly promises that it will not disclose in any manner any information or item that is subject to the Protective Order to any person or entity except in strict compliance with the provisions of the Protective Order.

Each Party further agrees to submit to the jurisdiction of the United States Bankruptcy Court for the Southern District of New York for the purposes of enforcing terms of the Protective Order, even if such enforcement proceedings occur after termination of the Adversary Proceeding.

Name of Requesting Counsel: _____

Law Office of Requesting Counsel: _____

Names of all Parties Represented by Requesting Counsel _____

_____

_____

_____

_____

By: _____
                  Signature

Signed in _____, _____, on this _____ day of _____, 2019

## **Exhibit 2**

**Request Form**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Marc J. Tobak
Gerard X. McCarthy

*Proposed Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |
| **PURDUE PHARMA L.P.,** *et al.*, | |
| **Plaintiffs**, | **Adv. Pro. No. 19-08289 (RDD)** |
| v. | |
| **COMMONWEALTH OF MASSACHUSETTS,** *et al.*, | |
| **Defendants.** | |

<u>**REQUEST FORM**</u>

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

The undersigned requests:

On behalf of the parties identified below (the "**Parties**"), I request access to the PI Data Repository as defined in the *Order Establishing a Schedule in Connection with the Preliminary Injunction Motion* in the above-captioned adversary proceeding.

Name of Requesting Counsel: _____

Law Office of Requesting Counsel: _____

Email of Requesting Counsel: _____

Names of all Parties Represented by Requesting Counsel _____

_____

_____

_____

_____

Names, Law Offices, and Emails of Up to Three Persons to Receive Login Credentials:

|  | **Name** | **Law Office** | **Email** |
|---|---|---|---|
| (1) |  |  |  |
| (2) |  |  |  |
| (3) |  |  |  |

By: _____

Signature

Signed in _____, _____, on this _____ day of _____, 2019