Seth A. Meyer
sam@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
Tel: 312.741.5220

J. Michael Connolly (*pro hac vice* approved)
mike@consovoymccarthy.com
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, Virginia 22209
Tel: 703.243.9423

*Attorneys for The State of Arizona*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| PURDUE PHARMA L.P., *et al*., | Case No. 19-23649 (RDD) |
| Debtors.[1] | Jointly Administered |
| PURDUE PHARMA L.P., *et al*., | Adv. Pro. No. 19-08289 (RDD) |
| Plaintiffs, | |
| v. | |
| COMMONWEALTH OF MASSACHUSETTS, et al., | |
| Defendants. | |

**OBJECTION AND RESPONSE OF THE STATE OF ARIZONA TO DEBTORS'**
**MOTION FOR A PRELIMINARY INJUNCTION**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

1

The State of Arizona, *ex rel.* Attorney General Mark Brnovich ("Arizona"), respectfully submits this opposition (the "Opposition")[2] to the Motion for Preliminary Injunction [Adversary Dkt. No. 2] (the "Motion") filed by Purdue Pharma L.P. and certain of its affiliates (collectively, "Purdue" or "Debtors") seeking to enjoin Arizona (and other states) from prosecuting (1) police and regulatory power actions against Purdue, and (2) actions against non-debtors, including members of the Sackler family. Arizona initially agreed to support Purdue's proposed Settlement Structure, as outlined in Debtors' Informational Brief ("Informational Brief") [Dkt. 17], which prescribed non-opposition to the Motion as consideration for numerous terms offered by Debtors. At nearly every turn during the course of subsequent negotiations, Debtors have sought to undermine material terms of the deal. In support of this Opposition, Arizona states as follows:

**INTRODUCTION**

The Motion seeks to preliminarily enjoin more than 2,600 actions for 270 days, arguing that they must be halted to preserve the goals of these chapter 11 cases. Motion; Memorandum of Law in Support of Motion for a Preliminary Injunction [Adversary Dkt. No. 3 (the "Memorandum")]. Among those cases are (1) *Arizona ex rel. Brnovich v. Purdue Pharma, L.P., et al.*, No. C20072471 (Ariz. Super. Ct.) pending before the Pima County Superior Court (the "Superior Court Action"), and (2) *Arizona ex rel. Brnovich v. Purdue Pharma, L.P., et al.*, No. 22O151 pending before the Supreme Court of the United States of America (the "Supreme Court Action") (collectively the "Actions"). Motion, Ex. A [Adversary Dkt. No. 1-1]. Both actions

---

[2] Arizona and the other members of the Ad Hoc Committee have been given an extension by Debtors to file Oppositions to the Motion until 3:00 p.m. EST, October 7, 2019.

name Debtors, eight members of the Sackler family ("the Sacklers"), and several related corporate entities.[3]

## ARGUMENT

The Actions should not be stayed for several reasons. First, the Motion should be denied with respect to the Superior Court Action vis-à-vis Debtors because that case falls within the police-power exception to the automatic stay. 11 U.S.C. § 362(b)(4). Arizona joins in the assertions in the States' Coordinated Opposition to Debtors' Motion for Preliminary Injunction of State Enforcement Actions Against Purdue [Adversary Dkt. No. 42 at pp. 12-36].

Second, the Motion should be denied with respect to both the Superior Court Action and the Supreme Court Action vis-à-vis the Sacklers and related corporate entities because they are not debtors in the underlying proceeding. For this argument, Arizona joins in the assertions in the State's Coordinated Opposition to Debtors' Motion for Preliminary Injunction of States' Law Enforcement Actions Against the Sacklers [Adversary Dkt. No. 41 at pp. 10-30].

Third, the Motion should be denied with respect to the Supreme Court Action against all named parties because: (a) enjoining the Supreme Court of the United States from exercising its original jurisdiction would unconstitutionally violate essential separation-of-powers principles, and (b) this non-Article III court lacks constitutional authority to enter a final judgment on Arizona's fraudulent transfer claims levied in that Bill of Complaint. Arizona writes separately on both points because it is the only creditor with an action before our Nation's highest Court that Debtors seek to enjoin.

---

[3] The named defendants in both actions include Richard Sackler, Theresa Sackler, Kathe Sackler, Jonathan Sackler, Mortimer D.A. Sackler, Beverly Sackler, David Sackler, Ilene Sackler Lefcourt, Purdue Pharma, Inc., Purdue Pharma, L.P., The Purdue Frederick Company, Inc., Purdue Holdings L.P., PLP Associates L.P., Rosebay Medical Company L.P., and Beacon Company.

