UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| Debtors.[1] | **(Jointly Administered)** |
| **PURDUE PHARMA L.P.,** *et al.*, | |
| Plaintiffs, | **Adv. Pro. No. 19-08289** |
| v. | |
| **COMMONWEALTH OF MASSACHUSETTS,** *et al.*, | |
| Defendants. | |

### AMENDED ORDER PURSUANT TO 11 U.S.C. § 105(a) GRANTING, IN PART, MOTION FOR A PRELIMINARY INJUNCTION

Upon the motion, dated September 18, 2019 ("**Motion**"), of Purdue Pharma L.P. and

certain affiliated debtors, as debtors and debtors in possession (collectively, "**Debtors**"), which

are plaintiffs in this adversary proceeding, for an order pursuant to section § 105(a) of title 11 of

the United States Code ("**Bankruptcy Code**") and Rule 7065 of the Federal Rules of Bankruptcy

Procedure ("**Bankruptcy Rules**"), to (i) enjoin the governmental defendants in this adversary

proceeding ("**Governmental Defendants**") from the commencement or continuation of their

active judicial, administrative, or other actions or proceedings against the Debtors that were or

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014).  The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

could have been commenced before the commencement of the case ("**Governmental Actions**"),

which are identified in Exhibit A to the Complaint, as well as the commencement or continuation

of any other actions against the Debtors alleging substantially similar facts or causes of action as

those alleged in the Governmental Actions, and (ii) enjoin the Governmental Defendants and the

private defendants ("**Private Defendants**") in this adversary proceeding from the

commencement or continuation of their active judicial, administrative, or other actions or

proceedings, identified in Exhibit B to the Complaint, and the commencement or continuation of

other actions alleging substantially similar facts or causes of action as those alleged in the actions

identified in Exhibit A or Exhibit B to the Complaint, against former or current (a) owners

(including any trusts and their respective trustees and beneficiaries), (b) directors, (c) officers,

(d) employees, and (e) other similar associated entities of the Debtors that were or could have

been commenced before the commencement of the case ("**Related Parties**," as identified in

Exhibit B to the Complaint, and the claims against them described in this paragraph, the

"**Related-Party Claims**"); and the Court having jurisdiction to decide the Motion and the relief

requested therein under 28 U.S.C. §§ 157(a)-(b) and 1334(b); and there being due and sufficient

notice of the Motion; and the Court having reviewed the Complaint, the Motion, the Debtors'

brief in support of the Motion, the declarations in support of the Motion, and other evidence and

argument submitted by the Debtors in support thereof; all pleadings filed in support of the

Motion; and all objections filed in opposition or partial opposition to the Motion, as well as all

filed letters in response to the Motion; and upon the record of and representations made at the

hearing held by the Court on the Motion's request for entry of a preliminary injunction on

October 11, 2019 (the "**Hearing**"); and, after due deliberation and for the reasons set forth on the

record by the Court at the Hearing, good and sufficient cause appearing having entered an Order

granting the Motion in part; and such Order having contemplated a procedure to amend the

Order; and good and sufficient cause appearing to amend such Order as provided herein, the

Court grants the Debtors' request to amend the Order as provided in this Amended Order, which

amends and supersedes the Court's prior Order.  Now, therefore, the Court finds and concludes

as follows:

(a)     The Plaintiffs in these adversary proceedings are the Debtors.  The

Defendants in this adversary proceeding are the Governmental Defendants and the

Private Defendants, which are listed in the caption to the Complaint and in the

"Underlying Plaintiffs" column of Exhibit A and Exhibit B to the Complaint, with such

Exhibits being made a part of and incorporated in this Order.  The Defendants in this

adversary proceeding are all plaintiffs in judicial, administrative, or other actions or

proceedings that seek to hold the Debtors and/or the Related Parties, as identified in

Exhibit B, liable in connection with claims and/or causes of action arising out of or

otherwise related to the Debtors' prescription opioid business.

(b)     The Court has jurisdiction over this matter pursuant to 28 U.S.C.

§§ 157(a)-(b) and 1334(b).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

(c)     The Debtors have demonstrated that the continuation of the active

litigation against them and the Related Parties, identified in Exhibits A and B to the

Complaint, respectively, would result in irreparable harm to the Debtors and their

reorganization.

(d)     The representatives of the Raymond Sackler family and of the Mortimer

Sackler family (collectively, the "**Sackler Families**") agreed on the record at the Hearing

to toll all applicable statutes of limitations and similar time limits on the commencement

of Additional Actions against any member of the Sackler Families, and to treat as

inoperative all deadlines (including deadlines for appeals) in any currently pending

Related Party Claim against any member of the Sackler Families, for the duration of this

preliminary injunction.

