**NAPOLI SHKOLNIK**
Hunter J. Shkolnik, Esq.
1302 Avenida Ponce de Leon
Santurce, Puerto Rico 00907
Telephone: (787) 493-5088
Facsimile: (646) 843-7603
Email: Hunter@nsprlaw.com

*Counsel to County of Nassau*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>**PURDUE PHARMA L.P., et al.,**<br><br>Debtors.[1] | **Chapter 11**<br><br>**Case No. 19-23649 (SHL)**<br><br>**(Jointly Administered)** |
| **PURDUE PHARMA L.P.,** *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>**COMMONWEALTH OF MASSACHUSETTS,** *et al.*,<br><br>Defendants. | **Adv. Pro. No. 19-08289 (SHL)** |

## NASSAU COUNTY, NY'S OBJECTION TO
## THE DEBTORS' MOTION TO (I) EXTEND THE MEDIATION; (II) EXTEND THE PRELIMINARY INJUNCTION AND ASSOCIATED DEADLINES INCLUDING TOLLING; AND (III) EXTEND SCHEDULE FOR THE STANDING MOTION

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Purdue Products L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717), and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

## I. INTRODUCTION

County of Nassau, New York ("Nassau County"), by and through its attorneys, Napoli Shkolnik, objects to the Debtors' Motion to (i) Extend the Mediation; (ii) Extend the Preliminary Injunction and associated deadlines including tolling; and (iii) Extend Schedule for the Standing Motion for the foregoing reasons:

1. Practically six years ago, Nassau County[2] initiated litigation against, *inter alia*, certain members of the Sackler Family, namely Defendants Beverly Sackler, David A. Sackler, Ilene Sackler-Lefcourt, Jonathan D. Sackler, Kathe Sackler, Mortimer D.A. Sackler, Richard S. Sackler, and Theresa Sackler (collectively the "Sackler Defendants"). (**Exhibit "A"** attached hereto, Amended Complaint in the matter of *In re Opioid Litigation,* Suffolk County Supreme Court Index No. 400008/2017). The coordinated New York state litigation against the Sackler Defendants has been stayed pursuant to this Court's prior order dated September 6, 2024.[3]

2. Nassau County again objects to the continued stays. As noted in the September 5, 2024 hearing, the Debtor's request to extend the mediation, preliminary injunction, and standing motion has turned into a repeating affair. Last time, Debtor's request was for a "mere" eighteen days. The present request is for even longer.

3. The Sackler Defendants should be no longer entitled to a stay of state court proceedings. In *Harrington,* the U.S. Supreme Court held that bankruptcy law does not afford bankruptcy courts the kind of power needed to block lawsuits against parties who have not filed

---

[2] The State of New York and County of Suffolk, New York are also designated plaintiffs in the New York Consolidated action. Those parties, either directly (i.e., the State of New York), or indirectly (i.e., County of Suffolk, who is represented by MDL Co-Lead Counsel), have been involved in the Purdue mediation process – while Nassau County has been excluded.

[3] *See* ECF No. 489-1, Thirty-Sixth Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction.

2

for bankruptcy. *See Harrington,* 219 L. Ed. 2d at 739. Permitting the stay to be extended essentially furthers the Sackler Defendants' goal to stay proceedings against them.

4. A stay of the coordinated litigation in Suffolk County should not be further extended for the Sackler Defendants. The trial court has completed both the pleadings stage as to these defendants, as well as substantial discovery. (*See, e.g.,* **Exhibit "B"** attached hereto, Order on Motion to Dismiss). In fact, by way of the stay afforded the Sacklers, they have avoided participating in the most comprehensive opioid trial conducted to date (i.e. 7 months of trial before the New York Court). To be clear, as is more fully set forth below, the County of Nassau has not, nor does it plan to assert any Bankruptcy "estate" claims and is only seeking to assert direct claims against the Sackler Defendants.

5. Furthermore, Nassau County has ***still*** not been invited to participate in the ongoing mediation. This directly implicates the Supreme Court's holding even more so because the "affected parties" (i.e., Plaintiff Nassau County) have not consented to release and/or discharge the Sackler Defendants. *See Harrington,* 219 L. Ed. 2d at 733. Nassau County has also never been asked to consent to such a release or discharge.

