**NAPOLI SHKOLNIK**
Hunter J. Shkolnik, Esq.
1302 Avenida Ponce de Leon
Santurce, Puerto Rico 00907
Telephone: (787) 493-5088
Facsimile: (646) 843-7603
Email: Hunter@nsprlaw.com

*Counsel to County of Nassau*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>**PURDUE PHARMA L.P., et al.,**<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 19-23649 (SHL)<br><br>(Jointly Administered) |
| **PURDUE PHARMA L.P.,** *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>**COMMONWEALTH OF MASSACHUSETTS,** *et al.*,<br><br>Defendants. | Adv. Pro. No. 19-08289 (SHL) |

**NASSAU COUNTY, NY'S OBJECTION TO
THE DEBTORS' MOTION TO (I) EXTEND THE MEDIATION
AND (II) EXTEND THE PRELIMINARY INJUNCTION
AND ASSOCIATED DEADLINES INCLUDING TOLLING**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Purdue Products L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717), and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

County of Nassau, New York ("Nassau County"), by and through its attorneys, Napoli Shkolnik, objects to the Debtors' Motion to (i) Extend the Mediation and (ii) Extend the Preliminary Injunction[2] and associated deadlines including tolling for the foregoing reasons:

## PERTINENT BACKGROUND

1. Practically six years ago, Nassau County[3] initiated litigation against, *inter alia*, certain members of the Sackler Family, namely Defendants Beverly Sackler, David A. Sackler, Ilene Sackler-Lefcourt, Jonathan D. Sackler, Kathe Sackler, Mortimer D.A. Sackler, Richard S. Sackler, and Theresa Sackler (collectively the "Sackler Defendants"). (**Exhibit "A"** attached hereto, Amended Complaint in the matter of *In re Opioid Litigation,* Suffolk County Supreme Court Index No. 400008/2017).[4] The coordinated New York state litigation against the Sackler Defendants has been stayed pursuant to this Court's prior order. Unlike all other governmental

---

[2] *See* ECF Dkt. Nos. 6926 (main case) and 590 (adversary proceeding).

[3] The State of New York and County of Suffolk, New York are also designated plaintiffs in the New York Consolidated action. Those parties, either directly (i.e., the State of New York), or indirectly (i.e., County of Suffolk, who is represented by MDL Co-Lead Counsel), have been involved in the Purdue mediation process – while Nassau County has been excluded.

[4] In this bankruptcy the additional following parties are often referred to as the "Sackler Parties": The Purdue Frederick Company Inc.; The P.F. Laboratories Inc.; Purdue Pharma Technologies Inc.; PLP Associates Holdings L.P.; PLP Associates Holdings Inc.; BR Holdings Associates L.P.; BR Holdings Associates Inc.; Rosebay Medical Company L.P.; Rosebay Medical Company, Inc.; Beacon Company; PRA Holdings Inc.; Pharmaceutical Research Associates Inc.; Purdue Holdings L.P.; Rhodes Pharmaceuticals Inc.; Rhodes Technologies Inc.; Coventry Technologies L.P.; MNP Consulting Limited; Richard S. Sackler; the Estate of Jonathan D. Sackler; Jonathan D. Sackler; Mortimer D.A. Sackler; Kathe A. Sackler; Ilene Sackler Lefcourt; the Estate of Beverly Sackler; Beverly Sackler; Theresa Sackler; David A. Sackler; Marianna Sackler; Estate of Mortimer Sackler; Estate of Raymond Sackler; Trust for the Benefit of Members of the Raymond Sackler Family; Raymond Sackler Trust; Beverly Sackler, Richard S. Sackler, and Jonathan D. Sackler, as Trustees Under Trust Agreement Dated November 5, 1964; Beverly Sackler, Richard S. Sackler, and Jonathan D. Sackler, as Trustees Under Trust Agreement Dated November 5, 1974; Paulo Costa; Cecil Pickett; Ralph Snyderman; Judith Lewent; Craig Landau; Mark Timney; Stuart D. Baker; Frank Peter Boer; John Stewart; Russell Gasdia; Marv Kelly; Shelli Liston; Heather Weaver; Doug Powers; Lori Fuller; Rodney Davis; Brandon Worley; Donald Leathers; Wendy Kay; Michael Madden; LeAvis Sullivan; Jeffrey Ward; Beth Taylor; Leigh Varnadore; Paul Kitchin; Mark Waldrop; Mark Radcliffe; Mark Ross; Patty Carnes; Carol Debord; Jeff Waugh; Shane Cook; James David Haddox; Aida Maxsam; Tessa Rios; Amy K. Thompson; Joe Coggins; Lyndsie Fowler; Mitchell "Chip" Fisher; Rebecca Sterling; Vanessa Weatherspoon; Chris Hargrave; Brandon Hassenfuss; Joe Read; Andrew T. Stokes; Nathan C. Grace; Jaclyn P. Gatling; Leslie Roberson; Barbara C. Miller; Briann Parson-Barnes; Becca Beck Harville; Lindsey Bonifacio; Tammy Heyward; James Speed; Damon Storhoff; Diana C. Muller; and Draupadi Daley.

