UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br>**PURDUE PHARMA L.P.**, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 19-23649 (SHL)<br><br>(Jointly Administered) |
| **PURDUE PHARMA L.P.**, *et al.*,<br><br>Plaintiffs,<br>v.<br>**COMMONWEALTH OF MASSACHUSETTS**, *et al.*,<br><br>Defendants. | Adv. Pro. No. 19-08289 (SHL) |

### THE STATE OF MARYLAND'S OPPOSITION TO DEBTORS' MOTION TO (I) EXTEND THE MEDIATION AND (II) EXTEND THE PRELIMINARY INJUNCTION AND ASSOCIATED DEADLINES INCLUDING TOLLING

The State of Maryland respectfully objects to Debtors' November 17, 2024 "Motion to Extend (I) The Mediation and (II) The Preliminary Injunction And Associated Deadlines Including Tolling [D/N 6926]." For all the reasons that Maryland and others have previously stated in their objections to prior extensions and others have or will advance with respect to the current proposed extensions,[2]

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Purdue Products L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick and L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717), and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] *See* State of Maryland's Motion to Dismiss Adversary Proceeding (Bankr. S.D.N.Y. filed 07/05/2024) [D/N 500]; State of Maryland's Objection to Motion to Extend Preliminary Injunction

which, consistent with this Court's orders, Maryland incorporates herein by reference, the Court should not further extend the preliminary injunction against the pursuit of claims against the "Related Parties." Additionally, the following new grounds also require denial of the extension:

### 1. The Court's Jurisdiction Is Limited To Preserving The Status Quo Pending the Decision Of The District Court In The Pending Appeal.

Under settled law, "[o]nce an appeal is taken . . . jurisdiction passes to the appellate court [and] [t]hereafter [a party] is not usually entitled as of right to present new evidence or argument to the trial court." *Ideal Toy Corp. v. Sayco Doll Corp.*, 302 F.2d 623, 625 (2d Cir. 1962); *see also Intl. Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Eastern Air Lines, Inc.*, 847 F.2d 1014, 1018 (2d Cir. 1988) (reaffirming *Ideal Toy*). This longstanding rule is rooted in principles of "sound judicial administration" and prevents "vacillating rulings" between the trial and appellate courts that may frustrate the appellate process. *Id.*

---

(Bankr. S.D.N.Y. filed 08/30/2024) [D/N 522]; Objection to Motion to Extend Preliminary Injunction (Bankr. S.D.N.Y. filed 09/20/2024) [D/N 545]; State of Maryland's Objection to Motion to Extend Preliminary Injunction (Bankr. S.D.N.Y. filed 10/29/2024) [D/N/576]; State of Maryland's Motion for Reconsideration of Order Granting Debtors' Ex Parte Motion to Shorten Notice for Debtors' Motion to Extend the Mediation and Extend the Preliminary Injunction and Associated Deadlines Including Tolling (Bankr. S.D.N.Y. filed 11/19/2024) [D/N 594]. *See also* Nassau County, NY's Objection to Debtor's Motion to Extend the Preliminary Injunction (Bankr. S.D.N.Y. filed 08/30/2024( [D/N 517]; Nassau County, NY's Objection to the Debtor's Motion to Extend the Preliminary Motion (Bankr. S.D.N.Y. filed 09/19/2024) [D/N 543]; State of Rhode Island's Objection to Extend the Preliminary Injunction (Bankr. S.D.N.Y. filed 09/20/2024) [D/N 548]; State of Washington's Objection to Motion for an Additional Extension of Injunction (Bankr. S.D.N.Y. filed on 10/29/2024) [D/N 573]; Nassau County, NY's Objection to Motion to Extend the Mediation; Extend the Preliminary Injunction and Associated Deadlines Including Tolling; and Extend Schedule for the Standing Motion (Bankr. S.D.N.Y. filed on 10/29/2024) [D/N 6895]; State of Rhode Island's Corrected Renewed Limited Objection to Debtor's Motion to Extend Mediation; Extend the Preliminary Injunction and Associated Deadlines Including Tolling; and Extend Schedule for the Standing Motion (Bankr. S.D.N.Y. filed on 10/30/2024) [D/N 581]; State of Washington's Objection to Motion for an Additional Extension of Injunction (Bankr. S.D.N.Y. filed on 11/21/2024) [D/N 597].

