**Hearing Date: November 26, 2024 at 11:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: November 22, 2024 at 3:00 p.m. (Prevailing Eastern Time)**
**Reply Deadline: November 25, 2024 at 12:00 p.m. (Prevailing Eastern Time)**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Marc J. Tobak
Joshua N. Shinbrot

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (SHL)** |
| Debtors.[1] | **(Jointly Administered)** |
| **PURDUE PHARMA L.P.,** *et al.*, | |
| Plaintiffs, | **Adv. Pro. No. 19-08289 (SHL)** |
| v. | |
| **COMMONWEALTH OF MASSACHUSETTS,** *et al.*, | |
| Defendants. | |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO EXTEND THE MEDIATION AND EXTEND THE PRELIMINARY INJUNCTION AND ASSOCIATED DEADLINES INCLUDING TOLLING**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Purdue Products L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717), and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT .................................................................................................. ii

ARGUMENT ........................................................................................................................2

    I.     This Court Has Jurisdiction to Enter the Limited Extension ...................................2

    II.    This Court's Statutory Authority to Enter the Preliminary Injunction is
          Undisturbed by *Harrington*........................................................................................4

    III.   The Preliminary Injunction Factors Continue to Weigh Strongly in Favor
          of the Debtors' Requested Extension.......................................................................9

         A.     The Debtors Have Demonstrated Reasonable Prospects of a
              Successful Reorganization ........................................................................10

         B.     Lifting the Preliminary Injunction Now Would Irreparably Harm
              the Estates ................................................................................................14

         C.     The Balance of Harms and the Public Interest Weigh Strongly in
              Favor of the Debtors' Modest Request .....................................................16

         D.     This Court Should Not Require the Debtors to Post a Bond ....................16

CONCLUSION....................................................................................................................18

# TABLE OF AUTHORITIES

## CASES

PAGE(S)

*In re Baldwin-United Corp. Litig.*,
    765 F.2d 343 (2d Cir. 1985) ................................................ 5

*In re Bernard L. Madoff Inv. Secs., LLC*,
    512 F. App'x 18 (2d Cir. 2013) ........................................... 6

*Browning v. Navarro*,
    743 F.2d 1069 (5th Cir. 1984) ............................................. 6

*In re Bush Terminal Co.*,
    78 F.2d 662 (2d Cir. 1935) ................................................. 7

*In re Caesars Ent. Operating Co., Inc.*,
    808 F.3d 1186 (7th Cir. 2015) ............................................. 6

*In re Canter*,
    299 F.3d 1150 (9th Cir. 2002) ............................................. 6

*Carlton v. Firstcorp, Inc.*,
    967 F.2d 942 (4th Cir. 1992) .............................................. 6

*In re Celsius Network, LLC*,
    2024 Bloomberg Law 337924 (Bankr. S.D.N.Y. Sept. 25, 2024) ......... 11

*In re Chanticleer Assocs., Ltd.*,
    592 F.2d 70 (2d Cir. 1979) ................................................ 7

*Chao v. Hosp. Staffing Servs., Inc.*,
    270 F.3d 374 (6th Cir. 2001) .............................................. 6

*In re Coast to Coast Leasing, LLC*,
    661 B.R. 621 (Bankr. N.D. Ill. 2024) .................................... 8

*Cont'l Ill. Nat'l Bank & Tr. Co. v. Chi., & P. Ry. Co.*,
    294 U.S. 648 (1935) ....................................................... 7

*In re Dairy Mart Convenience Stores, Inc.*,
    351 F.3d 86 (2d Cir. 2003) ................................................ 9

*In re Diocese of Buffalo*,
    663 B.R. 197 (Bankr. W.D.N.Y. 2024) .................................... 8

*In re Drake*,
    786 F. Supp. 229 (E.D.N.Y. 1992) ........................................ 11

*Flatiron Health, Inc. v. Carson*,
    602 F. Supp. 3d 482 (S.D.N.Y. 2020) .................................................................. 4

*Gerzhgorin v. Selfhelp Cmty. Servs.*,
    2022 WL 912523 (E.D.N.Y. Mar. 29, 2022) ........................................................ 11

*Harrington v. Purdue Pharm. L.P.*,
    144 S. Ct. 2071 (2024) ................................................................................. 8, 13

*Ideal Toy Corp. v. Sayco Doll Corp.*,
    302 F.2d 623 (2d Cir. 1962) ................................................................................ 4

*Int'l Ass'n of Machinists & Aerospace Workers v. E. Air Lines, Inc.*,
    847 F.2d 1014 (2d Cir. 1988) ............................................................................... 2

*MacArthur Co. v. Johns-Manville Corp.*,
    837 F.2d 89 (2d Cir. 1988) ............................................................................. 5, 6

*Madison Square Garden Corp., Ill. v. Carnera*,
    52 F.2d 47 (2d Cir. 1931) ................................................................................. 17

*Mullins v. City of N.Y.*,
    626 F.3d 47 (2d Cir. 2010) ............................................................................... 11

*New York v. U.S. Dep't of Homeland Sec.*,
    475 F. Supp. 3d 208 (S.D.N.Y. 2020) ................................................................. 2

*In re Onyx Site Servs.*,
    2024 WL 4132150 (Bankr. M.D. Fla. Aug. 22, 2024) ......................................... 8

*In re Parlement Techs., Inc.*,
    661 B.R. 722 (Bankr. D. Del. 2024) ................................................................... 8

