**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.*, | Case No. 19-23649 (SHL) |
| Debtors. | (Jointly Administered) |

-----------------------------------------------------------------x

| | |
|---|---|
| PURDUE PHARMA L.P., *et al.*, | |
| Plaintiffs, | |
| v. | Adv. Pro. No. 19-08289 (SHL) |
| COMMONWEALTH OF MASSACHUSETTS, *et al.*, | |
| Defendants. | |

-----------------------------------------------------------------x

**MODIFIED BENCH RULING GRANTING THE  DEBTORS' MOTION TO (I) EXTEND THE MEDIATION AND (II) EXTEND THE PRELIMINARY INJUNCTION AND ASSOCIATED DEADLINES INCLUDING TOLLING[1]**

**A P P E A R A N C E S :**

**DAVIS POLK & WARDWELL LLP**
*Counsel for the Debtors, Purdue Pharma L.P., et al.*
450 Lexington Avenue
New York, New York 10017
By:     Marshall S. Huebner, Esq.
         Benjamin S. Kaminetzky, Esq.
         Eli J. Vonnegut, Esq.
         James I. McClammy, Esq.
         Marc J. Tobak, Esq.
         Joshua N. Shinbrot, Esq.

---

[1]     This written decision memorializes the Court's bench ruling that was read into the record on the afternoon of November 26, 2024.  *See* November 26, 2024 Hr'g Tr. 60:20-92:24 [ECF No. 6989]  While the substance of the decision remains the same, edits have been made for ease of comprehension.  Because of its origins as a bench ruling, this decision has a more conversational tone than a traditional written decision.

**AKIN GUMP STRAUSS HAUER & FELD LLP**
*Counsel for the Official Committee of Unsecured Creditors of Purdue Pharma L.P., et al.*
One Bryant Park
New York, New York 10036
By:    Arik Preis, Esq.
        Mitchell P. Hurley, Esq.
        Sara L. Brauner, Esq.
        Theodore James Salwen, Esq.

**ANTHONY G. BROWN, ATTORNEY GENERAL OF MARYLAND**
*Counsel for the State of Maryland*
Office of the Attorney General
200 St. Paul Place
Baltimore, Maryland 21202
By:    Brian T. Edmunds, Esq.
        Sarah A. Zadrozny, Esq.

**LETITIA JAMES, ATTORNEY GENERAL OF NEW YORK**
*Counsel for the State of New York*
Office of the Attorney General
28 Liberty Street
New York, New York 10005
By:    David E. Nachman, Esq.
        Andrew S. Amer, Esq.
        Colleen K. Faherty, Esq.
        Eric R. Haren, Esq.
        Muhammad Umair Kahn, Esq.
        Martin A. Mooney, Esq.

-and-

The Capital
Albany, New York 12224-0341
By:    Robert J. Rock, Esq.

**NAPOLI SHKOLNIK**
*Counsel for the County of Nassau, New York*
1302 Avenida Ponce de Leon
Santurce, Puerto Rico 00907
By:    Hunter J. Shkolnik, Esq.

-and-

400 Broadhollow Road
Melville, New York 11747
By:    Brett S. Bustamante, Esq.

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**
*Counsel to the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants*
1177 Avenue of the Americas
New York, New York 10036
By:     Kenneth H. Eckstein, Esq.
        Rachael Ringer, Esq.
        David E. Blabey Jr., Esq.

**GILBERT LLP**
*Counsel to the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants*
700 Pennsylvania Avenue, SE
Washington, D.C. 20003
By:     Kami E. Quinn, Esq.

**BROWN RUDNICK LLP**
*Counsel to the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants*
7 Times Square
New York, New York 10036
By:     David J. Molton, Esq.

**OTTERBOURG P.C.**
*Counsel to the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants*
230 Park Avenue
New York, New York 10169
By:     Melanie L. Cyganowski, Esq.

**CAPLIN & DRYSDALE, CHARTERED**
*Counsel to the Multi-State Governmental Entities Group*
1200 New Hampshire Ave. NW, 8th Floor
Washington, D.C. 20036
By:     Kevin C. Maclay, Esq.
        Todd E. Phillips, Esq.
        Serafina Concannon, Esq.
        Lucas H. Self, Esq.

**KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.**
*Counsel to the State of Washington*
500 Fifth Avenue
New York, New York 10110
By:     Matthew J. Gold, Esq.
        Robert M. Tuchman, Esq.

**FREDRICK HILL**
*Pro Se*

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the Debtors' motion to extend the mediation that is currently ongoing in these cases and relatedly to extend the preliminary injunction that enjoins litigation against the Debtors' current and former owners, officers, directors, employees, and associated entities. *See Memorandum of Law in Support of Motion to (I) Extend the Mediation and (II) Extend the Preliminary Injunction and Associated Deadlines Including Tolling* [ECF No. 6928] (the "Motion").[2] Objections have been filed by the States of Maryland and Washington, as well as Nassau County, N.Y. and *pro se* claimant Fredrick Hill. *See Opposition to Motion to Extend Purdue Temporary Preliminary Injunction Past December 2024* [Adv. Proceeding No. 19-08289, ECF No. 596]; *Objection of the State of Washington to Motion for an Additional Extension of Injunction* [ECF No. 6940] (the "Washington Objection"); *Nassau County, NY's Objection to the Debtors' Motion to (I) Extend the Mediation and (II) Extend the Preliminary Injunction and Associated Deadlines Including Tolling* [ECF No. 6849] (the "Nassau County Objection"); *The State of Maryland's Opposition to Debtors' Motion to (I) Extend the Mediation and (II) Extend the Preliminary Injunction and Associated Deadlines Including Tolling* [Adv. Proceeding No. 19-08289, ECF No. 603] (the "Maryland Objection"). The Motion is supported by the Multi-State Governmental Entities Group, the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants, the Unsecured Creditors' Committee, and the AG Negotiating Committee, all of which have either filed statements in support of the extension or made statements in support at the hearing on the Motion. *See The Multi-State Governmental Entities Group's Statement in Support of the Motion to (I) Extend the Mediation and (II) Extend the Preliminary*

