Hearing Date: November 18, 2025 at 10:00 a.m. (Prevailing Eastern Time)
Objection Deadline: November 11, 2025 at 12:00 p.m. (Prevailing Eastern Time)
Reply Deadline: November 13, 2025 at 5:00 p.m. (Prevailing Eastern Time)

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Marc J. Tobak
Joshua N. Shinbrot

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.**, *et al.*, | Case No. 19-23649 (SHL) |
| Debtors.[1] | (Jointly Administered) |
| **PURDUE PHARMA L.P.**, *et al.*, | |
| Plaintiffs, | Adv. Pro. No. 19-08289 (SHL) |
| v. | |
| **COMMONWEALTH OF MASSACHUSETTS**, *et al.*, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXTEND THE
PRELIMINARY INJUNCTION AND
ASSOCIATED DEADLINES INCLUDING TOLLING**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Purdue Products L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717), and SVC Pharma Inc. (4014).  The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

# TABLE OF CONTENTS

PAGE

INTRODUCTION ...............................................................................................................................1

ARGUMENT ...................................................................................................................................2

CONCLUSION .................................................................................................................................4

# TABLE OF AUTHORITIES

C<span style="font-variant:small-caps">ases</span>

P<span style="font-variant:small-caps">age(s)</span>

*In re American Hardwoods, Inc.*,
　885 F.2d 621 (9th Cir. 1989) .................................................................................... 2

*In re Seatco, Inc.*,
　259 B.R. 279 (Bankr. N.D. Tex. 2001) ..................................................................... 2

*In re W.R. Grace & Co.*,
　386 B.R. 17 (Bankr. D. Del. 2008) ........................................................................... 2

*Maryland v. Purdue Pharma L.P.*,
　2024 WL 4894349 (S.D.N.Y. Nov. 26, 2024) .......................................................... 2

## INTRODUCTION

The Debtors respectfully request that the Court extend the Preliminary Injunction through and including confirmation of the Plan and expiration of any applicable stay, including the stay provided by Rule 3020(e) of the Federal Rules of Bankruptcy Procedure, or 60 days after entry of any order denying confirmation of the Plan.[2]

The Preliminary Injunction is presently set to expire on November 20, approximately one week after the commencement of the Confirmation Hearing. At the hearing, which is scheduled to commence just eight days after the filing of this motion and memorandum, the Court will receive testimony of 20 witnesses along with extensive documentary evidence, and hear arguments in favor of confirmation of the Debtors' Fifteenth Amended Chapter 11 Plan of Reorganization, *In re Purdue Pharma L.P.*, No. 19-23649 (Dkt. No. 8168) (Bankr. S.D.N.Y. Nov. 3, 2025) (the "**Plan**"). The proposed Plan enjoys overwhelming support: more than 99% of the Debtors' voting creditors support the Plan, as does every organized creditor group, including the Official Committee of Unsecured Creditors, which was granted sole standing to prosecute the Estates' causes of action against the Debtors' Related Parties. The prospects for successful reorganization have never been greater. And the harm that would flow from jeopardizing those prospects of success at this critical juncture far outweighs any harm from a short delay in permitting non-settling creditors to pursue any direct claims they hold against the Debtors' Related Parties. In light of the near-unanimous support for the Plan, the proximity of the confirmation proceedings, and for the other reasons detailed herein, the Debtors respectfully

---

[2] Unless otherwise specified, capitalized terms have the meaning ascribed to them in the Motion to Extend the Preliminary Injunction and Associated Deadlines Including Tolling filed contemporaneously herewith.

1

submit that a short extension of the Preliminary Injunction through the outcome of confirmation is plainly warranted.[3]

## ARGUMENT[4]

The four preliminary injunction factors are easily satisfied at this stage of the Debtors' reorganization. *See Maryland v. Purdue Pharma L.P. (In re Purdue Pharma L.P.)*, No. 19-23649 (SHL), 2024 WL 4894349, at *7 (S.D.N.Y. Nov. 26, 2024) (listing the four factors).

<u>The Debtors Are Likely to Successfully Reorganize</u>.  It is hard to imagine a stronger showing of likelihood of successful reorganization than being literally days from a hearing to consider confirmation of plan of reorganization that is supported by more than 99% of voting creditors and faces only a handful of limited objections.[5] *See* June 16, 2021 Hr'g Tr. 15:16-16:19, 148:24-25 [Dkt. No. 278] (extending the Preliminary Injunction where the reorganization was "weeks away from a confirmation hearing").[6]  That overwhelming support is sufficient evidence on its own of the Debtors' prospects for successful reorganization.