### a. Enjoining the Supreme Court Action Would Violate Separation of Powers

"Where original jurisdiction is given by the constitution to the Supreme Court, Congress cannot distribute any part of such original jurisdiction to an inferior federal tribunal." *Osborn v. Bank of U.S.*, 22 U.S. 738, 757 (1824) (citing *Marbury v. Madison*, 5 U.S. 137, 174 (1803)).  The Supreme Court has original jurisdiction over the Supreme Court Action.  Article III of the Constitution extends the judicial power to controversies "between a state and citizens of another state," and grants the Supreme Court original jurisdiction over all cases "in which a State shall be Party."  Article III, § 2, cl. 2.  Arizona is plainly a state, and none of the defendants to the Supreme Court Action are citizens of Arizona.  Accordingly, though Congress may be free to vest this Court with jurisdiction over matters pending in "inferior" federal tribunals—and thereby authorize this Court to stay those proceedings in aid of its jurisdiction—the legislative branch has *no* authority to alter or abrogate the Supreme Court's original jurisdiction over the Supreme Court Action.  *Osborn,* 22 U.S. at 757.  Any bankruptcy statute to the contrary is unconstitutional as applied to matters invoking the Supreme Court's original jurisdiction.  *Id.*  This Court—which itself is not an Article III tribunal—must deny any request to enjoin the Nation's highest Court.  At a minimum, the longstanding constitutional principles in tension with such an injunction suggest the Court should exercise its discretion to deny the stay as applied to the Supreme Court Action.

### b. This Court Cannot Enter Final Judgment on Arizona's Fraudulent Transfer Claims

Article III, § 1 of the Constitution mandates that "[t]he judicial Power of the United States, shall be vested in one Supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish."  Article III is "an inseparable element of the constitutional system of checks and balances" that "both defines the power and protects the independence of the Judicial Branch."  *Stern v. Marshall*, 564 U.S. 462, 482 (2011) (citation omitted).  "Article III could neither

serve its purpose in the system of checks and balances nor preserve the integrity of judicial decision making if the other branches of the Federal Government could confer the Government's 'judicial Power' on entities outside Article III." *Id*.

That is why the Supreme Court has long recognized that Congress may not "withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty." *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272, 284 (1856). "When a suit is made of 'the stuff of the traditional actions at common law tried by the courts at Westminster in 1789,' and is brought within the bounds of federal jurisdiction, the responsibility for deciding that suit rests with Article III judges in Article III courts." *Stern*, 564 U.S. at 482 (quoting *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 90 (1982) (Rehnquist, J., concurring)). "The Constitution assigns that job—resolution of the mundane as well as the glamorous, matters of common law and statute as well as constitutional law, issues of fact as well as issues of law—to the Judiciary." *Id*. (citation omitted).

Arizona's Supreme Court Action brings claims against Debtors, the Sacklers, and related corporate entities for fraudulent conveyance. Fraudulent conveyance actions are "quintessentially suits at common law" that "resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 56 (1989). As a consequence, "fraudulent conveyance claims . . . cannot be adjudicated by non-Article III judges." *In re Bellingham Ins. Agency, Inc.*, 702 F.3d 553, 561 (9th Cir. 2013); *see also Exec. Benefits Ins. Agency v. Arkison,* 573 U.S. 25, 37 (2014) (assuming without deciding that "the fraudulent conveyance claims in this case are *Stern* claims"). Indeed, multiple courts in this district have recognized that these actions cannot be finally decided in bankruptcy court. *See Kirschner v. Agoglia*, 476 B.R. 75, 81 (S.D.N.Y. 2012) ("This Court concludes that simple logic dictates

5

unequivocally that fraudulent conveyance claims like those brought here are 'private rights' claims that, under *Stern* and the Constitution, must be finally decided by an Article III Court."); *In re Lyondell Chem Co.*, 467 B.R. 712, 720-21 (S.D.N.Y. 2012) (same); *In re Arbco Capital Management, LLP*, 479 B.R. 254, 264 (S.D.N.Y. 2012) (same).

Because this Court lacks constitutional authority to finally decide fraudulent conveyance actions, the Court should not stay the Supreme Court Action. The purpose of Section 362(a) of the Bankruptcy Code is to "reinforce the *exclusive jurisdiction* of the bankruptcy court." *In re Heating Oil Partners*, 2009 5110838, at *8 (D. Conn. Dec. 17, 2009) (citing *Eastern Refractories Co., Inc. v. Forty-Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir. 1998)) (emphasis added). But this Court has no jurisdiction—let alone exclusive jurisdiction—to finally resolve the fraudulent conveyance claims Debtors seek to stay. Arizona's fraudulent conveyance claims pending before the Supreme Court should be allowed to proceed.

## CONCLUSION

For the reasons stated above, the Court should not enjoin Arizona's Superior Court Action or Supreme Court Action.

Respectfully submitted,

Dated: October 7, 2019

By: */s/ Seth A. Meyer*

Seth A. Meyer
sam@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
Tel: 312.741.5220

J. Michael Connolly (*pro hac vice* approved)
mike@consovoymccarthy.com
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, Virginia 22209
Tel: 703.243.9423
*Attorneys for the State of Arizona*

6

## CERTIFICATE OF SERVICE

The undersigned certifies that on October 7, 2019, he caused a true copy of the foregoing *Objection and Response of the State of Arizona to Debtors' Motion for a Preliminary Injunction* to be served electronically upon all parties in interest registered to receive notice through the Court's CM/ECF System.

*/s/ Seth A. Meyer*
Seth A. Meyer