(e)     Accordingly, this Court finds it appropriate to enter a preliminary

injunction as provided herein pursuant to section § 105(a) of the Bankruptcy Code and

Rule 7065 of the Bankruptcy Rules.

(f)     The legal and factual bases set forth in the Complaint, the Motion, the

Brief, other supporting papers, and at the Hearing establish just cause for the limited

relief granted herein.

Based on these findings, it is hereby:

ORDERED, that the Governmental Defendants and the Private Defendants are prohibited

and enjoined[2] from (i) the commencement or continuation of their active judicial, administrative,

or other actions or proceedings against the Debtors and/or Related Parties that were or could

have been commenced before the commencement of the case under this title against the Debtors

and/or the Related Parties arising from or in any way relating to the Debtors' prescription opioid

business, including the actions reflected in the attached Exhibit A and Exhibit B, as well as

(ii) from commencing or continuing any other actions against the Debtors or Related Parties

alleging substantially similar facts or causes of action as those alleged in actions reflected in the

---

[2] Based upon the representation of counsel at the Hearing and by notice to Debtors as per the terms of the Court's
Order Pursuant to 11 U.S.C. § 105(a) Granting, in Part, Motion for a Preliminary Injunction dated October 11, 2019,
the following entities are not enjoined pursuant to this Order, but voluntarily consent to abide by the terms of this
Order in full: Arizona; California; Colorado; Connecticut; Delaware; Hawaii; Illinois; Iowa; Maine; Maryland;
Massachusetts; Nevada; New Hampshire; New Jersey, New York; North Carolina; Oregon; Pennsylvania; Rhode
Island; Vermont; Virginia; Washington; the District of Columbia; Nevada Counties and Municipalities, represented
by Loeb & Loeb LLP; the Multi-State Governmental Entities Group, represented by Caplin & Drysdale, Chartered;
the Municipality Consortium, represented by Scott+Scott Attorneys at Law LLP.

attached Exhibit A and Exhibit B, in each case through and including Wednesday, November 6, 2019.  The preliminary injunction period may be extended by further order of the Court.

ORDERED, that the Debtors in these chapter 11 cases shall be subject to the Voluntary Injunction annexed hereto as Appendix 1.

ORDERED, that the Debtors need not give security in connection with this injunctive relief.

ORDERED, that this Order shall be promptly filed in the Clerk's Office and entered into the record.

ORDERED, that the Debtors are authorized to take all steps necessary or appropriate to carry out this Order.

ORDERED, that nothing in this Order shall prevent the Debtors from seeking a further extension of the requested injunction.

ORDERED, that if, while the preliminary injunction provided for in this Order is effective, either (i) any inactive litigation currently pending against the Debtors or Related Parties becomes active, or (ii) any new action is commenced against the Debtors or Related Parties (in either case, an "**Additional Action**"), the Debtors may promptly serve the plaintiff or plaintiffs in such Additional Action ("**Applicable Plaintiff**") with a copy of the Complaint, the Motion, the Debtors' memorandum of law in support of the Motion, and this Order (the "**Service Documents**").  The Debtors shall file a notice of such service on the docket promptly after service.  If the Applicable Plaintiff in such Additional Action does not file and serve an objection within seven (7) days of service of the Service Documents, the Court may determine whether such Additional Action should be enjoined pursuant to this Order without further proceedings.  If the Applicable Plaintiff files and serves an objection, the Debtors shall have the

right to file and serve a response to the objection within seven (7) days of service of the objection, after which the Court may determine whether such Additional Action should be enjoined pursuant to this Order without further proceedings, or either party may seek to schedule and provide notice of a hearing.

ORDERED, that all applicable statutes of limitations and similar time limits on the commencement of Additional Actions, and all deadlines (including deadlines for appeals) in any currently pending Governmental Action or Related Party Claim (including as agreed on the record at the Hearing by the representatives of the Sackler Families), shall be tolled or otherwise inoperative for the duration of this preliminary injunction.  This is without prejudice to any party's rights to assert that any currently pending Governmental Action or Related Party Claim is time barred, or that commencement of any Additional Action, or any other action taken by a party with respect to any Governmental Action or Related Party Claim after the entry of this Order would have been time barred or untimely had it been commenced or taken before the entry of this Order.

ORDERED, that nothing in this Order shall affect or abrogate the automatic stay as to the Debtors under section 362 of the Bankruptcy Code.

ORDERED, that, for the avoidance of doubt, any failure to appeal this Order shall not prejudice the ability of any party to appeal any subsequent Order related to the subject matter of the Motion.