## II. PRELIMINARY STATEMENT AND RELEVANT BACKGROUND

### A. THE NEW YORK COMPLAINT

6. On or about June 12, 2017, Nassau County filed a complaint with the Supreme Court of New York, Suffolk County, styled as: *County of Nassau, et al. v. Purdue Pharma L.P., et al.* The complaint was amended on October 23, 2018 (the "Amended Complaint"). (**Exhibit "A"** attached hereto, Amended Complaint).

7. The Sackler Defendants directly or beneficially own the Debtors and certain non-debtor, Sackler or Sackler-trust owned affiliated world-wide companies ("IACs") and have each

3

actively participated in the management and operations of the Chapter 11 Debtors, and the same as to non-debtor entities and trusts, including but not limited to the IACs, and related entities, with respect to directing management and operations of the global Purdue related Debtor and non-debtor enterprise.

8. The Complaint sets forth Nassau County's direct claims against the Defendants for opioid related damages, through the Defendant's independent actions, in violation of New York law. *See* Ex. A. The Complaint also sets forth Nassau County's direct claims against the Defendants for their independent acts under New York common law nuisance. *See id.* Again, to be clear, Nassau County does not seek to recover under any theories of that are the possession of the Debtor (i.e. unjust enrichment and the like).

9. State Supreme Court Judge Jerry Garguilo has been presiding over the statewide opioid litigation *In Re Opioid Litigation,* Consolidated Index Number 400000/2017, comprising 70 individual cases filed by government entities between 2017 and 2021 against opioid manufacturers, distributors, pharmacies other sellers and various individuals including the Sacklers. As part of the Opioid Coordinated litigation Judge Garguilo presided over one of the largest (over 120 lawyers in attendance) and longest (approximately 7 months) trials in the history of the State of New York. As a result of the continued injunction the Sacklers escaped this trial.

B. **INITIAL CHAPTER 11, INJUNCTIVE ADVERSARY ACTION**

10. On September 15, 2019, in the United States Bankruptcy Court for the Southern District of New York, the Debtors filed Bankruptcy Petitions under consolidated Bankruptcy Case Number 19-23649 (the "**Chapter 11 Main Case**"), pursuant to Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").

11. On September 18, 2019 (approximately five years ago), the Debtors filed the within Injunction Adversary Action by way of Adversary Complaint for Injunctive Relief (the "**Injunctive Complaint**"). [Adversary Action No. 19-08289 (SHL), ECF No.1].

12. Via *Motion for Preliminary Injunction* dated September 18, 2019, the Debtors initially sought a 270-day Injunction as to Pending Actions. *Dunaway* at 5 *referring* to *Debtors' Memorandum of Law in Support of Preliminary Injunction*, [Adversary Action No. 19-08289(SHL), ECF No. 3]. Debtors argued that the Bankruptcy Court had the authority under 11 U.S.C. § 105(a) to "enjoin suits that might impede the reorganization process." *Id.*

13. In the view of the Debtors, the Bankruptcy Court then had both the authority and cause to enjoin the claims against the Debtors and Related Parties. *Id.* Debtors' rationale for the broad injunction restraining non-debtor actions was because, allegedly, claims against those non-debtors "are based on conduct substantially identical to, and inextricably intertwined with, that alleged to have been engaged in by the Debtors." *Id. quoting Debtors' Memorandum of Law in Support of Preliminary Injunction*, [Adv. Action No. 19-08289(SHL), ECF No. 3, Pages 7-9].

14. At that time, it was believed that this alleged overlap justified injunctive relief to encourage settlement negotiations, so that the Debtors might avoid the cost and risk of the Related Party Actions, and to avoid findings of law or fact on Related Party Claims that would create an adverse record against the Debtors. *Id.*

15. On October 18, 2019, the Bankruptcy Court in the Adversary Action entered the *Amended Order Pursuant To 11 U.S.C. § 105(a) Granting, in Part, Motion for a Preliminary Injunction.* [Adversary Action No. 19-08289(SHL), ECF No. 89].

16. Later, on November 6, 2019, this Court issued the *Second Amended Order Granting Motion for a Preliminary Injunction* (the "**Second Amended Order**") [Adversary Action No. 19-

5

08289(SHL), ECF No. 105]. As lineal predecessor to the Thirty First Amended Order, the Second Amended Order grants a preliminary injunction pursuant to *Section* 105 of Title 11 of the United States Code and Rule 7065 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

17.   The Second Amended Order, entered upon Debtors' original September 18, 2019 Motion, enjoined certain defendants in this Adversary Proceeding (the "**Adversary Defendants**") from the commencement or continuation of active judicial, administrative or other actions or proceedings against the so-called related parties ("**Related Parties**"), who are former or current (a) owners (including any trusts and their respective trustees and beneficiaries), (b) directors, (c) officers, (d) employees, and (e) other similar associated entities of the Debtors that were or could have been commenced before the commencement of the case, as to related party claims, initially through April 8, 2020. [ECF No. 105].