entities affected by this injunction, Nassau was on the eve of trial and, but for this injunction, the Sacklers would have been in the courtroom participating in the only comprehensive trial that focused on the complete vertically integrated distribution of opioids from manufacturers to local pharmacies.

2. Nassau County again objects to the continued stays as applied to the Sackler Defendants. As noted in the September 5, 2024 hearing and subsequent hearings, the Debtor's request to extend the mediation, preliminary injunction, and standing motion has turned into a repeating affair.

3. Although assurances were made that it would be consulted and allowed to participate, Nassau County has not been invited to participate in the ongoing mediation. This directly implicates the Supreme Court's holding even more so because the "affected parties" (i.e., Plaintiff Nassau County) have not consented to release and/or discharge the Sackler Defendants. *See Harrington,* 219 L. Ed. 2d at 733. Nassau County has also never been asked to consent to such a release or discharge.

## I. ARGUMENT

4. Bankruptcy Courts have original jurisdiction over "all civil proceedings arising under title 11, or arising in and related to cases under title 11." 28 U.S.C. § 1334(b). Likewise, Bankruptcy Courts have the authority under 11 U.S.C. § 105(a) to "enjoin suits that might impede the reorganization process." *See In re Purdue Pharms. L.P.*, 619 B.R. 38, 43 (SDNY 2020) (hereinafter "Dunaway").

5. Injunctions under Rule 7065 necessitate a similar showing as required under Federal Rule of Civil Procedure 65: (i) irreparable harm to the Debtors if the injunction is not granted, (ii) a likelihood that the injunction will aid the reorganization efforts, and (iii) a balance

3

of hardships favoring the party seeking relief, and benefits to the public interest. *See In re Lyondell Chem. Co.*, 402 B.R. 571, 587-88 (Bankr. S.D.N.Y. 2009). Nassau County concedes that the Court should generally look to those three factors in assessing whether to grant the instant request for extensions. *See Dunaway*, 619 B.R. at 58.

6. This objection addresses only the third prong of the three-part test, namely whether the balance of equities and the public interest are against the extension of the mediation and preliminary injunction with respect to the Sackler Parties. *See In re Purdue Pharms. L.P.*, 619 B.R. 38, 58 (SDNY 2020).

7. Under the third prong, the Court weighs the equities and public interest. To this end, the Appellants in *Dunaway* focused on the importance of holding Dr. Sackler accountable for transparency reasons and likened the case to the *Insys* bankruptcy, which allowed prosecution of corrupt actors. *See Dunaway*, 619 B.R. at 60-62; *see also In re Insys Therapeutics, Inc.*, No. 19-11292 (KG) (Bankr. D. Del.). The court ultimately found these arguments not compelling because Appellants paradoxically stated they would not pursue a damages case, and the Court also emphasized value allocation over individual culpability. *See id.* The Dunaway Court stated the following with regard to the public interest factor:

> The Appellants acknowledge that other bankruptcies born out of an onslaught of public and private mass tort litigation — whether related to faulty airbags or Big Tobacco or asbestos — have resulted in safe harbors for non-debtors who were nonetheless primary players in wide-ranging schemes of corporate malfeasance. (Reply at 4.) However, they ask this Court to ignore those precedents and instead to recognize that no post-crisis opioid manufacturer bankruptcy proceeding has ever included an injunction as sweeping as the on [sic] entered by Judge Drain. The sample size for this assertion is one: Appellants give great weight to the fact that the bankruptcy court in *In re Insys Therapeutics, Inc.*, No. 19-11292 (KG) (Bankr. D. Del.) ("*Insys*") did not enter an injunction that prevented state attorneys general from exercising their police powers against non-debtors.

*See Dunaway*, 619 B.R. at 61.