A narrow exception to this rule permits a trial court to preserve the status quo between parties while the appeal is pending. The exception is codified by what is now Rule 62(d) (formerly Rule 62(c)) of the Federal Rules of Civil Procedure, and permits a trial court, "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, [to] suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights" Fed. R. Civ. P. 62(d); *see* Fed. R. Bankr. P 7062 (incorporating Rule 62(d) by reference); *id.* Adv. Com. 1983 ("The additional exceptions set forth in this rule make applicable to those matters the consequences contained in Rule 62(c) and (d) with respect to orders in actions for injunctions."). *Ideal Toy*, 302 F.2d at 625 (2d Cir. 1962). The Second Circuit has explained that Rule 62(d) "has been narrowly interpreted to allow [trial courts] to grant *only such relief as may be necessary to preserve the status quo pending an appeal* where the consent of the [appellate court] has not been obtained." *Intl. Ass'n of Machinists & Aerospace Workers, AFL-CIO v. E. Air Lines, Inc.*, 847 F.2d 1014, 1018 (2d Cir. 1988) (emphasis added).

Debtors' latest resort to this Court for another 38-day extension of the preliminary injunction is an attempt to create the very scenario that the rule set forth in *Eastern Airlines* and *Ideal Toy* is designed to circumvent. *See* Letter from B. Kaminetzky to Judge McMahon at 2, last paragraph (S.D.N.Y. filed 11/19/2024) (**Exhibit A**) (suggesting, incorrectly, that if this Court enters the proposed fortieth amended order it will be necessary for Maryland to litigate another appeal as a new order). Debtors are attempting to convince this court to move the goal posts for them to avoid the injunction lapsing in the event the district court decides it should not continue. *Ideal Toy* and *Eastern Airlines* prevent that.

The district court heard argument on November 14, 2024 and stated its intention to provide a "quick" ruling. *See* Tr. of Hr'g, at 91 (McMahon, J.) ("You know me. I'll try to be quick."). The district court seems likely to rule before January 9, 2024. Even assuming that extending the preliminary injunction were otherwise proper and warranted—and it is not—any extension can only preserve the status quo and is therefore subject to the district court's ruling and cannot extend beyond any reversal on that appeal, should that occur.

**2.     Debtors Present No Factual Record To Justify The Extension.**

Debtors informed the district court on November 14, 2024 that they did not know whether they would need an extension of the preliminary injunction beyond December 2. Tr. of Hearing *In re Purdue Pharma, L.P.*, No. 7:24-CV-7042-CM (S.D.N.Y. Nov. 14, 2024), at 40:22-41:5 ("So you're asking me for a date certain when enough is enough. I don't know. But I'll tell you this: The current injunction that we are on appeal today expires in how many days? And we haven't moved for a new one yet. Why? Because we don't know what happens next."). At the time, Debtors had access to and indeed discussed the Co-Mediators' Report during argument before the district court. *See, e.g., id.* at 35:12-24; 43:8-15. And Debtors now inform this Court that it became necessary to seek a further extension of the preliminary injunction between the end of oral argument and their filing little more than 72 hours later. Mem. of Law, at 7 [D/N 692] ("After the issuance of the Mediators' Report and oral argument before the District Court on Maryland's appeal of prior extension orders, the Debtors consulted with key creditor constituencies regarding whether, and to what extent, the Debtors should seek a further extension of the Preliminary Injunction. It was not until today, Sunday, November 17, that the Debtors concluded that developments since the Mediators' report and District Court argument justified the instant motion to extend, with support from the Mediators and key case constituents.").

Debtors fail to specify or explain in any detail what "developments" between November 14 and 17, 2024, made necessary the filing of a further 38-day extension of the preliminary injunction, causing that injunction to extend 56 days after the oral argument at which they could not say that a further extension would be necessary.  Without the facts, this Court cannot make findings.

### 3. The Mediator's Report Demonstrates That Debtors Are Unlikely To Succeed in Obtaining Consensual Releases For The Sacklers.