*Penn Terra Ltd. v. Dep't of Env't Res., Com. of Pa.*,
    733 F.2d 267 (3d Cir. 1984) ............................................................................... 6

*In re Purdue Pharm. L.P.*,
    619 B.R. 38 (S.D.N.Y. 2020) .......................................................................... 4, 5

*In re Purdue Pharm. L.P.*,
    633 B.R. 53 (Bankr. S.D.N.Y. 2021) ................................................................. 14

*In re Purdue Pharm. L.P.*,
    69 F.4th 45 (2d Cir. 2023) ............................................................................. 9, 13

*State of Mo. v. U.S. Bankr. Ct. for E. D. of Ark.*,
    647 F.2d 768 (8th Cir. 1981) ............................................................................. 6

*In re Teligent, Inc.*,
    640 F.3d 53 (2d Cir. 2011) ............................................................................... 12

*We the Patriots USA, Inc. v. Hochul*,
   17 F.4th 266 (2d Cir. 2021) .............................................................................. 11

### STATUTES & RULES

11 U.S.C. § 105 ................................................................................... *passim*

11 U.S.C. § 105(a) .............................................................................. *passim*

11 U.S.C. § 1651(a) ...................................................................................... 7

55 Stat. 546 (1898) ....................................................................................... 7

Bankr. Act § 2(15) ........................................................................................ 7

Fed. R. Bankr. P. 7062 .......................................................................... 3, 17

Fed. R. Bankr. P. 7065 ................................................................................ 16

Fed. R. Civ. P. 62(c) .................................................................................... 4

Fed. R. Civ. P. 62(d) ......................................................................... 3, 4, 17

Fed. R. Evid. 807(a) ............................................................................. 10, 11

### OTHER AUTHORITIES

Judiciary Act of 1789 Section 14, 1 Stat. 81-82 .......................................... 7

S. Rep. No. 989, 95th Cong., 2d Sess. 51 (1978)) ....................................... 7

## PRELIMINARY STATEMENT[2]

Out of the Debtors' hundreds of thousands of creditors, only three object to the Debtors' request for a 38-day extension of the Preliminary Injunction to permit the Debtors to build upon certain "agreements in principle" among critical creditor constituencies and the Sacklers.[3]  Not one of those three objectors comes close to rebutting the Debtors' clear showing that the extension of the Preliminary Injunction is within the Court's jurisdiction and statutory authority, and that all four preliminary injunction factors strongly support the requested extension.

In light of the Mediators' Report reflecting clear progress towards a successful reorganization through a value maximizing and broadly supported plan, the Objecting Parties all but abandon arguing the merits of the Preliminary Injunction.  Instead, Maryland wrongly argues that this Court lost jurisdiction over the Preliminary Injunction by virtue of Maryland's appeal. Washington takes a different tack and contorts the rules of evidence in a bizarre attempt to bar this Court from considering the Mediators' Report.  And Nassau County once again misreads the Supreme Court's decision in a failed effort to call into question this Court's long-established authority to enter the Preliminary Injunction.  Each of those arguments fails.  Pursuant to the

---

[2] ECF numbers reference docket entries in this adversary proceeding unless otherwise noted.  All capitalized terms used but not defined herein have the meanings ascribed to them in the Debtors' Memorandum of Law in Support of Motion to (I) Extend the Mediation and (II) Extend the Preliminary Injunction and Associated Deadlines Including Tolling [ECF No. 592] (the "**Opening Brief**").

[3] The three objecting parties (the "**Objecting Parties**") are the State of Maryland [ECF No. 598] ("**Maryland Objection**"); the State of Washington [ECF No. 597] ("**Washington Objection**"); and Nassau County [Bankr. Dkt. No. 6946] ("**Nassau Objection**").  Mr. Fredrick Hill, a pro se claimant, also objected to the Limited Extension request. [ECF No. 596].  However, given this Court's repeated rulings on Mr. Hill's recycled arguments, and in the interest of judicial economy, the Debtors incorporate by reference their prior briefing and argument with respect to corporate names and the effect of *Harrington*, but otherwise do not believe it is necessary to respond.  *See* Oct. 31 Hr'g Tr. 68:23-69:2 (informing Mr. Hill that the Court will not address "an issue that is not the issue on the table for today," including Mr. Hill's argument regarding "company names" and pursuit of Mr. Hill's New Jersey action).

Federal Rules and binding Second Circuit precedent, this court has jurisdiction to enter the

Limited Extension.  In doing so, this Court may properly consider the Mediators' Report as

compelling evidence of the Debtors' progress toward successful reorganization.  And as this

Court has held four times, *Harrington* did not address, much less overrule *Dunaway*, and the

uniform case law on Section 105 preliminary injunctions.  Because the Debtors have shown that

all four factors weigh strongly in favor of granting the Preliminary Injunction, this Court should

again overrule the serial Objecting Parties and grant the Limited Extension.

## <u>ARGUMENT</u>

### I.    **This Court Has Jurisdiction to Enter the Limited Extension**

This Court has jurisdiction over the Debtors' request for a tailored, 38-day extension of

the Mediation and Preliminary Injunction based on developing facts and circumstances.