---

[2]      Unless otherwise indicated, references in this Memorandum of Decision to docket entries on the Case Management/Electronic Case Files ("ECF") system are to Case No. 19-23649.

*Injunction and Associated Deadlines Including Tolling* [ECF No. 6948]; *Ad Hoc Committee's Reply to Debtors' Motion to Extend the Mediation and the Preliminary Injunction* [ECF No. 6956]; *Statement of the Official Committee of Unsecured Creditors in Support of Relief Requested in Debtors' Motion to Extend the Mediation and the Preliminary Injunction* [ECF No. 6957]; November 26, 2024 Hr'g Tr. 25:5-26:17 (counsel to the New York State Attorney General's Office reporting that the AG Negotiating Committee supports the extension requested by the Debtors). The Debtors have also filed a reply. *See Reply Memorandum in Further Support of Motion to Extend the Mediation and Extend the Preliminary Injunction and Associated Deadlines Including Tolling* [ECF No. 6955] (the "Debtors' Reply"). All the pleadings received in connection with the Motion are identified in the agenda filed at ECF No. 6961.

The Debtors' current Motion is the fifth such of its kind, with the Court having had hearings on the prior requests on (1) July 9, 2024, (2) September 5, 2024, (3) September 23, 2024, and (4) October 31, 2024. The history of these cases has been outlined in the prior preliminary injunction motions filed with the Court and has been extensively discussed at the prior hearings on those motions. *See generally* July 9, 2024 Hr'g Tr. [ECF No. 6573]; September 5, 2024 Hr'g Tr. [ECF No. 6694]; September 23, 2024 Hr'g Tr. [ECF No. 6768]; October 31, 2024 Hr'g Tr. [ECF No. 6954]. The Court assumes familiarity with the facts and the extensive procedural history of these cases summarized in the Court's rulings at these prior hearings.

But to provide some basic background as to the Motion, these cases were the subject of a confirmed plan of reorganization that was appealed to the Supreme Court. A key component of that confirmed plan was a mediated settlement with the Sackler family that included a

5

substantial financial commitment by the Sacklers to fund the plan in exchange for so-called

third-party releases of the Sacklers' liability. This was notwithstanding the fact that the

Sacklers were not Debtors in these bankruptcy cases. The permissibility of such third-party

releases for non-debtors such as the Sacklers was the issue presented to the Supreme Court on

appeal. In June 2024, the Supreme Court issued a decision concluding that non-debtor parties

like the Sacklers may not receive a third-party release under Chapter 11 of the Bankruptcy

Code, even where a bankruptcy court has found that the release facilitates the Debtors'

reorganization. *See Harrington v. Purdue Pharma L.P.*, 144 S. Ct. 2071 (2024).

After the Supreme Court's decision in June, the Debtors and a vast majority of their

constituents quickly moved forward with a mediation process to determine whether a new

settlement with the Sacklers could be reached that was consistent with the Supreme Court

ruling. The Court granted that first request in a bench ruling on July 9, 2024. *See* July 9, 2024

Hr'g Tr. 84:6-97:23. In that ruling, the Court found that the request for mediation was

appropriate under the circumstances of these cases and was clearly the best course of action

considering the interest of all stakeholders and the history of these proceedings. The Court

also found that the requesting parties had satisfied the requirements for a preliminary

injunction to bar litigation against the third-party Sacklers while the mediation went forward.

In reaching that conclusion, the Court found, among other things, that the breathing room

provided by the requested injunction was critical to the parties' mediation efforts. The Court

also noted that the history of these cases provided strong evidence of the Debtors' prospects for

success through a plan of reorganization that might result from the mediation. The Court's

view was based upon the prior history in these cases where the Debtors and the stakeholders

had made great progress in mediation, striking a series of complex and related settlements that

6

formed the basis of the previously confirmed plan, which had received overwhelming support from creditors as reflected in the voting in favor of confirmation.

The Court approved an order providing for mediation for an initial period of sixty days, which period has been extended several times and is currently set to expire on December 2, 2024. *See Third Amended Order Appointing the Honorable Shelley C. Chapman (Ret.) and Eric D. Green as Co-Mediators and Establishing Terms and Conditions of Mediation* [ECF No. 6906] (the "Mediation Order"). The Court also approved a corresponding request to extend the Preliminary Injunction so that it will continue throughout the mediation, with the preliminary injunction also now set to expire on December 2, 2024. *See Thirty-Ninth Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction* [Adv. Proceeding No. 19-08289, ECF No. 583] (the Thirty-Ninth Amended Order"). The Debtors' current Motion seeks to extend the mediation process by 38 days through and including January 9, 2025, to enable the continuation of mediation to what the parties hope will be a successful conclusion. The Motion also seeks to extend for the same period of time the preliminary injunction and associated deadlines.