---

[3] The proposed Plan and draft confirmation order provide that the Preliminary Injunction and all associated deadlines, including claim tolling, will be extended "until the later of the Effective Date and the date indicated in the order providing for such injunction or stay." Plan § 10.3(a). Thus, if the Plan is confirmed, the Preliminary Injunction will remain in effect through the Effective Date (as defined in the Plan).

[4] The Debtors incorporate by reference their extensive prior briefing in support of the Preliminary Injunction. ECF numbers reference docket entries in this adversary proceeding unless otherwise noted.

[5] *See* Declaration of Craig E. Johnson of Kroll Restructuring Administration LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Thirteenth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors, Ex. A, *In re Purdue Pharma L.P.*, No. 19-23649 (Bankr. S.D.N.Y. Oct. 21, 2025) (Dkt. No. 8068).

[6] Courts regularly extend preliminary injunctions through confirmation or emergence. *See, e.g.*, *In re W.R. Grace & Co.*, 386 B.R. 17, 37 (Bankr. D. Del. 2008) (extending preliminary injunction "until further order of the Court," *i.e.* confirmation or emergence); *In re American Hardwoods, Inc.*, 885 F.2d 621, 623 (9th Cir. 1989) (extending preliminary injunction through

2

<u>The Estates Would Be Irreparably Harmed if the Injunction Were Lifted</u>.  The proposed Plan is, in no small measure, a direct result of the Preliminary Injunction.  It has provided the Debtors and other stakeholders the respite necessary to craft an overwhelmingly supported Plan that is consistent with the Supreme Court's decision.  As this Court has consistently held for the past six years, if litigation were permitted to resume, the chaos that reigned prepetition would surely follow.  *See, e.g.*, Jan. 24, 2025 Hr'g Tr. 67:4-68:5 (detailing how the Debtors' reorganization prospects would be irreparably harmed absent the injunction, "particularly [] given the precipice that we stand upon, given the agreement that's been reached in principle with the Sacklers").  At this near-final point in the Debtors' reorganization, the harms that would result from prematurely lifting the Preliminary Injunction cannot be overstated.  While the Plan enjoys overwhelming support, the complex settlement agreements between and among the Related Parties, states, tribes, public school districts, hospitals, and ER physicians, and other organized creditor groups, are not yet effective because they are conditioned on confirmation of the Plan.  If the Preliminary Injunction were lifted and parties elected to pursue direct claims against the Sacklers now, a deluge of litigation would threaten to unravel the entire agreement.  <u>Billions</u> of dollars would be jeopardized, any prospect of successful reorganization would be materially delayed, and over a year of intense negotiations, built upon years of compromise, would be squandered.

While the Debtors hope and expect that the confirmation hearing will result in confirmation of the Plan, to the extent the proposed Plan is not confirmed, the Debtors and other case constituencies will also require a breathing spell to confer, negotiate, and determine the best

---

the later of confirmation or 60 days); *In re Seatco, Inc.*, 259 B.R. 279, 283-286 (Bankr. N.D. Tex. 2001) (extending preliminary injunction through confirmation).

3

path forward, while the UCC determines the optimal timing of litigation to prosecute Estate claims for the benefit of the Debtors' creditor body. For that reason, the requested relief contemplates a 60-day respite in the event that the Plan is not confirmed—an outcome whose harms would only be exacerbated by the Estates, through the UCC, being forced to race creditors to the courthouse to prosecute claims against the Sacklers.

<u>The Balance of the Harms and Public Interest Weigh In Favor of Extension</u>. Extension of the Preliminary Injunction to facilitate confirmation of the Plan is clearly in the public interest and favored by a balancing of the harms. The Plan will provide for <u>billions</u> of dollars to states, municipalities, and other creditor groups. If the Plan is confirmed and becomes effective, this Preliminary Injunction will end. Weighed against these clear benefits is the marginal harm that could result from maintaining the status quo for a short additional period to allow these cases to come to their conclusion. That potential harm pales in comparison to the catastrophic and value-destructive outcome that would ensue if the Plan's confirmation is jeopardized by prematurely lifting the Preliminary Injunction.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in prior papers in support of the Preliminary Injunction, the Debtors respectfully request that this Court enter the proposed order extending the Preliminary Injunction and associated deadlines, including for claim tolling, as set forth herein.

Dated:  November 4, 2025
        New York, New York

By:  */s/ Marshall S. Huebner*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Marc J. Tobak
Joshua N. Shinbrot

*Counsel to the Debtors
and Debtors in Possession*

5