ORDERED, that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: White Plains, New York
      October 18, 2019          /s/ Robert D. Drain_____
                                THE HONORABLE ROBERT D. DRAIN
                                UNITED STATES BANKRUPTCY JUDGE

## Appendix 1

**Voluntary Injunction**

## I.   DEFINITIONS

A.   "Cancer-Related Pain Care" shall mean care that provides relief from pain caused by active cancer or ongoing cancer related treatment.

B.   "Company" shall mean the Debtors as defined in these chapter 11 proceedings.

C.   "End-of-Life Care" shall mean care for persons with a terminal illness or at high risk for dying in the near future in hospice care, skilled nursing care, hospitals, long-term care settings, assisted living facilities, outpatient care, or at home.

D.   "Health Care Provider" shall mean any physician, nurse practitioner, physician assistant, dentist, pharmacist, podiatrist, nurse, or other person engaged in providing health care services and/or prescribing an Opioid and any medical facility, practice, hospital, clinic, or pharmacy engaged in providing health care services and/or prescribing an Opioid.

E.   "In-Kind Support" shall mean payment or assistance in the form of goods, commodities, services, or anything else of value.

F.   "Opioid(s)" shall mean all natural, semi-synthetic, or synthetic chemicals that stimulate opioid receptors on nerve cells in the body and brain.

G.   "Opioid Product(s)" shall mean all natural, semi-synthetic, or synthetic chemicals that stimulate opioid receptors on nerve cells in the body and brain, and that are approved by the U.S. Food & Drug Administration (FDA) and listed by the DEA as Schedule II or III drugs pursuant to the federal Controlled Substances Act (including but not limited to codeine, fentanyl, hydrocodone, hydromorphone, meperidine, methadone, morphine, oxycodone, oxymorphone, tapentadol, tramadol, and buprenorphine for the treatment of pain).  The term "Opioid Products(s)" shall not mean (i) methadone, buprenorphine, and other substances when used exclusively to treat opioid or other substance use disorders, abuse, addiction, or overdose; (ii) raw materials and/or immediate precursors used in the manufacture or study of Opioids or Opioid Products, but only when such materials and/or immediate precursors are sold or marketed exclusively to DEA-licensed manufacturers or DEA-licensed researchers; or (iii) Opioid Products listed by the DEA as Schedule IV drugs pursuant to the federal Controlled Substances Act.

H.   "Promote," "Promoting," and "Promotion" shall mean the dissemination of marketing or advertising information or the use of marketing or advertising tactics by Company to a Health Care Provider or patient, the intent or effect of which is to induce prescription or purchase of Company Opioid Products by Health Care Providers.

I.   "Third Party" shall mean any person or entity other than Company or a government entity.

J.   "Treatment of Pain" shall mean the provision of therapeutic modalities to alleviate or reduce pain.  "Treatment of Pain" shall not include the provision of any specific non-Opioid manufactured or sold by Company that is approved or cleared by the FDA to

8

treat pain, including but not limited to medical devices, acetaminophen, anesthetics, or aspirin, and other steroid or non-steroidal anti-inflammatory drugs.

K.    "Unbranded Information" shall mean any information regarding an Opioid, Opioid Product, or the Treatment of Pain that does not identify a specific product(s).

## II.    INJUNCTIVE RELIEF

### A.    Ban on Promotion to Prescribers and Patients

1.    Company shall not engage in Promotion of Opioids or Opioid Products as defined in Section I, by:

   a.    Employing or contracting with sales representatives to Promote Opioids or Opioid Products to Health Care Providers or patients;

   b.    Using speakers, key opinion leaders, thought leaders, lecturers, and/or speaking events for Promotion of Opioids or Opioid Products;

   c.    Sponsoring, or otherwise providing financial support or In-Kind Support to medical education programs for the Promotion of Opioids or Opioid Products;

   d.    Creating, sponsoring, operating, controlling, or otherwise providing financial support or In-Kind Support to any website, network and/or social or other media account for the Promotion of Opioids or Opioid Products;

   e.    Creating, sponsoring, distributing, or otherwise providing financial support or In-Kind Support for materials Promoting Opioids or Opioid Products, including but not limited to brochures, newsletters, pamphlets, journals, books, and guides; and

   f.    Creating, sponsoring, or otherwise providing financial support or In-Kind Support for advertisements that Promote Opioids or Opioid Products, including but not limited to internet advertisements or similar content, and providing hyperlinks or otherwise directing internet traffic to advertisements.