18.   Related Parties include, but are not limited to, the Sackler Defendants herein.[4] Adversary Defendants are identified by exhibit to the Injunctive Complaint, and by attachments to subsequent Orders. The Adversary Defendants constitute both private party creditors, and creditor

---

[4] And as well as, but are not limited to: The Purdue Frederick Company Inc.; The P.F. Laboratories Inc.; Purdue Pharma Technologies Inc.; PLP Associates Holdings L.P.; PLP Associates Holdings Inc.; BR Holdings Associates L.P.; BR Holdings Associates Inc.; Rosebay Medical Company L.P.; Rosebay Medical Company, Inc.; Beacon Company; PRA Holdings Inc.; Pharmaceutical Research Associates Inc.; Purdue Holdings L.P.; Rhodes Pharmaceuticals Inc.; Rhodes Technologies Inc.; Coventry Technologies L.P.; MNP Consulting Limited; Richard S. Sackler; the Estate of Jonathan D. Sackler; Jonathan D. Sackler; Mortimer D.A. Sackler; Kathe A. Sackler; Ilene Sackler Lefcourt; the Estate of Beverly Sackler; Beverly Sackler; Theresa Sackler; David A. Sackler; Marianna Sackler; Estate of Mortimer Sackler; Estate of Raymond Sackler; Trust for the Benefit of Members of the Raymond Sackler Family; Raymond Sackler Trust; Beverly Sackler, Richard S. Sackler, and Jonathan D. Sackler, as Trustees Under Trust Agreement Dated November 5, 1964; Beverly Sackler, Richard S. Sackler, and Jonathan D. Sackler, as Trustees Under Trust Agreement Dated November 5, 1974; Paulo Costa; Cecil Pickett; Ralph Snyderman; Judith Lewent; Craig Landau; Mark Timney; Stuart D. Baker; Frank Peter Boer; John Stewart; Russell Gasdia; Marv Kelly; Shelli Liston; Heather Weaver; Doug Powers; Lori Fuller; Rodney Davis; Brandon Worley; Donald Leathers; Wendy Kay; Michael Madden; LeAvis Sullivan; Jeffrey Ward; Beth Taylor; Leigh Varnadore; Paul Kitchin; Mark Waldrop; Mark Radcliffe; Mark Ross; Patty Carnes; Carol Debord; Jeff Waugh; Shane Cook; James David Haddox; Aida Maxsam; Tessa Rios; Amy K. Thompson; Joe Coggins; Lyndsie Fowler; Mitchell "Chip" Fisher; Rebecca Sterling; Vanessa Weatherspoon; Chris Hargrave; Brandon Hassenfuss; Joe Read; Andrew T. Stokes; Nathan C. Grace; Jaclyn P. Gatling; Leslie Roberson; Barbara C. Miller; Briann Parson-Barnes; Becca Beck Harville; Lindsey Bonifacio; Tammy Heyward; James Speed; Damon Storhoff; Diana C. Muller; and Draupadi Daley.

states, municipalities and tribes in the US. The Second Amended Order has been extended an additional twenty-nine (29) times upon request of the Debtors, and by Order of this Court, during a period of three (3) years. These repeated extensions have protected the non-Debtor entities, such as the Sacklers – which injunction the Supreme Court has rejected as being in contravention of the Bankruptcy Code – have deprived the citizens of Nassau County their right to obtain justice against the Sackler, for the Sacklers' own conduct that caused the opioid epidemic.

19. Throughout the Chapter 11 bankruptcy proceedings, and before, Debtors have negotiated or mediated with various creditor constituencies in an effort to reach a confirmable Plan.

20. The Plan Confirmation appeals culminated in Chief Judge McMahon's decision on appeal to the District Court overturning the Plan Confirmation Order, on the grounds that non-consensual, non-debtor, third party releases are not authorized by the Bankruptcy Code in non-asbestos cases, and that there is no Second Circuit Authority for the same. *In re Purdue Pharm. L.P.*, 619 B.R. 38, 58 (Bankr. S.D.N.Y 2020). This decision having been affirmed by the United States Supreme Court is now final and binding on this Court.