4

8. The Sackler Defendants later sought release and discharge through the bankruptcy proceedings. As the Supreme Court noted,

> The Sackler discharge they proposed comprised a release and an injunction. The release sought to void not just current opioid-related claims against the family, but future ones as well. It sought to ban not just claims by creditors participating in the bankruptcy proceeding, but claims by anyone who might otherwise sue Purdue. It sought to extinguish not only claims for negligence, but also claims for fraud and willful misconduct. And it proposed to end all these lawsuits without the consent of the opioid victims who brought them. To enforce this release, the Sacklers sought an injunction "forever stay[ing], restrain[ing,] and enjoin[ing]" claims against them. That injunction would not just prevent suits against the company's officers and directors but would run in favor of hundreds, if not thousands, of Sackler family members and entities under their control.

*Harrington v. Purdue Pharma L.P.*, 219 L. Ed. 2d 721, 730 (2024) (citations omitted).

9. Though there has been much debate as to the scope of the *Harrington* decision, everyone agrees that the objective of the Sackler Defendants was to obtain release and discharge all past, present, and future claims. *See id.* Even despite a narrow holding by the Supreme Court in *Harrington*, the rationale is clear: because the Sacklers "have not filed for bankruptcy and have not placed virtually all their assets on the table for distribution to creditors" they are not entitled to a release and discharge. *See id.*

10. The *Harrington* decision is now in direct conflict with the *Dunaway* analysis with regard to weighing the equities and public interest. The rationale given in *Dunaway* is no longer applicable with regard to the public interest prong because while bad actors in asbestos cases may be afforded the same protection, others are not. Specifically, *Dunaway's* reliance on the lineage of cases that permit discharge and release for non-debtors is now overruled. *See id.*

11. Debtors concede that estates' claims against the Sacklers are the estates' most valuable asset." *See, e.g.,* ECF Dkt. No. 538, Def. Mot. at 7. The Sacklers are therefore in a position of immense bargaining power with regard to the Estate. The Sacklers are using that

5

leverage to obtain protection under the Preliminary Injunction. The Estate, true to its responsibility, disregards the Sacklers' individual culpability in pursuit of maximizing recovery, but in doing so, ignores the fact that the Sackler Defendants reap immense benefit from the current iteration of the preliminary injunction.

12. A consideration of public interest must account for the benefit the Preliminary Injunction gives to the Sackler Defendants. First, the injunction shields them from ongoing state litigation, delaying or outright preventing lawsuits that could hold them accountable for their role in the opioid crisis. This legal protection grants the Sacklers time to maneuver assets, ensuring they remain beyond the reach of creditors and victims, as highlighted in the *Harrington* decision. See *Harrington*, 219 L. Ed. 2d at 730. Additionally, the injunction allows the Sacklers to leverage the mediation process to negotiate favorable terms without facing the direct scrutiny and consequences of individual culpability in open court. By avoiding state court proceedings, the Sacklers sidestep transparency requirements; this would otherwise expose their full complicity and financial dealings, further eroding public trust. These protections collectively enable the Sacklers to maintain control over their wealth and influence while avoiding the legal and reputational repercussions that non-debtors should rightfully face.

13. It is common that the generalized prong of a multi-factor test is often less deliberated by Courts merely because it allows for broad discretion. For example, in the September 5, 2024 hearing on the same issue, this Court simply stated, "So, as to the other injunctive factors, balance of equities and the public interest, the Court finds that these weigh in favor of staying the injunction." Hr'g Tr. 62:17-19, Sept. 5, 2024. The Court went on to cite the various parties supporting the plan as evidence for the extensions being in the public interest. *See id.* at 62-63. However, the various creditors and committees in this bankruptcy should not substitute for the

6

greater public interest, which should be understood as holding each implicated party separately accountable.

14. Nassau County recognizes that it is likewise not in the Estates' interest to highlight the benefit conferred on the Sacklers in exchange for a chance to negotiate with them, but a proper evaluation of public interest and a balance of the equities by this Court cannot ignore such facts. even after *Harrington*, the Sacklers are exploiting bankruptcy law for their own benefit. The Debtors should be forced to admit they are giving the bad actors what they want in exchange for their seat at the table.

## II. CONCLUSION

For the foregoing reasons, Nassau County respectfully requests DENY Debtors' motion for an Order extending Mediation and the Preliminary Injunction.

Dated: November 22, 2024
       Santurce, Puerto Rico

Respectfully submitted,

**NAPOLI SHKOLNIK**

/s/ Hunter J. Shkolnik
Hunter J. Shkolnik, Esq. (HS 4854)
1302 Avenida Ponce de Leon
Santurce, Puerto Rico 00907
Telephone: (787) 493-5088
Facsimile: (646) 843-7603
Email: Hunter@nsprlaw.com

*Counsel to Nassau County, NY*

7

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on November 22, 2024, he electronically filed a copy of the attached via the CM/ECF filing system, which sent notification of such filing to all Filing Users.

/s/ Hunter J. Shkolnik