Although Debtors cannot rely upon the Co-Mediator's Report because they told the district court on November 14 that they remained undecided about seeking a further extension and have explained that their reason lie in unspecified further "developments," *id.*, Debtors nonetheless cite the report heavily.  But far from supporting the further extension of the preliminary injunction, the Co-Mediators' Report describes an agreement in principle between only 15 states and fewer than all of the Sackler parties, along with the UCC and two creditor groups that represent subdivisions but are not themselves—as far as we know—authorized to consent on behalf of those subdivisions' behalf.  [D/N 6917 at ¶3].  Moreover, as the mediators describe it, the agreement in principle is to broad terms and "subject to the satisfactory resolution of various open issues, as well as the documentation of all aspects of the settlement." *Id.*

As the mediators state, however, "much work remains" *Id.* ¶4.  Indeed, aside from 15 states and the creditors group, according to the report, most creditors and now an unspecified number of the Sackler individuals or entities have not consented to the agreement in principle.  In short, the parties to the agreement—which does not include all the Sackler parties—are leagues away from approaching the a consensual resolution with the Sacklers that could be incorporated into an acceptable plan of reorganization of Purdue.  Although the State of Maryland continues to support

the co-mediators and their efforts, as we have said, the preliminary injunction appears to be impeding those efforts which appear nowhere close to success.

To be sure, the Co-Mediators claim in paragraph 4 of their Report that the injunction is necessary. The State of Maryland, however, and others, *see Harrington v. Purdue Pharma, L.P.*, 144 S. Ct. 2071 2087 & n.7 (2024), respectfully disagree with that assessment and believe that resolution could be aided, not frustrated, by releasing claimants from the injunction. At any rate, because paragraph 4 of the Co-Mediators' Report takes one side of a disputed substantive position between many parties in interest, it exceeds the authorization under the Mediation Order [D/N 6906] to "file interim *status reports* with the Court." *Id.* ¶17 (emphasis added).

### 4. Any Extension Should Be Secured By A Bond.

Finally, the Court should require a bond in at least the full amount of the Sackler contribution. Fed. R. Bankr. P. 7062, 7065; Fed. R. Civ. P. 62(d), 65(c). The Supreme Court has held that non-debtors are not entitled to the benefits of bankruptcy because they have not entered into bankruptcy's "simple bargain." *Harrington*, 144 S. Ct. at 2077. Here, the claims against Purdue and the Related Parties have been estimated into the trillions of dollars. The preliminary injunction has protected the non-debtor Sackler parties for more than five years from litigation filed by *their* creditors, producing what Debtors claim is a benefit to creditors. Yet, as the Supreme Court appears to have recognized, the preliminary injunction may be the detriment of the Estate and the Sacklers' other creditors. 144 S. Ct. at 2087 & n.7. Rules 62(d) and 65(c) provide for injunction bonds to guard against the substantial losses that the Sacklers' creditors may face as a result of a preliminary injunction – losses that include the costs of delayed relief from the harms that Purdue and the Sacklers created, loss of the time value of money, and from the potential for later frustration of the pursuit of the claimants' claims. *Madison Square Garden Corp., Ill., v.*

*Carnera*, 52 F.2d 47, 49 (2d Cir. 1931) ("The District Court, in its discretion, did issue the preliminary injunction and required the plaintiff as a condition upon its issuance to secure its own performance . . . with a bond . . . to pay the defendant such damages as he may sustain by reason of the injunction. Such an order is clearly not an abuse of discretion."). It is fundamentally unfair to enable the Sacklers to have the protections of the litigation without affording the Sacklers' creditors the protections of an appropriate and sufficient bond, and the Court should impose one before granting any further extension of the preliminary injunction.

Dated: November 22, 2024               Respectfully submitted,

                                       ANTHONY G. BROWN
                                       Attorney General of Maryland

                                       /s/ Brian T. Edmunds_____
                                       BRIAN T. EDMUNDS
                                       SARAH A. ZADROZNY
                                       Assistant Attorneys General
                                       (admitted pro hac vice)
                                       OFFICE OF THE ATTORNEY GENERAL
                                       200 St. Paul Place
                                       Baltimore, Maryland 21202
                                       (410) 576-6578
                                       bedmunds@oag.state.md.us

                                       *Attorneys for the State of Maryland*