Appeals of preliminary injunctions do not automatically divest lower courts of

jurisdiction.  Rather, the divestiture of jurisdiction rule is "guided by concerns of efficiency" and

applies only where a lower court's decision would "disturb its prior orders or interfere with the

particular questions presented by . . . [the] pending appeal."  *See New York v. United States Dep't*

*of Homeland Sec.*, 475 F. Supp. 3d 208, 224–25 (S.D.N.Y. 2020) (exercising jurisdiction over a

request for a preliminary injunction where a prior iteration of such injunction was on appeal in

the Second Circuit); *Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. E. Air Lines,*

*Inc.*, 847 F.2d 1014, 1017–18 (2d Cir. 1988) (holding district court properly issued an injunction

based on new evidence and circumstances, despite prior preliminary injunction pending on

appeal).  By contrast, in situations where a movant seeks new relief predicated on "new facts and

circumstances that were not—and could not have been—before the Court when it issued its prior

order," the lower court has jurisdiction to decide such issues notwithstanding an appeal of its

prior orders.  *New York*, 475 F. Supp. 3d at 224.  This is particularly so in the case of a

preliminary injunction, as recognized by the Federal Rules of Civil Procedure—which expressly

provide that injunctions may be modified or granted while on appeal. *See* Fed. R. Civ. P. 62(d)

(as applicable to bankruptcy proceedings through Fed. R. Bankr. P. 7062).

Here, the Debtors have presented additional new grounds for an extension of the

Preliminary Injunction that were not present at the time the Court issued the 39th Amended

Order on appeal before the District Court, including a Mediators' Report announcing, *inter alia*,

an agreement in principle on certain key economic issues among many key stakeholders.

Mediators' Report ¶ 3. Moreover, the continued support from or non-objection to the

continuation of the Preliminary Injunction—all based on up-to-the-minute developments—by all

but three objectors provides the Court with a basis to conclude that there has been new

incremental progress in Mediation that justifies continuation of the Preliminary Injunction to

facilitate the Debtors' successful reorganization.

These rules, which permit a trial court to extend a preliminary injunction during the

pendency of an appeal, make good sense. It would be an absurd result if preliminary injunctions

were forced to lapse merely by virtue of an appeal. As the Debtors have repeatedly explained,

the short extensions of the Preliminary Injunction that the Debtors have sought here are essential

to maintaining pressure and facilitating progress in Mediation. The agreements-in-principle

identified for the first time in the Mediators' Report are strong evidence that this approach is

working. And here, as in *New York* and *International Association*, this Court's consideration of

the present extension request does not impact Judge McMahon's ability to rule on the issues

before her. While it is true that Judge McMahon's ruling, if adverse, might affect any further

extension of the Preliminary Injunction (and possibly this one, if granted), that does not mean

that the pending appeal before her has divested this Court of jurisdiction over this extension

request.

Maryland's cited authority is also entirely consistent with this result. (Maryland

Objection at 2–3.) In *Ideal Toy Corp. v. Sayco Doll Corp.*, 302 F.2d 623, 625 (2d Cir. 1962), the

Second Circuit affirmed the lower court's exercise of jurisdiction under Rule 62(d) to "preserve

the status quo"—that is, to preserve the effectiveness of the injunction on appeal. *Id.* ("It was

proper, to be sure, for Judge Bryan to take jurisdiction of the motion pursuant to Rule 62(c), Fed.

Rules Civ. Proc., which permits modification of injunction orders during the pendency of an

appeal"). Similarly, the court in *Flatiron Health, Inc. v Carson*, 602 F. Supp. 3d 482 (S.D.N.Y.

2020) found that it <u>retained jurisdiction</u> over the preliminary injunction to the extent needed to

modify its terms while it was pending on appeal. *Id.* at 485–86. Noting that lower courts should

be careful to ensure any modifications to an order on appeal "'are consistent with the spirit' of

the original injunction such that they do not materially alter the status of the case on appeal,"the

court held that it could comfortably modify the terms of the injunction without disturbing

appellate proceedings. *Id.* at 486. So too here, especially given that the extension request at bar

in no way, shape or form modifies the prior extensions on appeal, and instead deals exclusively

with a new time period that was not the subject of those prior orders.

## II.    This Court's Statutory Authority to Enter the Preliminary Injunction is Undisturbed by *Harrington*

Nassau County once again attempts to contort the narrow holding of *Harrington* to argue

that it is "in direct conflict with the *Dunaway* analysis," and specifically Judge McMahon's

"reliance on the lineage of cases that permit discharge and release for non-debtors." (Nassau

Objection at ¶ 10.) But Judge McMahon's decision in *Dunaway* drew a clear distinction between

the <u>preliminary</u> relief the Debtors sought in the form of a temporary injunction to facilitate their

reorganization, and a nonconsensual _permanent_ injunction of claims against third-parties, which the Debtors are _not_ seeking here. *In re Purdue Pharms. L.P.* (hereinafter "*Dunaway*"), 619 B.R. 38, 57 (S.D.N.Y. 2020) (noting "the protection that Appellants fear (and oppose) will be decided in the context of other motions in [the] bankruptcy"); *see also* Oct. 11, 2019 Hr'g Tr. 264:20-265:1 ("[this court is] far from approving any sort of permanent injunction and release with respect to third parties in this case. . . . one of the main purposes of the preliminary injunction is to enable the parties to analyze whether they would support . . . a [consensual reorganization] plan."); July 9, 2024 Hr'g Tr. 95:5-9 ("[T]he Supreme Court addressed . . . a non-consensual third-party release of claims. That is different than and legally distinct from a request to impose an injunction to allow [] reorganization time to reach an appropriate resolution.").Contrary to Nassau's misreading of *Dunaway*, in that case, the District Court affirmed that the bankruptcy court's issuance of the Preliminary Injunction was a valid exercise of this Court's *statutory* authority under section 105(a) to facilitate reorganization, not as a bridge to third party releases. *Id.* at 57 ("Section 105(a) . . . allows bankruptcy courts to issue injunctions as may be 'necessary and appropriate' to facilitate confirmable reorganization plans under Chapter 11"). Judge McMahon's holding remains good law and was rooted in decades of Second Circuit precedent and authority dating back to the All Writs Act.