Of significant importance, on November 12, 2024, the mediators filed their first interim report, which advised the Court that many of the key parties to the mediation have reached an agreement-in-principle on certain core economic terms of a settlement with nine of the ten Sackler family groups, as well as agreement on important non-monetary terms of the settlement. *See Co-Mediators' First Interim Status Report* ¶ 3 [ECF No. 6917] (the "First Mediators' Report"). The mediators did note that "much work remains," including the resolution of complex intercreditor issues and attempting to expand the agreement in principle to encompass the final Sackler family group. First Mediators' Report ¶ 4. The mediators noted that the

7

preliminary injunction remains "absolutely vital" to progress towards a successful reorganization of the Debtors' estates, and while there have been "dozens of calls and Zooms, various in-person meetings" since the granting of the last requested extension at the October 31, 2024 hearing, the mediators state that more time is necessary to resolve important open issues. First Mediators' Report ¶¶ 1, 4. At the October 31st hearing, Judge Chapman—one of the mediators—reported further positive developments and reiterated the importance of the preliminary injunction remining in place to the success of the mediation. *See* October 31, 2024 Hr'g Tr. at 20:14-25:3. Notwithstanding the progress, the mediation was described as ongoing and fluid with "daily" activity and development. *See* First Mediators' Report ¶ 1.

On November 25, 2024, the mediators filed a second report. *See Co-Mediators' Second Interim Status Report* [ECF No. 6960] (the "Second Mediators' Report," and together with the First Mediators' Report, the "Mediators' Reports"). The Second Mediators' Report stated that additional progress has been made, with additional points of agreement having been reached between and among the covered parties, the Debtors, the Ad Hoc Committee, the Unsecured Creditors' Committee, the States Attorneys General and the Multi-State Governmental Entities Group. *See* Second Mediators' Report ¶ 2. The mediators reported that the agreements were reflected in a term sheet, that the total amount of cash consideration being made available by the settling covered parties being higher than the amount that was contained in the Debtors' previously confirmed plan, and that the Debtors expected to file a plan and disclosure statement in January 2025. *See* Second Mediators' Report ¶¶ 2-3. The mediators stated that there were ongoing negotiations to resolve the remaining open issues. *See* Second Mediators' Report ¶ 2.

Based on the record before the Court, and for reasons explained below, the Court will grant a further extension of the preliminary injunction for three weeks, until December 23,

2024, as supported by much the same reasons that justified the prior extensions.  Given the overlap of the facts and arguments in this Motion with the prior requests, the Court incorporates by reference its prior rulings from July 9th, September 5th, September 23rd, and October 31st, in the interest of time and efficiency.  *See generally* July 9, 2024 Hr'g Tr. [ECF No. 6573]; September 5, 2024 Hr'g Tr. [ECF No. 6694]; September 23, 2024 Hr'g Tr. [ECF No. 6768]; October 31, 2024 Hr'g Tr. [ECF No. 6954].  The Court concludes that an extension until December 23, 2024 will provide a legitimate opportunity for the parties to continue their negotiations towards a global settlement in what is an extremely complex multiparty dispute, and that such an extension satisfies the requirements for a preliminary injunction.

## **DISCUSSION**

I.    Applicable Legal Standards

Section 362(a) of the Bankruptcy Code provides an automatic stay for virtually all litigation against Debtor and efforts by creditors to obtain the Debtors' property.  *See* 11 U.S.C. § 362.  This automatic stay is one of the fundamental protections for a Debtor and permits a Debtor to focus on its reorganization.  In addition, Section 105 provides that a bankruptcy court may also issue any order, process, or judgment that's necessary and appropriate to carry out the provisions of the Bankruptcy Code.  *See* 11 U.S.C. § 105(a).  In appropriate circumstances, Section 105 has been used to enjoin actions that were filed against non-debtors where such suits might impede the reorganization process.  *See, e.g., Marshall v. Picard (In re Bernard L. Madoff Investment Securities LLC)*, 740 F.3d 81, 87-93 (2d Cir. 2014); *Macarthur Company v. Johns-Manville Corporation*, 837 F.2d 89, 93 (2d Cir 1988).  When determining whether to enjoin suits against non-debtors under Section 105, courts have examined a variety of factors in assessing this issue, including whether a lawsuit would threaten a debtors'

insurance coverage, whether such suits would increase a debtors' indemnification liability,

whether such suits would result in inconsistent judgments that could implicate the debtors'

rights, whether they would expose the debtor to risk of collateral estoppel and *res judicata*, and

whether they would impose burdens and distract debtors' management from diverting its

resources to reorganization. *See, e.g.*, *McHale v. Alvarez (In re 1031 Tax Group, LLC)*, 397

B.R. 670, 684 (Bankr. S.D.N.Y. 2008).

       In addition to Section 105, bankruptcy courts have granted injunctions under Fed. R.

Civ. P. 65, which is made applicable to adversary proceedings under Bankruptcy Rule 7065.

*See, e.g., Eastern Airlines v. Rolleston (In Re Ionosphere Clubs, Inc.)*, 111 B.R. 423, 431 (Bankr.

S.D.N.Y. 1990). In assessing a request for a preliminary injunction, courts look to the

traditional four-factor test for injunctive relief, which includes assessing the likelihood of

success on the merits, the possibility of irreparable harm in the absence of the requested

injunctive relief, the balance of the equities, and whether the injunction is in the public interest.