2.    Notwithstanding Section II.A.1 directly above, as well as Section II.C, Company may:

   a.    Maintain corporate websites;

9

b. Maintain a website for any Opioid Product that contains principally the following content: the FDA-approved package inserts, dosage strengths, dosage forms, packaging configurations, medication guides, and labeling; a statement directing patients or caregivers to speak with a licensed Health Care Provider; Risk Evaluation and Mitigation Strategy (REMS) materials; and contact information to report an adverse event or product complaint;

c. Provide information or support the provision of information as expressly required by law or any state or federal government agency with jurisdiction;

d. Provide the following by mail, electronic mail, on or though the Company's corporate or product websites or through other electronic or digital methods: FDA-approved package insert, medication guide, approved labeling for Opioid Products, Risk Evaluation and Mitigation Strategy materials, or other prescribing information for Opioid Products that are published by a state or federal government agency with jurisdiction;

e. Provide scientific and/or medical information in response to an unsolicited request by a Health Care Provider concerning either on-label or off-label uses of Opioid Products;

f. Provide a response to any unsolicited question or request from a patient or caregiver by (i) directing the patient or caregiver to the FDA-approved labeling and reviewing the full prescribing information with the patient as relevant to their inquiry, and, to the extent the question cannot be answered solely by reference to a specific provision of the FDA-approved labeling, providing a response that is truthful, balanced, nonmisleading and nonpromotional; (ii) recommending that the patient or caregiver speak with a licensed Health Care Provider without naming any specific provider or healthcare institution; (iii) directing the patient or caregiver to speak with their insurance carrier regarding coverage of an Opioid Product;

g. Provide information to a payor, formulary committee, or other similar entity with knowledge and expertise in the area of health care economic analysis concerning the cost or availability of a Purdue Opioid Product, including the costs compared to the cost of an Opioid Product manufactured or distributed by another company. Such information may include information about the stocking of the Opioid Product; product attributes of the Opioid Product as described in the FDA-approved labeling; the tier designation of the Opioid Product within the formulary or drug list; applicable prescribing guidelines, pathways, and protocols, including step-edits for the Opioid Product; restrictions; and/or prior

10

authorization status concerning an Opioid Product. All information provided shall be consistent with the FDA-approved labeling;

h.   Provide information to a payor, formulary committee, or other similar entity with responses to unsolicited requests for scientific and medical information that are truthful, balanced, non-misleading and nonpromotional;

i.   Sponsor or provide financial support or In-Kind Support for an accredited or approved continuing medical education program required by either an FDA-approved Risk Evaluation and Mitigation Strategy program or other federal or state law or regulation through an independent Third Party, which shall be responsible for determining the program's content without the participation of Company; and

j.   Provide Unbranded Information in connection with managing pain in End-of-Life Care, and/or Cancer-Related Pain Care relating to: the use of Opioids for the Treatment of Pain, as long as the Unbranded Information identifies Company as the source of the information.

3.   For the avoidance of doubt, nothing in this Injunction shall be construed or used to prohibit Company in any way whatsoever from taking legal or factual positions in litigation, investigations, or other legal or administrative proceedings or exercising its right to make public statements or respond to media reports.

4.   To the extent that Company engages in conduct permitted by Section II.A.2 above, Company shall do so in a manner that is truthful, not misleading, accurate, and not deceptive.

**B.   No Financial Reward or Discipline Based on Volume of Opioid Sales**

1.   Company shall not compensate its sales and marketing employees with compensation agreements or packages based on or tied to the sales and marketing employees' sales volume, sales goals, or sales quotas for Opioid Products.

2.   Company shall not offer or pay any remuneration, directly or through a Third Party, to or from any person in return for the prescribing, sale, use or distribution of Opioid Product. For the avoidance of doubt, this shall not include the provision of rebates, chargebacks, and/or savings cards.

**C.   Ban on Funding/Grants to Third Parties**

1.   Company shall not, either through Company or through Third Parties, provide financial support or In-Kind Support to any Third Party for Promotion of Opioids or Opioid Products, excluding financial support or In-Kind Support otherwise required by a federal or state agency.

11

2.  Company shall not create, sponsor, provide financial support or In-Kind Support to or otherwise operate or control any medical society or patient advocacy group who are principally engaged in issues relating to Opioids or Opioid Products, excluding financial support (i) in the form of medical conference admission and/or attendance fees, (ii) of the National Center for Addiction Studies and Treatment adjunct to Oklahoma State University's Center for Health Sciences in Tulsa, Oklahoma or any similar institution and/or collaboration with Third Parties created in the future, including but not limited to institutions providing resources to treat, combat, or study addiction; or (iii) as required by court order, federal or state law, or regulation.  For the avoidance of doubt, this shall not limit the Company's ability to provide medical, scientific, or pharmaceutical support or expertise to any medical society or patient advocacy group in a manner that is truthful, accurate, and not misleading or deceptive.

**D.   General Terms**

1.  To the extent that any provision conflicts with federal or state law or regulation, the requirements of the law or regulation will prevail.

2.  Company shall not represent that any Opioid or Opioid Product has approvals, characteristics, uses, benefits, or qualities that they do not have.