21. On July 9, 2024, the Court granted Debtor's request for mediation. *See* Dkt. 19-08289, ECF Dkt. No. 511.

22. There have been multiple extensions granted to Debtors despite no showing of progress made in mediation. Most recently, at the request of Debtors, on September 6, 2024, the Court entered a similar request for an extension but for also eighteen days. *See* ECF No. 533.

### III. ARGUMENT

23. Section 105(a) is employed "to enjoin creditors' lawsuits against third parties where 'the injunction plays an important part in the debtor's reorganization plan' or where the action to

7

be enjoined 'will have an immediate adverse economic consequence for the debtor's estate.'" *In re Bernard L. Madoff Inv. Sec., LLC*, 512 F. App'x 18, 20 (2d Cir. 2013). The only explicit authorization in the Bankruptcy Code for non-debtor releases is 11 USCS § 524(g)[5], which authorizes releases in asbestos cases when specified conditions are satisfied, including creation of trust to satisfy future claims. Although 11 USCS § 105(a) authorizes a bankruptcy court to issue any order, process, or judgment that is necessary or appropriate to carry out provisions of the Bankruptcy Code, §105(a) does not allow a bankruptcy court to create substantive rights that are otherwise unavailable under applicable law. *Deutsche Bank AG, London Branch v. Metromedia Fiber Network, Inc.* (*In re Metromedia Fiber Network, Inc.*), 416 F.3d 136, 44 Bankr. Ct. Dec. (LRP) 276, Bankr. L. Rep. (CCH) ¶ 80397, 54 Collier Bankr. Cas. 2d (MB) 1033, 2005 U.S. App. LEXIS 14817 (2d Cir. 2005).

24. The Supreme Court has unequivocally held that bankruptcy law does not afford bankruptcy courts the kind of power needed to block lawsuits against parties who have not filed for bankruptcy. *See Harrington.,* 219 L. Ed. 2d at 739 ("The bankruptcy code does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seek to discharge claims against a non-debtor without the consent of affected claimants."). Specifically, the Court held that the Sacklers, including the Sackler Defendants named in the Nassau County lawsuit, impermissibly sought to extinguish claims against them personally without the consent of creditors and without claiming bankruptcy. *See id.* at 728.

25. In the absence of controlling Second Circuit caselaw, the standard factors applicable to injunctive relief under Federal Rule of Civil Procedure 65 shall be applied by this Court: (1) whether there is a likelihood of successful reorganization; (2), whether there is an

---

[5] The Supreme Court's Affirmance makes clear that 11 USCS § 524(g) no longer provides any support for the extension of the stay or injunction.

8

imminent irreparable harm to the estate in the absence of an injunction, or in the absence of an imminent threat, a threat to the reorganization process; and (3) a balance of comparative harm to the debtor, reorganization, and the harm brought upon an enjoined party. *See, Alert Holdings, Inc. v. Interstate Protective Servs., Inc.*, 148 B.R. 194, 200 (Bankr. S.D.N.Y. 1992). The test set forth in *In re Lyondell Chem. Co.*, 402 B.R. 571, 587-88 (Bankr. S.D.N.Y. 2009) includes a "public interest" prong; *see also Nevada Power Company v. Calpine, In Re: Calpine Corporation*, 365 B.R. 401 at 409 (SDNY 2007).

**A. The Likelihood of a Successful Reorganization is not affected by denying the stay with regard to the Sackler Defendants because said Defendants are not entitled to release and discharge.**

1. There is a presumption that the settlement structure which gave rise to the Twelfth Amended Plan will survive the Circuit's decision, but that is not necessarily certain. What is certain is that the Sackler Defendants are no longer entitled to release and discharge, and that any attempt to transfer assets to facilitate a bankruptcy plan under the auspices of a collusive plan advanced by the Debtor and other creditors that protects the Sacklers would be improper.

2. The majority in the Supreme Court decision recognized that the ultimate goal of the Sackler family through seeking a release and injunction was to "forever stay[], restrain[] and enjoin[]" claims against them. *See Harrington.,* 219 L. Ed. 2d at 730. The Sackler Defendants have not filed for bankruptcy and have not placed all their assets on the table for distribution. *See id.* at 732.