As the Debtors have repeatedly explained throughout these proceedings, the authority of bankruptcy courts to temporarily enjoin creditor suits against non-debtors pursuant to Section 105(a) has long been recognized in the Second Circuit, and repeatedly affirmed by this Court. *See In re Baldwin-United Corp. Litig.*, 765 F.2d 343, 348 (2d Cir. 1985) (holding "the Bankruptcy Court has authority under section 105 broader than the automatic stay provisions of section 362 and may use its equitable powers to assure the orderly conduct of the reorganization

proceedings"); *see also, e.g.*, *MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 93 (2d Cir. 1988) (holding that section 105(a) provides "[a]dditional authority" to enjoin lawsuits "that might impede the reorganization process"); *In re Bernard L. Madoff Inv. Secs., LLC*, 512 F. App'x 18, 19–20 (2d Cir. 2013) ("Section 105(a) is to be 'construed liberally to enjoin suits that might impede the reorganization process.'") (quoting *MacArthur*, 837 F.2d at 93)[4]; *E.g.*, Sept. 5, 2024 Hr'g Tr. 58:8-10 [ECF No. 534] ("In appropriate circumstances, Section 105 has been used to enjoin actions [] that were brought by non-debtors -- against non-debtors[.]"); Oct. 31 Hr'g Tr. 89:11-16 ("Section 105(a) may be used to enjoin creditors' lawsuits against third parties where the injunction plays an important part in the Debtor's reorganization plan or when the action to be enjoined will have an immediate adverse economic consequence for the Debtor's estate."). These uniform holdings have nothing to do with preliminary injunctions as bridges to (now unlawful) nonconsensual third party releases. Rather, it is—and always has been—about facilitating reorganization and avoiding harm to the estate.

---

[4] Decisions in at least the Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth Circuits are in accord. *See, e.g.*, *In re Caesars Ent. Operating Co., Inc.*, 808 F.3d 1186, 1188 (7th Cir. 2015) (section 105(a) permits bankruptcy courts to issue injunction if it is "likely to enhance the prospects for a successful resolution of the disputes attending its bankruptcy"); *In re Canter*, 299 F.3d 1150, 1155 (9th Cir. 2002) (holding that "[s]ection 105(a) contemplates injunctive relief in precisely those instances where parties are pursuing actions pending in other courts that threaten the integrity of a bankrupt's estate" (internal quotation marks and citation omitted)); *Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 384 n.5 (6th Cir. 2001) (holding that even if the automatic stay does not apply, "[t]he bankruptcy court has ample other powers to stay" an action against the debtors "including the discretionary power under [section] 105(a)" (internal quotation marks and citation omitted)); *Carlton v. Firstcorp, Inc.*, 967 F.2d 942, 944 n.4 (4th Cir. 1992) (Section 105 "includes the power to enjoin the continuation of ongoing judicial and administrative proceedings which are excepted from the automatic stay"); *Browning v. Navarro*, 743 F.2d 1069, 1084 (5th Cir. 1984) ("A bankruptcy court has the power to enjoin proceedings excepted from a § 362 stay under [section 105.]"); *Penn Terra Ltd. v. Dep't of Env't Res., Com. of Pa.*, 733 F.2d 267, 273 (3d Cir. 1984) (holding that a "bankruptcy court, in its discretion, may issue an appropriate injunction, even if the automatic stay is not operative"); *State of Mo. v. U.S. Bankr. Ct. for E. D. of Ark.*, 647 F.2d 768, 777 (8th Cir. 1981) ("[T]he bankruptcy court possesses power [under section 105] in its discretion to enjoin state courts, officials, and agencies[.]").

Indeed, the Supreme Court long ago recognized the authority of courts to protect their jurisdiction—authority that flows from the Code's predecessor statute the Bankruptcy Act; the traditional authority of courts of equity; and the All Writs Act. *See Cont'l Ill. Nat'l Bank & Tr. Co. v. Chi., Rock Island & P. Ry. Co.*, 294 U.S. 648, 675-77 (1935) (holding that "[t]he power to issue an injunction when necessary to prevent the defeat or impairment of its jurisdiction is [] inherent in a court of bankruptcy, as it is in a duly established court of equity" and is also sourced in the All Writs Act and the predecessor to Section 105(a) of the Bankruptcy Code); *see also In re Bush Terminal Co.*, 78 F.2d 662, 665 (2d Cir. 1935) (citing *Continental Illinois* and Section 105(a)'s predecessor, Section 2(15) of the Bankruptcy Act, recognizing that "[a] court of equity or bankruptcy may enjoin any action which would tend to defeat or impair it jurisdiction"); *In re Chanticleer Assocs., Ltd.*, 592 F.2d 70, 73-74 (2d Cir. 1979) (citing Section 2(15) for the principle that "the court's power to preserve its jurisdiction by enjoining proceedings that would remove property from the bankrupt estate is fundamental to the scheme of the Bankruptcy Act.").[5] This is also consistent with the legislative history of Section 105, which makes crystal-clear that Congress intended Section 105(a) to be used to enjoin suits <u>not subject to the automatic stay</u> when necessary to ensure an orderly reorganization. S. Rep. No. 989, 95th Cong., 2d Sess. 51 (1978) (determining that Section 105 may be used "to stay actions not covered by the automatic stay").