In evaluating these factors, courts take a flexible approach and no one factor is determinative.

*See Nevada Power Company v. Calpine Corporation (In re Calpine Corporation)*, 365 B.R.

401, 409 (S.D.N.Y. 2007).

       In considering a grant for injunctive relief, the Court is also mindful of its jurisdiction.

The federal district courts have original jurisdiction for all cases under Title 11 and also

proceedings arising under Title 11 and cases related to a case under Title 11. *See* 28 U.S.C. §§

1335 (a) and (b). Additionally, 28 U.S.C. § 157(a) provides that a district court may refer cases

and proceedings over which they have jurisdiction under 28 U.S.C. § 1334 to the bankruptcy

court. The Southern District of New York has an amended order of reference that refers all

bankruptcy cases and proceedings to the bankruptcy court in this district. *See, e.g., In re*

*FairPoint Communications*, 452 B.R. 21, 27(S.D.N.Y. 2011). The Supreme Court has instructed federal courts to construe the jurisdictional grants in Sections 1334 and 157 broadly, recognizing that "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Celotex Corporation v. Edwards*, 514 U.S. 300, 308 (1995). And courts have construed Section 1334 as creating three potential bases for jurisdiction: (1) those arising under Title 11, (2) those arising in a case under Title 11, and (3) those related to a case under Title 11. *See, e.g.*, 11 U.S.C. § 1334. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options and freedom of action, either positively or negatively and which impacts upon the handling and the administration of the bankruptcy estate. *See SPV Osus Limited v. UBS AG*, 882 F.3d 333, 340 (2d Cir. 2018). The touchstone for bankruptcy jurisdiction remains whether its outcome would have any conceivable effect on the bankruptcy estate. *See, e.g., In re Quigley Corporation Inc.*, 676 F.3d 45, 57 (2d Cir. 2012). Indeed, the Second Circuit has found related-to jurisdiction where there are strong interconnections between a third party action and a bankruptcy. *See SPV Osus*, 882 F.3d at 342. Thus, jurisdiction has been found where it is possible, even if it is improbable, that a non-debtor could successfully file claims against the debtor for either indemnification or contribution. *See id.* at 340, 342. Courts have also considered litigation against non-debtors if they have a conceivable impact on the bankruptcy estate where the litigation entails proving facts that would establish the debtor's own liability or the Debtor has a legal or contractual duty to indemnify non-debtors.

II.    <u>The Injunction Standard Applied to the Present Circumstances</u>

In applying the relevant standards, the Court finds that an extension of the injunction to December 23, 2024 is appropriate both as a matter of Section 105 and under Bankruptcy Rule 7065.  In granting the requested relief, the Court overrules the objections that have been filed.

As an initial matter, the Court finds that it has jurisdiction.  This matter clearly satisfies the test for jurisdiction for the same reasons previously explained in the Court's prior rulings.  In short, it is clear that the litigation that is the subject of this request has a profound impact on the bankruptcy case.

As to the first prong of the injunction standard that examines a reasonable likelihood of success, the Court looks to the prospect of a successful reorganization that might come out of the mediation and whether the Debtors are substantially more likely to reorganize with the injunction in place.  *See In re Parlement Technologies, Inc.*, 661 B.R. 722 (Bankr. D. Del. 2024); *In re Purdue Pharm. L.P.,* 619 B.R. 38 (S.D.N.Y. 2020) (the so-called "*Dunaway*" case); *see also In re Lyondell Chemical Company*, 402 B.R. 571, 589-590 (Bankr. S.D.N.Y. 2009); *In Re Soundview Elite Ltd.*, 543 B.R. 78, 119 (Bankr. S.D.N.Y 2016) ("Courts do not demand certainty of the successful reorganization; they expect only reasonable prospects of such."); *accord In re Bestwall LLC*, 71 F.4th 168, 184 (4th Cir. 2023) ("Normally, the 'merits' in litigation are the resolution of an underlying civil dispute.  But in a chapter 11 bankruptcy, the focus is not on resolving a particular dispute but rather on the debtor's rehabilitation and reorganization."); *In re Caesars Ent. Operating Co., Inc.*, 808 F.3d 1186, 1188 (7th Cir. 2015) (the proper inquiry for a Section 105(a) injunction is whether the injunction "is likely to enhance the prospects for a successful resolution of the disputes attending its bankruptcy").

The history of these Chapter 11 cases provides strong evidence of the Debtors' prospects for a successful reorganization based on the results of the ongoing mediation. The hope is that what's past is prologue. The Debtors and various stakeholders previously struck a successful series of complex and related settlements in mediation, among themselves and the Sackler family that formed the basis of the prior confirmed plan. While the Supreme Court's recent decision in *Harrington* precludes the consummation of a plan of reorganization that contains a nonconsensual third-party release, it does not preclude a successful reorganization in these cases through a mediated settlement, which would serve to benefit all stakeholders. *Accord Lautenberg Foundation v. Picard (In re Bernard L. Madoff Inv. Sec.), LLC*, 512 F. App'x 18, 20 (2d Cir. 2013) ("[Section] 105(a) is properly used to enjoin creditors' lawsuits against third parties where the injunction plays an important part in the debtor's reorganization plan.") (internal citations and quotations omitted); *see also In re Baldwin-United Corp. Litig.*, 765 F.2d 343, 348 (2d Cir. 1985). Indeed, no party—including the objectors—disputes the value of a mediated settlement here, which is not surprising given that the alternative to a mediated solution is extensive litigation that will be costly, protracted, and whose outcome is uncertain. The Debtors correctly recognize that the breathing room provided by the request injunction is critical to the parties' mediation efforts with the Sacklers, which was also expressly acknowledged by the mediators in their Mediation Reports. *See* First Mediators' Report ¶ 4 ("[T]he continuation of the injunction and the absence of litigation has been utterly essential to the Mediation process and has enabled the progress achieved to date"); Second Mediators' Report ¶ 5 ("The continuation of the preliminary injunction is absolutely vital to these efforts.").