3. It is important to note that Movants fail to offer any justification as to the likelihood of a successful reorganization. In the previous request for an extension Debtor only claimed other than "negotiations continue." *See* ECF Dkt. No. 513, Def. Mot. at 7. Mere attendance to a mediation is not evidence that there is a "likelihood of a successful reorganization." In their

9

subsequent request for an extension, Debtor's admit they spent most of those eighteen days negotiating a second request for an extension. *See* ECF Dkt. No. 538, Def. Mot. at 6.

4. Lifting the stay would force the negotiating parties to reach an agreement faster. Now that the negotiating parties feel confident the Court will always find an eighteen-day continuance as reasonable, the negotiating parties have lost the sense of urgency that should exist in resolving the matter.

**B. Imminent Irreparable Harm to the Estate or the Reorganization Process.**

5. The Complaint does not in and of itself bring imminent irreparable harm to the Estate or its res. It brings, as will be argued by the Debtors, the possibility of attenuated harm should the defense of the Complaint cause the funders to withdraw from the settlement process. This is a speculative harm to the reorganization process.

6. The Movants suggest that not extending the stay would cause a flood of litigation, distract the mediation process, and threaten the estate's "most valuable asset," (i.e. the claims against the Sacklers). *See* ECF Dkt. No. 538, Def. Mot. at 7. Nassau County rejects this argument. Allowing direct claims against the Sacklers would make them more likely to negotiate with both creditors and plaintiffs with direct claims, resulting in benefit to the Estate, not harm. Allowing litigation to proceed is not "chaos" as Debtors suggest, it is the only legitimate leverage in existence that forces parties to reach a settlement.

**C. The balance of the comparative harms weighs in favor of the stay not being extended for the benefit of the Sackler defendants.**

7. Nassau County's state court claims are direct claims against the Sackler Defendants. Since it is no longer an open question as to whether the Sackler Defendants are entitled to release and discharge in this Court, any further delay of the New York proceedings and trial only

prejudices Nassau County and adds no legitimate benefit to the favorable outcome of the bankruptcy.

8.  The parties in the New York Litigation have completed the pleadings / motion to dismiss phase and have accomplished substantial discovery. (*See, e.g.,* **Exhibit "B"** attached hereto, Order on Motion to Dismiss). The New York state court was deprived of its ability to include the Sackler Defendants in the massive New York Coordinated Opioid trial and is now ready to set a trial date for proceedings solely against said Defendants. Nassau County must be permitted to proceed to trial against the Sackler Defendants for claims initiated practically six (6) years ago.

9.  Allowing a continued stay of the proceedings would result in significant prejudice, undermining Nassau County's rightful ability to enforce its lawful police and regulatory power. Furthermore, the delay in resolution of its civil action denies Nassau County its right to pursue its legitimate claims in a timely manner, resulting in a manifest injustice that offends the principles of fairness and due process that underpin the legal system. Further unnecessary and prejudicial delay is wholly unwarranted and unjustified in this instance.

**D. The Public Interest Demands that the Extension be Denied**

10. The public interest demands would be best served by denying Debtor's request for an extension. The extended stay is the Sacklers' circumvention of the Supreme Court's decision in *Harrington*. Without the possibility of release and discharge, the Sackler Defendants now seek a payoff to delay and hide assets, essentially accomplishing the same goal. Victims of opioids are not served well by allowing the Sacklers another 35 days to relax.

## IV. CONCLUSION

For the foregoing reasons, Nassau County, NY, respectfully requests that this Court follow the mandates of the Second Circuit Court of Appeals and the United State Supreme Court and DENY Debtors' motion for an Order extending Mediation and the Preliminary Injunction to September 27, 2024 and adjourning the hearing on the Standing Motion and related deadlines as set forth herein.

Dated: September 19, 2024  
      Santurce, Puerto Rico

Respectfully submitted,

**NAPOLI SHKOLNIK**

/s/ Hunter J. Shkolnik  
Hunter J. Shkolnik, Esq.  
1302 Avenida Ponce de Leon  
Santurce, Puerto Rico 00907  
Telephone: (787) 493-5088  
Facsimile: (646) 843-7603  
Email: Hunter@nsprlaw.com

*Counsel to Nassau County, NY*

<u>CERTIFICATE OF SERVICE</u>

The undersigned attorney certifies that on September 19, 2024, he electronically filed a copy of the attached via the CM/ECF filing system, which sent notification of such filing to all Filing Users.

<u>/s/ Hunter J. Shkolnik</u>