---

[5] The All Writs Act, dating to the Judiciary Act of 1789, authorizes all federal courts to issue injunctions necessary to carry out their statutory jurisdiction. 11 U.S.C. § 1651(a) ("[A]ll courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions."); Judiciary Act of 1789 Section 14, 1 Stat. 81-82 ("[A]ll the before-mentioned courts of the United States shall have power to issue writs . . . which may be necessary for the exercise of their respective jurisdictions."). Congress built upon this authority in Section 2(15) of the Bankruptcy Act, which, like its successor, authorized the issuance of "such orders . . . as may be necessary for the enforcement of the provisions of this Act." 55 Stat. 546 (1898).

Nothing in *Harrington* alters that well-settled law.[6]  It is therefore unsurprising that every other court to address the issue since *Harrington* has agreed, as to the legal question, that nonconsensual third-party releases are "legally distinct" from the temporary relief the Debtors seek under Section 105(a).  *See, e.g.*, July 9, 2024 Hr'g Tr. 95:7 [ECF No. 511]; *In re Coast to Coast Leasing, LLC*, 661 B.R. 621, 624 (Bankr. N.D. Ill. 2024) (holding that *Harrington v. Purdue Pharma, L.P.*, 144 S. Ct. 2071 (2024) did not preclude a Section 105(a) injunction of creditor claims against non-debtor third parties); *In re Parlement Techs., Inc.*, 661 B.R. 724 (Bankr. D. Del. 2024) ("The Court concludes that *Purdue Pharma* does not preclude the entry of [ ] a preliminary injunction" against non-debtor third parties); *In re Onyx Site Servs., LLC*, 2024 WL 4132150, at *2 (Bankr. M.D. Fla. Aug. 22, 2024) (granting Section 105(a) injunction of claims against non-debtor principal of the debtor); *In re Diocese of Buffalo, N.Y.*, 663 B.R. 197, 200 (Bankr. W.D.N.Y. 2024) ("Nothing in the Supreme Court's [*Harrington*] decision expressly prohibits a temporary stay of litigation against [non-debtor] parishes and affiliates.").

Finally, the Supreme Court's footnote stating that Section 105(a) alone cannot be used to justify nonconsensual permanent third-party releases under a plan of reorganization has no bearing on the continued availability of preliminary injunctions in appropriate circumstances. *See Harrington v. Purdue Pharma L. P.*, 144 S. Ct. 2071, 2082 n.2 (2024).  The Second Circuit has held, and the Supreme Court affirmed in *Harrington*, that 105(a) cannot be used to *create* a

---

[6] This Court has already repeatedly held that the *Harrington* decision did not in any way impact the authority of a bankruptcy court to issue preliminary injunctions of third-party claims to facilitate a Debtors' reorganization.  *See* July 9, 2024 Hr'g Tr. 94:25-95:15 [ECF No. 511]; Sept. 5, 2024 Hr'g Tr. 69:19-23 [ECF No. 534]; Sept. 23, 2024 Hr'g Tr. 84:24-85:9 [ECF No. 560]; Oct. 31, 2024 Hr'g Tr. 90:8-91:1.  For a fulsome discussion of the Supreme Court's decision in *Harrington*, we refer the Court to the Debtors' prior briefing.  *See, e.g.*, Debtors' Reply Memorandum In Further Support of the 39th Motion to Extend at 8-9 [ECF No. 579]; Debtors' Memorandum of Law In Support of the 39th Motion to Extend at 8 n.7 [ECF No. 569]; Debtors' Reply Memorandum In Further Support of the 38th Motion to Extend at 17-18 [ECF No. 550].

substantive right not found in other law. *See In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86, 92 (2d Cir. 2003); *In Re Purdue Pharma L.P.*, 69 F.4th 45, 73 (2d Cir. 2023) (rejecting the "suggestion that § 105(a) alone supports the imposition of the releases in this action" and citing *Dairy Mart* in support). Unlike the Debtors' prior plan of reorganization, however, the Preliminary Injunction does not create or alter <u>any</u> substantive rights. Rather, it is a basic exercise of the court's inherent power to ensure orderly bankruptcy proceedings and protect its jurisdiction to reorganize the Debtors' Estates under Chapter 11 of the Code. Consistent with *Harrington*, the Debtors' eventual plan of reorganization will preserve every creditor's right to pursue the Related Parties.[7]

## III. The Preliminary Injunction Factors Continue to Weigh Strongly in Favor of the Debtors' Requested Extension

Unable to rebut the Debtors' clear showing that all four preliminary injunction factors are met, the Objectors resort to two flawed arguments: (1) the State of Washington argues that the Mediators' Report is "hearsay," that the Court cannot consider; and (2) Maryland outlandishly asserts that the Mediators' Report supports allowing the injunction to lapse. To the contrary, the Debtors sought the extant extension of the Preliminary Injunction at the direction of the court-appointed Mediators and with the support or non-objection of almost every major creditor constituency because the Preliminary Injunction is <u>working</u> to facilitate progress towards a value

---

[7] For the avoidance of doubt, the Debtors' plan of reorganization will <u>not</u> contain non-consensual third party releases. Notwithstanding Washington's utterly baseless insinuations to the contrary (Washington Objection ¶ 15), the Debtors well understand the contours of the Supreme Court's decision, and any plan of reorganization in these cases will preserve any non-settling creditor's right to pursue claims against the Debtors' Related Parties.

maximizing and broadly supported plan of reorganization consistent with *Harrington*.[8]  Every preliminary injunction factor favors the 38-day extension requested.