Indeed, significant progress has been made. While the State of Washington argues that "little has changed" in the mediation, *see* Washington Objection ¶ 7, that is factually inaccurate.

13

The First Mediators' Report offered a significant update on the status of matters, reporting that the mediation has resulted in a set of economic and non-economic agreements in principle on key issues between and among the Debtors, 9 of 10 Sackler groups, and multiple core creditor constituencies. *See* First Mediators' Report ¶ 3. The Second Mediators' Report adds significantly to this, noting that additional points of agreement having been reached, a detailed term sheet exists, that the total amount of cash consideration being made available by the settling covered parties is higher than the amount that was contained in the Debtors' previously confirmed plan, and that the Debtors expected to file a plan and disclosure statement in January 2025. *See* Second Mediators' Report ¶¶ 2-3. Material milestones such as these have previously provided the basis for this Court to enter extensions of the Preliminary Injunction. *See* Feb. 1, 2022 Hr'g Tr. 19:18-20, 22:14, 24:12 [Adv. Proceeding No. 19-08289, ECF No. 326] (holding that it would be "counterproductive" and "foolish" to lift the preliminary injunction after Judge Chapman's report stated that the parties to mediation were "close to an agreement in principle").

Against these helpful updates, the objecting parties raise a few objections. The State of Washington argues that the Mediators' Reports are hearsay and cannot be considered by this Court. Even if the reports are hearsay, however, the Second Circuit has held that "hearsay testimony is admissible to support the issuance of a preliminary injunction." *Mullins v. City of N.Y.,* 626 F.3d 47, 48 (2d Cir. 2010) (trial court "did not abuse its discretion in granting preliminary injunctive relief to Plaintiff-Appellees based in part on such evidence"); *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 276 n.3 (2d Cir. 2021) ("[O]ur Court has ruled that courts may consider hearsay evidence such as affidavits when determining whether to grant a preliminary injunction."). Additionally, Fed R. Evid. 807(a) provides that a hearsay statement should not be excluded if "the statement is supported by sufficient guarantees of trustworthiness"

14

under a totality of the circumstances in which it was made and if "it is more probative on the

point for which it is offered than any other evidence that the proponent can obtain through

reasonable efforts." Fed. R. Evid. 807(a).   The Court finds that the Mediators' Reports are a

highly reliable source of information, having been drafted and filed on the docket by two

preeminent, court-appointed mediators, one of whom is a former federal judge.  There is no more

probative source of evidence on the progress of confidential mediation than the statements of the

mediators themselves, who "have their pulse on the mediation and are really in the best position

to know what works and what doesn't."  Sept. 5, 2024 Hr'g Tr. at 61:11-15.

The State of Maryland raises a second complaint about the lack of detail regarding the

recent developments. *See* Maryland Objection at 5.  But the Court rejects that argument.  The

Mediators' Reports are being made consistent with the confidentiality provisions of the

Mediation Order.  So while the mediators are empowered to "file interim status reports with the

Court," they must do so consistent with strict confidentiality provisions ensuring that "all

communications made . . . in connection with the Mediation . . . remain confidential."  Mediation

Order ¶¶ 11, 17.  Neither the mediators nor the Debtors are at liberty to divulge all the details of

the confidential mediation process.  And of course, such confidentiality is crucial to any

successful mediation. *See In re Teligent, Inc.*, 640 F.3d 53, 57-8 (2d Cir. 2011) (noting that

confidentiality is essential to a mediation's effectiveness).

Turning to the second injunction factor, the Court finds that the Debtors' organization

prospects will be irreparably harmed unless the injunction continues.  That is because

continued pursuit of litigation against all parties including the Sacklers would hamper the

Debtors' efforts at reorganization.  Without the requested injunction, it's very clear that the

value destructive litigation dynamic that prevailed prepetition would most certainly resume.

No party has argued otherwise.  As this Court previously noted in its prior rulings, such litigation will be a full-blown, all-out fight with all parties looking out for their own parochial interests.  Indeed, there is no prospect of a minor resumption of litigation, as was noted at the last hearing by counsel to the Ad Hoc Group of Individual Victims.  Resuming such all-out litigation warfare would impose a tremendous burden on the estates and would distract and hamper efforts at a mediated resolution that would preserve value.  Allowing such litigation also would "sap the mediation of its momentum towards a solution."  October 31, 2024 Hr'g Tr at 92:14-18. It would present a more difficult job for the mediators trying to talk to the parties at the bargaining table, who would be forced to focus their attention elsewhere.