### A.    The Debtors Have Demonstrated Reasonable Prospects of a Successful Reorganization

Successful reorganization is materially more likely now—as a result of Mediation with the Preliminary Injunction in place—than it was five months ago at the time of the Supreme Court's decision.  Material progress towards a value maximizing and broadly supported plan has flowed from the "focus, energy, and constructive engagement" with which the Mediation Parties have pursued monetary and nonmonetary settlements between and among the Sacklers, the Debtors, and key creditor groups, all of which have been facilitated by the Preliminary Injunction.  Mediators' Report ¶¶ 1, 3.  Indeed, as the Court noted after listening to the Mediators' oral report at the October 31, 2024 hearing, "it's clear to me that the view in the room is that we're getting to the end."  Oct. 31, 2024 Hr'g Tr. 97: 20-21.  In response, the Objecting Parties offer only baseless postulations and confounding arguments about this Court's ability to consider the evidence before it.  (Washington Objection at ¶ 11-16.)

First, as an initial matter, even assuming *arguendo* that the Mediators' oral and written reports are hearsay and do not fall within any exception[9], this Court may properly rely on such

---

[8] In the interest of judicial economy, and in response to this Court's observation that the parties may incorporate prior briefing by reference rather than repeating issues, *see* Oct. 31, 2024 Hr'g Tr. 27:19-28:6, the Debtors incorporate by reference their briefing in support of prior extensions of the Preliminary Injunction, as well as the Debtors' brief in Maryland's appeal of this proceeding.  Br. of the Debtor-Appellees, *In re Purdue Pharma*, No. 24-07042 (S.D.N.Y.) [ECF No. 36].  These papers detail the extensive harms that would befall the Estates were the Preliminary Injunction lifted, and the compelling reasons for extending the injunction.

[9] Even if the Mediators' Report is hearsay, it would still be admissible under Federal Rule of Evidence 807(a). That rule dictates that a hearsay statement should not be excluded if "the statement is supported by sufficient guarantees of trustworthiness" under a totality of the circumstances in which it was made and if "it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts."  Fed.

reports as evidence of the Debtors' prospects of successful reorganization.  The Second Circuit

has held that "hearsay testimony is admissible to support the issuance of a preliminary

injunction."  *Mullins v. City of N.Y.*, 626 F.3d 47, 48 (2d Cir. 2010) (finding trial court did not

abuse its discretion "in granting preliminary injunctive relief to Plaintiff-Appellees based in part

on such evidence"); *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 276 n.3 (2d Cir. 2021)

("[O]ur Court has ruled that courts may consider hearsay evidence such as affidavits when

determining whether to grant a preliminary injunction.").  And the sole authority cited by

Washington in support of its hearsay argument is a memorandum opinion deciding a motion to

dismiss on a contract dispute.  *In re Celsius Network, LLC*, 2024 Bloomberg Law 337924, at *3

(Bankr. S.D.N.Y. Sept. 25, 2024).  The opinion contains zero analysis or discussion of hearsay

and it is therefore unclear how exactly Washington intends for the Court to rely on it.

    Second, that the Mediators' Report was made consistent with the confidentiality

provisions of the Mediation Order[10] does not undermine its probative value.  While the

Mediators are empowered to "file interim status reports with the Court," they must do so

---

R. Evid. 807(a); *see also Gerzhgorin v. Selfhelp Cmty. Servs., Inc.*, 2022 WL 912523, at *7
(E.D.N.Y. Mar. 29, 2022) ("The hearsay rule is designed to prevent the admission of unreliable
hearsay but to permit through its many exceptions the admission of reliable hearsay" (quoting *In
re Drake*, 786 F. Supp. 229, 233 (E.D.N.Y. 1992))).  Here, the Mediators' Report is a highly
reliable source of information given that it was drafted and filed on the docket by two
preeminent, court-appointed Mediators, one of whom is a former federal judge.  And there is no
more probative source of evidence on the progress of confidential Mediation than the statements
of the Mediators themselves, who "have their pulse on the mediation and are really in the best
position to know what works and what doesn't."  Sept. 5, 2024 Hr'g Tr. at 61:11-15 [ECF No.
534].

[10] Third Amended Order Appointing the Honorable Shelley C. Chapman (Ret.) and Eric D.
Green as Co-Mediators and Establishing Terms and Conditions of Mediation (the "**Mediation
Order**"), *In re Purdue Pharma, L.P.*, No. 23-23649 (Bankr. S.D.N.Y., Nov. 1, 2024) [ECF No.
6906].

consistent with strict confidentiality provisions ensuring that "all communications made . . . in connection with the Mediation . . . remain confidential." Mediation Order ¶¶ 11, 17. As the Second Circuit has held, and this Court has repeatedly reminded the few serial Objecting Parties in this proceeding, "[c]onfidentiality is an important feature of the mediation and other alternative dispute resolution processes" and court-ordered mediation confidentiality must be "vigorously enforce[d] . . . because we believe that confidentiality is 'essential' to [mediation's] effectiveness." *In re Teligent, Inc.*, 640 F.3d 53, 57-58 (2d Cir. 2011); Sept. 23 Hr'g Tr. 41:4-14 [ECF No. 560] (rejecting Washington's argument that the Mediators' representations were "hearsay" and noting that without confidentiality courts would have to "write mediation out of our playbook of options").[11] Maryland complains that the Debtors did not "specify or explain in any detail what 'developments'" occurred between oral argument on appeal and November 17, 2024—but the Debtors are simply not at liberty to do so. (Maryland Objection at 5.) In any event, it is consistent with the Mediators' Report that material changes in the Mediation dynamic occurred over a period of days, given that "the Mediation Parties have redoubled their efforts to achieve consensus" and have been working "tirelessly" to that end. Mediators' Report ¶ 1.