The Debtors' estates also face the prospect of irreparable harm from such litigation given that the estate's most valuable asset here are its claims against the Sacklers.  Because the estates' claims against the Sacklers substantially overlap with creditor claims against the Sacklers, allowing creditor litigation to proceed would jeopardize the estate claims by allowing whichever creditor reaches a key juncture first to serve as a "test case" for issues of significant importance to the estates' claims.  While Washington State argues that an adverse ruling would not endanger the estate's claims in the short extension period requested, *see Washington Objection* ¶ 18, litigation developments that could diminish the value of the estate's claims can occur long before any judgment, and could include something as simple as a motion to dismiss. Nassau County's objection illustrates this possibility, highlighting that many of the enjoined actions would recommence mid-litigation when the preliminary injunction is lifted.  *See Nassau County Objection* ¶ 1.  While the Unsecured Creditors' Committee would litigate the estates' causes of action in this Court, there is no guarantee that the Committee would be able to reach critical issues ahead of hundreds of other litigants.  Additionally, some governmental entities

may pursue administrative actions on accelerated timelines to "jump the line" ahead of the

Committee and other creditors. *Cf. Amended Statement of Charges, Consumer Protection Div. v.*

*Sackler*, CPD Case No. 19-023-311366 (Maryland Consumer Protective Div. May 29, 2019). Of

course, there is no guarantee at the end of the day exactly what cases might reach critical issues

first. But the prospect of such events occurring *now*—while the mediation remains in its crucial

stage—is an outcome that should be avoided if at all possible. Additionally, resuming litigation

against certain of the Sacklers and related parties now would require the Debtors to address

potential indemnification and contribution claims and issues of shared insurance, which would

also have a detrimental economic and non-economic impact on the estates. *See Decl. of Hayden*

*A. Coleman in Support of Debtors' Motion for Preliminary Injunction*, Ex. S [Adv. Pro. No. 19-

08289, ECF No. 61] (detailing the Debtors' indemnification obligations).

As to the remaining injunction factors—the balance of equities and the public interest—

the Court finds that these also weigh in favor of continuing the injunction. Success through the

mediation process could potentially result in significant amounts of money for opioid

abatement and victim compensation. Indeed, the prior settlement yielded billions of dollars from

the Sacklers. Importantly, a mediated solution could provide such relief in a much faster and

more equitable manner than would be reached through a race to the courthouse in full-blown

litigation throughout the country, which would dissipate the resources of the estate and the

various creditor groups; it would also avoid the creditor-against-creditor litigation that would be

necessary to resolve the numerous complex inter-creditor disputes that exist in these cases.

Additionally, consistent with the Supreme Court decision, the settlements reached in mediation

would fully preserve all creditors' rights not to settle with the Sacklers, a fact made clear in the

Debtors' Reply. *See* Debtors' Reply at 13. Thus, no party would be forced to provide the

Sacklers, or any other third-parties, with a release.  *See Harrington*, 144 S. Ct. at 2088.  When assessing the balance of the equities and public interest, the Court also notes the against the thousands of creditors and governmental entities involved in these cases, only four have objected to the requested extension.  The request is supported in pleadings filed by numerous parties representing very large groups of creditors.  These include: the Multi-State Governmental Entities Group, which represents thousands of municipalities and other public entities; the Ad Hoc Committee, which is a committee of state and local governmental creditors; and the Unsecured Creditors Committee.  They all see the value in continuing the mediation, as does the AG Negotiating Committee, which made its views clear at the hearing on the Motion. All of these parties believe that the mediation and the requested preliminary injunction benefits all stakeholders and that the alternative is value destructive.

Nassau County objects by arguing that the *Harrington* decision is "in direct conflict with the *Dunaway* analysis," specifically Judge McMahon's "reliance on the lineage of cases that permit discharge and release for non-debtors. . . ."  *See* Nassau Objection at ¶ 10.  But the Court has already found in its prior rulings that the Supreme Court's decision in *Harrington* does not preclude granting this kind of a requested injunction.  The Supreme Court addressed the permissibility of a nonconsensual third-party release of claims, which is a substantive resolution of a party's claims against a non-debtor.  That is fundamentally different than, and legally distinct from, the request to impose a preliminary injunction to allow a reorganization to reach an appropriate resolution.  Nothing about the Supreme Court's decision takes away, erodes, or even addresses that question, and indeed, that question has already been answered in this case.  The *Dunaway* decision, *In re Purdue Pharm. L.P.*, 619 B.R. 38, 58 (S.D.N.Y 2020), affirmed the preliminary injunction previously entered by Judge Drain in these cases.  That

decision was issued by Judge McMahon, who was the same judge who concluded that a third-party release in a plan of reorganization for a non-debtor was not permitted. Judge McMahon drew a clear distinction between the preliminary relief the Debtors sought in the form of a temporary injunction to facilitate their reorganization, and a nonconsensual permanent injunction of claims against third-parties, which the Debtors are not seeking here. *See In re Purdue Pharms. L.P.*, 619 B.R. at 57, 62 (Judge McMahon noting "the protection that Appellants fear (and oppose) will be decided in the context of other motions in [the] bankruptcy").