Third, contrary to Washington's baseless assertion that "little has changed" (Washington Objection at ¶ 7), the Mediators' Report—the first one to be filed—states that agreements in

---

[11] Washington was involved in negotiations and drafting discussions prior to the Mediation Order being filed and was given ample opportunity to object to its confidentiality provisions. For instance, Matthew J. Gold, counsel to Washington, discussed the terms of the proposed Mediation Order on June 6, 2024 at 5 p.m. Eastern Standard Time with the Debtors and other Mediation Parties. Mr. Gold was also included on an e-mail chain on June 11, 2024, where certain parties provided comments, and on which copies of the draft proposed Mediation Order were circulated. On July 8, 2024, Mr. Gold confirmed review of the proposed order and asked follow-up questions. The proposed order was filed later that day. To turn around now and deem the Debtors' compliance with these unobjected to provisions "cagey and vague" is, to say the least, surprising. (Washington Objection ¶ 16.)

principle have been reached among many key parties on various critical items in Mediation.

Mediators' Report ¶ 3.  Nor is it the case that the parties' history of success in Mediation should

be discounted because of a subsequent change in the law.  (Washington Objection at ¶ 14.)

Mediation in these vertiginously complex and difficult cases previously led to a largely

consensual plan of reorganization that was authorized under then-existing law.  Indeed,

Washington, Maryland, and every single other state eventually signed onto that plan because of

successful negotiations in Mediation.  *See In Re Purdue Pharma L.P.*, 69 F.4th 45, 67 (2d Cir.

2023).  Mediation now presents "the best chance of achieving the greatest recovery" within the

confines of *Harrington*, and the Objecting Parties offer no serious argument to the contrary—as

evidenced by their willingness to continue engaging in Mediation.[12]  Sept. 23, 2024 Hr'g Tr.

89:23 [ECF No. 560]; (Nassau Objection ¶ 3; Washington Objection ¶ 2.)

    Finally, Maryland is incorrect that the Mediators must report universal consensus in order

for the likelihood of successful reorganization standard to be met.  (Maryland Objection at 5-6.)

Consistent with *Harrington*, any plan of reorganization will include only consensual third party

releases.  *Harrington v. Purdue Pharma L.P.*, 144 S. Ct. 2071, 2087 (2024).  Facilitating such a

plan will require broad consensus, but there will, of course, be parties who will choose to retain

the right to pursue their claims against the Sacklers—many of which may nevertheless be in

partial or full support of the plan.

---

[12] Indeed, Maryland acknowledged at oral argument on its appeal of this proceeding that "there is a possibility that we might settle at some amount."  Nov. 14, 2024 Hr'g Tr. 14:10-12, *In re Purdue Pharma*, No. 24-07042 (S.D.N.Y.).  It is unclear how Maryland believes that possibility could be realized, if not through Mediation.

### B.    Lifting the Preliminary Injunction Now Would Irreparably Harm the Estates

The Debtors' Opening Brief detailed the extensive record of harms that would befall the Estates—and by extension the Debtors' thousands of creditors—were the Preliminary Injunction lifted now.  Those harms include that lifting the injunction would "greatly jeopardize" and "sap the mediation of its momentum towards a solution," Oct. 31, 2024 Hr'g Tr. 22:6-14, 92:14-18; that allowing a litigation free-for-all would endanger the Estates' claims against the Sacklers, which this Court has repeatedly found are its most valuable assets[13]; and that opening the litigation floodgates would impose enormous burdens on the Estates.  *See* Opening Brief at 6-8. In response, Maryland and Washington "disagree" and speculatively posit that "resolution could be aided, not frustrated, by releasing claimants from the injunction" without proffering any basis for such position.  (Maryland Objection at 6; Washington Objection at ¶ 1.)  But neither Washington nor Maryland explains why this Court should disregard the Mediators' Statement, the overwhelming creditor support for the Preliminary Injunction, or the extensive record of the specific harms the Estates were actually suffering when litigation against the Debtors' Related Parties was proceeding in hundreds of cases in dozens of courts across the country before this Court entered the Preliminary Injunction.  They are entitled to their meritless idiosyncratic

---

[13] *See* July 9, 2024 Hr'g Tr. 93:14-16 [ECF No. 511] ("And in fact resuming litigation would threaten the estate's most valuable asset; that is the estate's claims against the Sacklers"); Feb. 1, 2023 Hr'g Tr. 31:2 [ECF No. 409] (identifying the claims against the Sacklers as the "most valuable asset" of the Estates); *In re Purdue Pharma L.P.*, 633 B.R. 53, 109 (Bankr. S.D.N.Y. 2021) (the Estate claims "probably would have the best chance of material success among all of the claims against the shareholder released parties.").

views, but that they hold them—contrary to the views of the dozens of other parties in the

Debtors' ecosystem—is of no moment.