Nothing in *Harrington* alters this well-settled law on the permissibility of an injunction of the type sought here. Indeed, every other court to address the issue since *Harrington* has agreed that the legal issue of nonconsensual third-party releases is "legally distinct" from the temporary injunctive relief a debtor may seek under Section 105(a) or Bankruptcy Rule 7065. *See, e.g.*, July 9, 2024 Hr'g Tr. 95:7; *In re Coast to Coast Leasing, LLC*, 661 B.R. 621, 624 (Bankr. N.D. Ill. 2024) (holding that *Harrington* did not preclude a Section 105(a) injunction of creditor claims against non-debtor third parties); *In re Parlement Techs*, 661 B.R. at 724 ("The Court concludes that *Purdue Pharma* does not preclude the entry of [ ] a preliminary injunction" against non-debtor third parties); *In re Onyx Site Servs., LLC*, 2024 WL 4132150, at *2 (Bankr. M.D. Fla. Aug. 22, 2024) (granting Section 105(a) injunction of claims against non-debtor principal of the debtor); *In re Diocese of Buffalo, N.Y.*, 663 B.R. 197, 200 (Bankr. W.D.N.Y. 2024) ("Nothing in the Supreme Court's [*Harrington*] decision expressly prohibits a temporary stay of litigation against [non-debtor] parishes and affiliates.").

As the court in *Parlement* explained, the *Harrington* decision does not preclude the entry of such a preliminary injunction, but rather it affects how courts should consider what is meant by likelihood of success on the merits when applying the traditional four-factor test

applicable to requests for preliminary injunction. *See In re Parlement*, 661 B.R. at 724. The *Parlement* court concludes that, following *Harrington*, success on the merits cannot be based on the likelihood that a non-debtor will be entitled to a nonconsensual third-party release. *Id.* But it can be granted on a variety of other bases, including the debtor's need for a breathing spell from the distraction of other litigation that would be necessary to permit the debtor to focus on the reorganization of its business or if the debtor believes an injunction will heighten the possibility of successful reorganization that might include a consensual resolution of claims against the non-debtors. *See id.* This Court whole-heartedly agrees with the analysis of the *Parlement* court and finds that the facts here satisfy those requirements.

For its part, Nassau County's objection argues that consideration of the public interest must account for the benefit the preliminary injunction provides to the Sacklers. But for the reasons already discussed, the Court finds that that all the relevant facts here weighed collectively support the grant of this extension of the preliminary injunction.

There are a few other arguments that the Court feels should be specifically addressed. First, the State of Maryland argues that this Court lost jurisdiction over the preliminary injunction by virtue of Maryland's appeal. But this Court disagrees. The divestiture of jurisdiction rule is "guided by concerns of efficiency" and applies only where a lower court's decision would "disturb its prior orders or interfere with the particular questions presented by . . . [the] pending appeal." *New York v. United States Dep't of Homeland Sec.*, 475 F. Supp. 3d 208, 224-25 (S.D.N.Y. 2020); *Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. E. Air Lines, Inc.*, 847 F.2d 1014, 1017-18 (2d Cir. 1988) (holding district court properly issued an injunction based on new evidence and circumstances, despite prior preliminary injunction pending on appeal). In situations where a movant seeks new relief predicated on "new facts and

circumstances that were not—and could not have been—before the Court when it issued its prior order," the lower court has jurisdiction to decide such issues notwithstanding an appeal of its prior orders. *New York*, 475 F. Supp. 3d at 224. Indeed, this approach is contemplated by the Federal Rules of Civil Procedure, which expressly provide that injunctions may be modified or granted while on appeal. *See* Fed. R. Civ. P. 62(d) (as made applicable to bankruptcy proceedings through Fed. R. Bankr. P. 7062).[3] Such an approach is also consistent with the preliminary injunction standard, which does not decide the merits of any of the claimants' lawsuits against the Sacklers but rather looks to the current factual record when assessing the likelihood of success, the prosect of irreparable harm, the balancing of the equities and the public interest. In so doing, the Court must look not only to the current progress in the mediation but also to the amount of time that various parties' rights have been stayed against the Sacklers. In weighing the current record, the Court is swayed by the additional new facts that were not present at the time the Court issued the Thirty-Ninth Amended Order, including the First Mediators' Report and the Second Mediators' Report that announced significant new developments in the mediation. *See* First Mediators' Report ¶ 3; Second Mediators' Report ¶¶ 2-3. Of course, this Court's consideration of the present extension request does not impact in any way Judge McMahon's ability to rule on any issues that come before her.[4]

---

[3]    The cases cited by Maryland do not suggest a different result. *See* Maryland Objection at 2–3. In *Ideal Toy Corp. v. Sayco Doll Corp.*, 302 F.2d 623, 625 (2d Cir. 1962) for example, the Second Circuit affirmed the lower court's exercise of jurisdiction under Fed. R. Civ. P. 62(c) to "preserve the status quo," expressly noting that it was proper for the trial court to take jurisdiction of the motion under Rule 62(c), "which permits modification of injunction orders during the pendency of an appeal"). Similarly, the court in *Flatiron Health, Inc. v Carson*, 602 F. Supp. 3d 482 (S.D.N.Y. 2020), found that it retained jurisdiction over the preliminary injunction to the extent needed to modify its terms while it was pending on appeal. *Id*. at 485–86.

[4]    As previously noted, the Court issued its bench ruling on the Motion on November 26, 2024. Later that afternoon, Judge McMahon issued a decision affirming this Court's prior three orders extending the preliminary injunction. *See State of Maryland v. Purdue Pharma L.P.,* Case No. 24-Civ-07042 (CM), Doc. No. 63 (S.D.N.Y. Nov. 26, 2024).