Ignoring all of these <u>actual</u> harms that the Debtors suffered when litigation was

unchecked, Washington speculates that "[i]t is highly unlikely" that an adverse ruling in a

creditor action against the Sacklers would endanger the Estates' claims during the 38-day

extension period requested.  (Washington Objection ¶ 18.)  But as the Debtors explained in

response to Washington's last objection, litigation developments (in any of hundreds of

litigations) that could diminish the value of the Estates' claims can occur long before any

judgment, such as rulings on motions to dismiss.  That is particularly true because, as Nassau

County's objection illustrates, many enjoined actions against the Sacklers would recommence

mid-litigation were the Preliminary Injunction lifted.  (*See* Nassau Objection at ¶ 1.)  There is

also simply no basis for Washington's assumption that all of the thousands of actual and

potential actions against the Sacklers would proceed on a typical civil litigation timeline, let

alone in a coordinated fashion. Some states and other governmental entities would likely pursue

administrative actions on accelerated timelines in order to "jump the line" ahead of the UCC and

other creditors. *Cf.* Amended Statement of Charges, *Consumer Protection Div. v. Sackler*, CPD

Case No. 19-023-311366 (Md. Consumer Protective Div. May 29, 2019).  Moreover, if

Washington, Maryland, Nassau County, or any of the thousands of other plaintiffs did obtain a

judgment against the Sacklers, "that judgment would diminish the amount of money the Sacklers

have to perform their obligations under the current settlement, any future settlement, or pay any

judgment on a litigation claim that is owned by the debtor."  Feb. 1, 2023 Hr'g Tr. 32:11-16

[ECF No. 409]; *see also* Oct. 31, 2024 Hr'g Tr. 95:5-12 (noting that "one of the things driving

parties to try to reach a mediated global resolution" is that the estate would be "competing" with

creditors for the Sacklers' assets). The Court should not permit three Objecting Parties, three out of tens of thousands of creditors, to jeopardize a potentially multi-billion dollar settlement while progress continues in Mediation.

### C.    The Balance of Harms and the Public Interest Weigh Strongly in Favor of the Debtors' Modest Request

The goal of all parties to the Mediation is to reach a series of interlocking settlements between and among the Debtors, their creditors, and the Sacklers as quickly as possible in order to unlock billions of dollars in creditor compensation and opioid abatement. Maintaining the status quo for an additional 38 days in order to pursue these objectives—which are closer than ever to being obtained—is surely warranted and in the public interest.

Nassau County argues that because the Preliminary Injunction benefits the Sacklers, the balance of the harms tips in favor of rejecting the Debtors' extension request. (Nassau Objection ¶¶ 11-14.) The unfortunate reality that the Preliminary Injunction may also inure to the benefit of the Sacklers is neither relevant nor dispositive. What is important is that temporarily pausing litigation against the Sacklers is in the best interests of, and for the <u>purpose</u> of protecting, the Debtors and their many creditors—which include States, Native American Tribes, thousands of municipalities, school districts, hospitals, and victims—who stand to benefit the most from a value-maximizing plan of reorganization predicated on settlement with the Sacklers. Lifting the Preliminary Injunction would jeopardize creditor recoveries and irreparably harm the Estates; its effect on the Sacklers is an unavoidable byproduct of the relief sought.

### D.    This Court Should Not Require the Debtors to Post a Bond

Maryland's demand that the Debtors post a bond in "at least the full amount of the Sackler contribution" is predicated on a fundamental misunderstanding of the economics of this

case, and the applicable rules to preliminary injunctions requested by Debtors. (Maryland
Objection at 6.)

First, pursuant to Federal Rule of Bankruptcy Procedure 7065 Debtors are exempt from
the bond requirements of Rule 65(c). *See* Fed. R. Bankr. P. 7065 (providing "a preliminary
injunction may be issued on application of a debtor . . . without compliance with Rule 65(c)").
And that default rule counsels against the Court using its discretion to require security under
Rule 62(d), as applicable to this proceeding through Bankruptcy Rule 7062.

Second, Maryland's request that the amount of security posted by the Debtors equal "at
least the full amount of the Sackler contribution" (Maryland Objection at 6) evinces a grave
confusion regarding Mediation. There is no "Sackler contribution." The entire purpose of
Mediation is to achieve a settlement with the Sacklers that will unlock a so-called "Sackler
contribution." That contribution does not exist unless and until Mediation is successful.
Moreover, such hypothetical contribution will in all likelihood only materialize if the Debtors
succeed on appeal, so it is not clear how requiring such security would protect Maryland's
interests.[14]

Finally, the 1931 case which Maryland cites in support of its request is inapposite. In
*Madison Square Garden*, the Second Circuit held that the district court did not abuse its
discretion in requiring plaintiffs to post a bond as a condition of granting a preliminary
injunction. *See generally Madison Square Garden Corp., Ill., v. Carnera*, 52 F.2d 47 (2d Cir.
1931). At most, that authority stands for the proposition that a district court may, in its

---

[14] Requiring the Debtors to post a large bond would also hardly "preserve the status quo" of
Maryland's pending appeal of this injunction, as Maryland insists is necessary. (Maryland
Objection at 2-3.)

discretion, require a bond from a non-debtor movant.  Nor does a bond "work" in a legal proceeding with tens of thousands of parties.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in prior pleadings in support of the Preliminary Injunction, the Debtors respectfully request that this Court overrule the objections, and enter the Limited Extension as set forth herein.

Dated:    November 25, 2024
          New York, New York

By: /s/ Marshall S. Huebner
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone:    (212) 450-4000
Facsimile:    (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Marc J. Tobak
Joshua N. Shinbrot

*Counsel to the Debtors
and Debtors in Possession*