To the extent that the objectors complain about the shortened period of time for the requested preliminary injunction here, the Court is a bit at a loss for words. The Court's understanding is that the requested amounts of time are designed to be shorter rather than longer to be sensitive to the concerns of all parties, including not only the objectors but also those parties who support the request. Thus, complaining about the shortness of the preliminary injunction request seems odd and counterproductive. But it proves the old adage that no good deed goes unpunished.

The State of Maryland requests that the Debtors post a bond in "at least the full amount of the Sackler contribution." *See* Maryland Objection at 6. But under Fed. R. Bankr. P. 7065, Debtors are exempt from the bond requirements of Fed. R. Civ. P. 65(c). *See* Fed. R. Bankr. P. 7065 (providing "a preliminary injunction may be issued on application of a debtor . . . without compliance with Rule 65(c)"). That counsels against the Court using its discretion to require security under Rule 62(d), which is applicable to this proceeding through Fed. R. Bankr. P. 7062. Additionally, Maryland's position is problematic in requesting a bond equal "at least the full amount of the Sackler contribution." Maryland Objection at 6. As trial lawyers might say, Maryland assumes a fact not in evidence. No contribution from the Sacklers currently exists, and the purpose of the mediation is to reach a settlement with the Sacklers to create such a contribution. Acting as if the mediation has resulted in a final binding settlement ignores the context for the preliminary injunction request, which is designed to help reach such a settlement. It also puts in stark relief the juxtaposition between seeking the benefits of the mediation and the preliminary injunction while at the same time complaining of its effect.

The State of Maryland's other objections fare no better. The 1931 case of *Madison Square Garden* cited by the State of Maryland stands for the proposition that a trial court may, in

its discretion, require a bond from a non-debtor movant before granting a preliminary injunction.

*See generally Madison Square Garden Corp., Ill., v. Carnera*, 52 F.2d 47 (2d Cir. 1931).  But that

case does not change the outcome for all the reasons set forth above.  The Court also notes that

the preliminary injunction here is freezing all parties rights—not just Maryland's—so it is

unclear how Maryland's position is harmed as against other parties.  To the extent Maryland

fears the dissipation of assets, that concern was identified and addressed as the Sackler family is

already enjoined from transferring their assets during the pendency of the preliminary

injunction.[5]

      Finally, the Court addresses the length of the extension request.  On the one hand, the

Court understands the Debtors have been seeking short, calibrated extensions of the preliminary

injunction to reduce to a minimum the amount of relief sought so as to incentivize all parties to

work expeditiously during the mediation process.  Moreover, the Debtors have moved only when

they believe that sufficient developments in the mediation merit a further extension of the

mediation, an approach reflected clearly in the two Mediators' Reports filed in support of the two

most recent motions.  These Mediators' Reports make clear that significant progress has been

made in the mediation.  The Court is grateful to the parties and the mediators for their laudable

efforts.  On the other hand, this extension is being sought against the backdrop of numerous prior

extensions of the preliminary injunction and the parties' long wait for funds for abatement and

victim compensation.  Moreover, these requests have been for a *preliminary* injunction, which

---

[5]     The Court also notes there was a pleading filed by *pro se* claimant Fredrick Hill in connection with the Motion.  *See* Adv. Pro. No. 19-08289, ECF No. 596.  The Court has already addressed Mr. Hill's argument with respect to corporate names and his other arguments relating to his claim, and in the interest of economy will not repeat its reasons for rejecting his arguments, all of which are set forth in the Court's prior rulings.  *See* Oct. 31, 2024 Hr'g Tr. 68:23-69:2 (informing Mr. Hill that the Court will not address "an issue that is not the issue on the table for today," including Mr. Hill's argument regarding "company names" and pursuit of Mr. Hill's New Jersey action).  Again, the Court finds that the issues Mr. Hill raised in his objection are not relevant to this Motion.

by its very definition is not meant to be permanent.  Five months have passed since the

preliminary injunction was first extended in conjunction with the new mediation.  Such an

injunction cannot be extended without limits.  With the recent grant of the standing motion, the

Unsecured Creditors' Committee is now in a position to pursue the estate causes of action in

the unfortunate event that the mediation is unsuccessful.  So weighing all the preliminary

injunction factors and the benefit versus harm to the estates here—and considering the

significant progress that has been reported by the mediators—the Court believes that a showing

has been made to extend the preliminary injunction for another short period of three weeks, up

to and including December 23rd.  The Court is hopeful that this limited extension will enable

parties to continue their progress on outstanding issues in the mediation, including the complex

intercreditor issues.  The Court joins all parties in the sincere hope that the end is in sight.  Of

course, the Court cannot predict the future.  To the extent that the parties believe that

significant and concrete additional progress may justify a request for any additional short

period of time beyond December 23rd, the Court has set aside time for a hearing on December

20th at 11:00 a.m.  The timing of such a hearing might mean a compressed schedule.  But the

Court trusts that, consistent with the history of this case to date, parties are up to that

challenge.  Indeed, the Court notes that there were two hearings in September as to the

preliminary injunction so this ruling is consistent with precedent in this case.  As in previous

instances, all parties preserve their rights going forward as any future request for an extension.[6]

Dated: White Plains, New York
         December 6, 2024


                              **/s/ Sean H. Lane**_____
                              UNITED STATES BANKRUPTCY JUDGE

---

[6]      To the extent that the Court has failed to specifically address any other issues raised in the objections, the Court has found nothing in the objections that warrant a different result here.